IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

APPEAL NO. 18-11183-JJ

UNITED STATES OF AMERICA

Plaintiff-Appellee,

v.

ANDREW RYAN LESLIE

Defendant-Appellant.

APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE MIDDLE DISTRICT OF FLORIDA

APPENDIX

Donna Lee Elm
Federal Defender

Adeel Bashir
Assistant Federal Public Defender
Appellate Division
D.C. Bar Number 1000201
400 N. Tampa Street, Suite 2700
Tampa, FL 33602
Telephone: 813-228-2715
Facsimile: 813-228-2562
E-mail: adeel_bashir@fd.org
Counsel for Appellant

# <u>INDEX OF APPENDIX</u>

<u>Docket/Tab #</u>

District Court Docket Sheet ................................................................................A

Indictment .........................................................................................13

Notice of Regarding Entry of a Plea of Guilty .........................................38

Plea Agreement ...................................................................................39

Report and Recommendation Concerning Plea of Guilty .........................................40

Acceptance of Plea of Guilty, Adjudication of Guilt, and
    Notice of Sentencing.................................................................42

Sentencing Memorandum with exhibits 1-8 .............................................49

Judgment .........................................................................................53

Notice of Appeal ................................................................................57

Transcript of Change of Plea Hearing (proceeding held 10/06/17).......................65

Transcript of Sentencing Hearing (proceeding held 03/01/18) ..............................66

Certificate of Service

<u>Sealed Volume</u>                                                                  <u>Docket/Tab #</u>

Victim Impact Statements (exhibits 47-1 through 47-6) .......................................47

Final Presentence Investigation Report with exhibits 1-6 .......................................50

Statement of Reasons ..........................................................................54

# Tab A

APPEAL, CLOSED, CUSTODY, PLED, SL DOC

# U.S. District Court
## Middle District of Florida (Jacksonville)
### CRIMINAL DOCKET FOR CASE #: 3:16-cr-00154-BJD-JBT-1

Case title: USA v. Leslie                              Date Filed: 10/27/2016
Magistrate judge case number: 3:16-mj-01265-MCR        Date Terminated: 03/07/2018

Assigned to: Judge Brian J. Davis
Referred to: Magistrate Judge Joel B. Toomey

Appeals court case number: 18-11183-J

**Defendant (1)**

**Andrew Ryan Leslie**                    represented by    **Adeel Bashir**
*CUSTODY*                                                   Federal Public Defender's Office
*TERMINATED: 03/07/2018*                                   Suite 2700
                                                           400 N Tampa St
                                                           Tampa, FL 33602-4726
                                                           813/228-2715
                                                           Fax: 813/228-2562
                                                           Email: adeel_bashir@fd.org
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*
                                                           *Designation: Public Defender or Community
                                                           Defender Appointment*

                                                           **Mark Rosenblum**
                                                           Federal Public Defender's Office
                                                           Suite 1240
                                                           200 W Forsyth St
                                                           Jacksonville, FL 32202
                                                           904/232-3039
                                                           Fax: 904/232-1937
                                                           Email: Mark_Rosenblum@fd.org
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*
                                                           *Designation: Public Defender or Community
                                                           Defender Appointment*

**Pending Counts**                                 **Disposition**

18:2251.F SEXUAL EXPLOITATION OF                   Imprisonment: 720 months, this term consists
CHILDREN                                           of 360 months on each of Counts One and
(1)                                                Two of the Indictment, all such terms to run
                                                   consecutively.; Supervised Release: Life-
                                                   Term, this term consists of Life-Terms as to
                                                   Counts One and Two of the Indictment, all
                                                   such terms to run concurrently.; Special
                                                   Assessment: $100.00, Restitution: the victims'

USCA11 Case: 18-11183    Document: 17    Date Filed: 06/08/2018    Page: 5 of 205

losses are undetermined and the Court shall set a date for the final determination of the victims' losses within 90 days of the date of the sentencing.

18:2251.F SEXUAL EXPLOITATION OF CHILDREN (2)

Imprisonment: 720 months, this term consists of 360 months on each of Counts One and Two of the Indictment, all such terms to run consecutively.; Supervised Release: Life-Term, this term consists of Life-Terms as to Counts One and Two of the Indictment, all such terms to run concurrently.; Special Assessment: $100.00, Restitution: the victims' losses are undetermined and the Court shall set a date for the final determination of the victims' losses within 90 days of the date of the sentencing.

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
| --- | --- |
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
| --- | --- |
| 18:2252A.F ACTIVITIES RE MATERIAL CONSTITUTING/CONTAINING CHILD PORNO | |

---

**Plaintiff**

| **USA** | represented by | **David Rodney Brown** |
| --- | --- | --- |
| | | US Attorney's Office - FLM |
| | | Suite 700 |
| | | 300 N Hogan St |
| | | Jacksonville, FL 32202 |
| | | 904/301-6300 |
| | | Email: rodney.brown@usdoj.gov |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: Retained* |
| | | |
| | | **Lauren Elizabeth Britsch** |
| | | US Department of Justice |
| | | 1400 New York Ave NW |
| | | Washington, DC 20530 |
| | | 202/514-2220 |

Email: lauren.britsch@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/18/2016 | 1 | COMPLAINT (FILED IN OPEN COURT) as to Andrew Ryan Leslie (1). (SHS) [3:16-mj-01265-MCR] (Entered: 10/19/2016) |
| 10/18/2016 | | Arrest of Andrew Ryan Leslie on 10/18/2016 (SHS) [3:16-mj-01265-MCR] (Entered: 10/19/2016) |
| 10/18/2016 | 2 | Minute Entry for proceedings held before Magistrate Judge Monte C. Richardson: Initial Appearance as to Andrew Ryan Leslie held on 10/18/2016. (Digital) (SHS) [3:16-mj-01265-MCR] (Entered: 10/19/2016) |
| 10/18/2016 | 3 | ORAL MOTION to Appoint Counsel by Andrew Ryan Leslie. (SHS) [3:16-mj-01265-MCR] (Entered: 10/19/2016) |
| 10/18/2016 | 4 | ***CJA 23 Financial Affidavit (FILED IN OPEN COURT) by Andrew Ryan Leslie (SHS) [3:16-mj-01265-MCR] (Entered: 10/19/2016) |
| 10/18/2016 | 5 | ORAL MOTION for detention, ORAL MOTION to Continue Detention Hearing by USA as to Andrew Ryan Leslie. (SHS) [3:16-mj-01265-MCR] (Entered: 10/19/2016) |
| 10/18/2016 | 8 | Assertion of Fifth and Sixth Amendment Right (FILED IN OPEN COURT) by Andrew Ryan Leslie (SHS) [3:16-mj-01265-MCR] (Entered: 10/19/2016) |
| 10/19/2016 | 6 | **ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to Andrew Ryan Leslie Mark Rosenblum for Andrew Ryan Leslie appointed. Signed by Magistrate Judge Monte C. Richardson on 10/18/2016. (SHS)** [3:16-mj-01265-MCR] (Entered: 10/19/2016) |
| 10/19/2016 | 7 | **ORDER OF TEMPORARY DETENTION as to Andrew Ryan Leslie( Detention Hearing set for 10/21/2016 at 11:00 AM in Jacksonville Courtroom 5 C before Magistrate Judge Monte C. Richardson.) Signed by Magistrate Judge Monte C. Richardson on 10/18/2016. (SHS)** [3:16-mj-01265-MCR] (Entered: 10/19/2016) |
| 10/20/2016 | 9 | NOTICE OF ATTORNEY APPEARANCE Lauren Elizabeth Britsch appearing for USA. (Britsch, Lauren) [3:16-mj-01265-MCR] (Entered: 10/20/2016) |
| 10/21/2016 | 10 | Minute Entry for proceedings held before Magistrate Judge Monte C. Richardson: Detention Hearing as to Andrew Ryan Leslie held on 10/21/2016. (Digital) (SHS) [3:16-mj-01265-MCR] (Entered: 10/21/2016) |
| 10/21/2016 | 11 | NOTICE OF HEARING as to Andrew Ryan Leslie: Preliminary Hearing set for 10/31/2016 at 02:30 PM in Jacksonville Courtroom 5 C before Magistrate Judge Monte C. Richardson. (SHS) [3:16-mj-01265-MCR] (Entered: 10/21/2016) |
| 10/27/2016 | 12 | NOTICE canceling Preliminary Hearing hearing scheduled for 10/31/2016 as to Andrew Ryan Leslie (SHS) [3:16-mj-01265-MCR] (Entered: 10/27/2016) |
| 10/27/2016 | 13 | INDICTMENT returned in open court as to Andrew Ryan Leslie (1) count(s) 1. (RH) (Entered: 10/27/2016) |
| 10/27/2016 | | Counts added: Andrew Ryan Leslie (1) count(s) 2. (NAS) (Entered: 10/28/2016) |
| 10/28/2016 | 14 | NOTICE OF HEARING as to Andrew Ryan Leslie: Arraignment set for 11/1/2016 at 03:00 PM in Jacksonville Courtroom 5 A before Magistrate Judge Joel B. Toomey. (TSP) (Entered: 10/28/2016) |
| 10/31/2016 | 15 | |

USCA11    Case: 18-11183    Document: 17    Date Filed: 06/08/2018    Page: 7 of 205

| | | |
|---|---|---|
| | | NOTICE OF ATTORNEY APPEARANCE Lauren Elizabeth Britsch appearing for USA. (Britsch, Lauren) Modified on 10/31/2016 contacted counsel in regards to using the correct case number on all pleadings (TSW). (Entered: 10/31/2016) |
| 11/01/2016 | 16 | Minute Entry for proceedings held before Magistrate Judge Joel B. Toomey: ARRAIGNMENT as to Andrew Ryan Leslie (1) Count 1, 2 held on 11/1/2016 Defendant(s) pled not guilty. (Digital) (TSP) (Entered: 11/01/2016) |
| 11/01/2016 | 17 | NOTICE of acceptance of general discovery by Andrew Ryan Leslie (Filed in Open Court) (TSP) (Entered: 11/01/2016) |
| 11/01/2016 | 18 | **SCHEDULING ORDER as to Andrew Ryan Leslie: Status Conference set for 11/14/2016 at 03:30 PM in Jacksonville Courtroom 12 C before Judge Brian J. Davis, Jury Trial set for trial term commencing on 12/5/2016 at 09:00 AM in Jacksonville Courtroom 12 C before Judge Brian J. Davis., Discovery motions due by 11/21/2016, Dispositive motions due by 11/21/2016. Signed by Deputy Clerk on 11/1/2016. (TSP) (Entered: 11/01/2016)** |
| 11/14/2016 | 19 | ORAL MOTION to continue trial by Andrew Ryan Leslie. (CKS) (Entered: 11/15/2016) |
| 11/14/2016 | 20 | Minute Entry for proceedings held before Judge Brian J. Davis: STATUS Conference as to Andrew Ryan Leslie held on 11/14/2016; granting 19 Oral Motion to continue trial as to Andrew Ryan Leslie (1). Status Conference set for 1/23/2017 at 03:30 PM in Jacksonville Courtroom 12 C before Judge Brian J. Davis. Jury Trial set for trial term commencing on 2/6/2017 at 09:00 AM in Jacksonville Courtroom 12 C before Judge Brian J. Davis. Court Reporter: Kathy Healey/Cornerstone (CKS) (Entered: 11/15/2016) |
| 11/16/2016 | 24 | Unopposed MOTION to extend time to *Motion Filing Date* by Andrew Ryan Leslie. (Rosenblum, Mark) (Entered: 11/16/2016) |
| 11/16/2016 | | Sealed Document- S-21, S-22, S-23. (DLC) (Entered: 11/16/2016) |
| 11/16/2016 | 25 | **ORDER OF DETENTION PENDING TRIAL as to Andrew Ryan Leslie Signed by Magistrate Judge Monte C. Richardson on 11/16/2016. (SHS) (Entered: 11/16/2016)** |
| 11/16/2016 | 26 | **ORDER granting 24 Unopposed Motion to Extend Motion Filing Date as to Andrew Ryan Leslie. Defendant shall have up to and including December 22, 2016, to file discovery motions, dispositive motions and motions to suppress (1). Signed by Magistrate Judge Joel B. Toomey on 11/16/2016. (TSP) (Entered: 11/16/2016)** |
| 11/17/2016 | | Set/Reset Deadlines as to Andrew Ryan Leslie: Discovery due by 12/22/2016 (DLC) (Entered: 11/17/2016) |
| 01/23/2017 | 27 | ORAL MOTION to continue trial by Andrew Ryan Leslie. (CKS) (Entered: 01/26/2017) |
| 01/23/2017 | 28 | Minute Entry for proceedings held before Judge Brian J. Davis: STATUS Conference as to Andrew Ryan Leslie held on 1/23/2017; granting 27 Oral Motion to continue trial as to Andrew Ryan Leslie (1). Status Conference set for 4/17/2017 at 3:30 PM in Jacksonville Courtroom 12 C before Judge Brian J. Davis. Jury Trial set for trial term commencing on 5/1/2017 at 9:00 AM in Jacksonville Courtroom 12 C before Judge Brian J. Davis. Court Reporter: Shelli Kozachenko (CKS) (Entered: 01/26/2017) |
| 04/17/2017 | 29 | ORAL MOTION to continue trial by Andrew Ryan Leslie. (CKS) (Entered: 04/24/2017) |
| 04/17/2017 | 30 | Minute Entry for proceedings held before Judge Brian J. Davis: STATUS Conference as to Andrew Ryan Leslie held on 4/17/2017; granting 29 Oral Motion to continue trial as to Andrew Ryan Leslie (1). Status Conference set for 7/24/2017 at 3:30 PM in Jacksonville Courtroom 12 C before Judge Brian J. Davis. Jury Trial set for trial term commencing on 8/7/2017 at 9:00 AM in Jacksonville Courtroom 12 C before Judge Brian J. Davis. Court Reporter: Shelli Kozachenko (CKS) (Entered: 04/24/2017) |

USCA11 Case: 18-11183     Document: 17     Date Filed: 06/08/2018     Page: 8 of 205

| | | |
|---|---|---|
| 05/22/2017 | 31 | NOTICE OF RESCHEDULING HEARING: The Status Conference previously scheduled for 7/24/2017 is rescheduled as to Andrew Ryan Leslie. New hearing date and time: Status Conference set for 7/17/2017 at 3:30 PM in Jacksonville Courtroom 12 C before Judge Brian J. Davis (CKS) (Entered: 05/22/2017) |
| 07/17/2017 | 32 | JOINT ORAL MOTION to continue trial. (CKS) (Entered: 07/18/2017) |
| 07/17/2017 | 33 | Minute Entry for proceedings held before Judge Brian J. Davis: STATUS Conference as to Andrew Ryan Leslie held on 7/17/2017; granting 32 Joint Oral Motion to continue trial as to Andrew Ryan Leslie (1). Status Conference set for 9/18/2017 at 3:30 PM in Jacksonville Courtroom 12 C before Judge Brian J. Davis. Jury Trial set for trial term commencing on 10/2/2017 at 9:00 AM in Jacksonville Courtroom 12 C before Judge Brian J. Davis. Court Reporter: Shelli Kozachenko (CKS) (Entered: 07/18/2017) |
| 09/18/2017 | 34 | ORAL MOTION to continue trial by Andrew Ryan Leslie. (CKS) (Entered: 09/19/2017) |
| 09/18/2017 | 35 | Minute Entry for proceedings held before Judge Brian J. Davis: STATUS Conference as to Andrew Ryan Leslie held on 9/18/2017; granting 34 ORAL Motion to continue trial as to Andrew Ryan Leslie (1). Status Conference set for 10/23/2017 at 3:30 PM in Jacksonville Courtroom 12 C before Judge Brian J. Davis. Jury Trial set for trial term commencing on 11/6/2017 at 9:00 AM in Jacksonville Courtroom 12 C before Judge Brian J. Davis. Court Reporter: Shelli Kozachenko (CKS) (Entered: 09/19/2017) |
| 10/02/2017 | 36 | NOTICE OF HEARING as to Andrew Ryan Leslie: Change of Plea Hearing set for 10/6/2017 at 02:00 PM in Jacksonville Courtroom 5 A before Magistrate Judge Joel B. Toomey. (TSP) (Entered: 10/02/2017) |
| 10/06/2017 | 37 | Minute Entry for proceedings held before Magistrate Judge Joel B. Toomey: Change of Plea Hearing as to Andrew Ryan Leslie held on 10/6/2017. (Digital) (TSP) (Entered: 10/06/2017) |
| 10/06/2017 | 38 | CONSENT regarding entry of a plea of guilty as to Andrew Ryan Leslie (Filed in Open Court) (TSP) (Entered: 10/06/2017) |
| 10/06/2017 | 39 | PLEA AGREEMENT re: count(s) One and Two of the Indictment as to Andrew Ryan Leslie (Filed in Open Court) (Original Plea Agreement returned to AUSA) (TSP) (Entered: 10/06/2017) |
| 10/06/2017 | 40 | **REPORT AND RECOMMENDATIONS concerning Plea of Guilty re: count(s) One and Two of the Indictment as to Andrew Ryan Leslie. Signed by Magistrate Judge Joel B. Toomey on 10/6/2017. (TSP)** (Entered: 10/06/2017) |
| 10/31/2017 | 42 | ACCEPTANCE OF PLEA of guilty and adjudication of guilt re: Count(s) One and Two of the Indictment as to Andrew Ryan Leslie. Sentencing set for 1/30/2018 at 10:00AM in Jacksonville Courtroom 12 C before Judge Brian J. Davis. Signed by Judge Brian J. Davis on 10/30/2017. (CKS) (Entered: 10/31/2017) |
| 01/17/2018 | 44 | Unopposed MOTION to Continue Sentencing by Andrew Ryan Leslie. (Rosenblum, Mark) (Entered: 01/17/2018) |
| 01/22/2018 | 45 | **ORDER granting 44 Defendant's Unopposed Motion to Continue Sentencing as to Andrew Ryan Leslie (1). The sentencing in this matter is continued to March 1, 2018 at 2:00 p.m. before the undersigned in Courtroom 12C. Signed by Judge Brian J. Davis on 1/19/2018. (CKS)** (Entered: 01/22/2018) |
| 01/22/2018 | 46 | NOTICE OF RESCHEDULING HEARING: The Sentencing hearing previously scheduled for 01/30/2018 is rescheduled as to Andrew Ryan Leslie. New hearing date and time: Sentencing set for 3/1/2018 at 02:00PM in Jacksonville Courtroom 12 C before Judge Brian J. Davis. (CKS) (Entered: 01/22/2018) |
| 02/22/2018 | 49 | |

USCA11 Case: 18-11183    Document: 17    Date Filed: 06/08/2018    Page: 9 of 205

| | | |
|---|---|---|
| | | SENTENCING MEMORANDUM by Andrew Ryan Leslie (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit)(Rosenblum, Mark) (Entered: 02/22/2018) |
| 03/01/2018 | 52 | Minute Entry for proceedings held before Judge Brian J. Davis: SENTENCING held on 3/1/2018 for Andrew Ryan Leslie (1), Count(s) 1, 2, Imprisonment: 720 months, this term consists of 360 months on each of Counts One and Two of the Indictment, all such terms to run consecutively.; Supervised Release: Life-Term, this term consists of Life-Terms as to Counts One and Two of the Indictment, all such terms to run concurrently.; Special Assessment: $200.00, Restitution: the victims' losses are undetermined and the Court shall set a date for the final determination of the victims' losses within 90 days of the date of the sentencing. Defendant is remanded to the custody of the USM. Court Reporter: Shelli Kozachenko (CKS) (Entered: 03/07/2018) |
| 03/01/2018 | | Sealed Document S-55 (CKS) (Entered: 03/07/2018) |
| 03/05/2018 | 51 | Unopposed MOTION for miscellaneous relief, specifically recommend prison designation by Andrew Ryan Leslie. (Rosenblum, Mark) (Entered: 03/05/2018) |
| 03/07/2018 | 53 | **JUDGMENT as to Andrew Ryan Leslie (1), Count(s) 1, 2, Imprisonment: 720 months, this term consists of 360 months on each of Counts One and Two of the Indictment, all such terms to run consecutively.; Supervised Release: Life-Term, this term consists of Life-Terms as to Counts One and Two of the Indictment, all such terms to run concurrently.; Special Assessment: $200.00, Restitution: the victims' losses are undetermined and the Court shall set a date for the final determination of the victims' losses within 90 days of the date of the sentencing. Signed by Judge Brian J. Davis on 03/05/2018. (CKS)** (Entered: 03/07/2018) |
| 03/08/2018 | 56 | **ORDER granting 51 Defendant's Unopposed Motion Asking the Court to Recommend Designation to FCC Butner or FCC Coleman as to Andrew Ryan Leslie (1). Signed by Judge Brian J. Davis on 3/8/2018. (CKS)** (Entered: 03/08/2018) |
| 03/21/2018 | 57 | NOTICE OF APPEAL by Andrew Ryan Leslie re 53 Judgment Filing fee not paid. (Rosenblum, Mark) (Entered: 03/21/2018) |
| 03/22/2018 | 58 | TRANSMITTAL of initial appeal package as to Andrew Ryan Leslie to USCA consisting of copies of notice of appeal, docket sheet, order/judgment being appealed, and motion, if applicable to USCA re 57 Notice of Appeal. Eleventh Circuit Transcript information form available to counsel at www.flmd.uscourts.gov under Forms and Publications/General. (Attachments: # 1 Docket Sheet, # 2 Notice of Appeal, # 3 USDC Criminal Judgment)(EAM) (Entered: 03/22/2018) |
| 03/29/2018 | | ACKNOWLEDGMENT by USCA of receiving Notice of Appeal on 3/29/2018 re 57 Notice of Appeal. USCA number: 18-11183-J. (EAM) (Entered: 03/30/2018) |
| 03/29/2018 | | USCA Case Number as to Andrew Ryan Leslie. USCA Number: 18-11183-J for 57 Notice of Appeal filed by Andrew Ryan Leslie. (EAM) (Entered: 03/30/2018) |
| 04/02/2018 | 59 | NOTICE OF ATTORNEY APPEARANCE: Adeel Bashir appearing for Andrew Ryan Leslie *for appellate purposes only* (Bashir, Adeel) (Entered: 04/02/2018) |
| 04/04/2018 | 60 | NOTICE OF HEARING as to Andrew Ryan Leslie: Restitution Hearing set for 5/25/2018 at 10:00 AM in Jacksonville Courtroom 12 C before Judge Brian J. Davis. (CKS) (Entered: 04/04/2018) |
| 04/05/2018 | 61 | TRANSCRIPT information form filed by Andrew Ryan Leslie for proceedings held on 10/06/2017 (Change of Plea) before Judge Joel B. Toomey re 57 Notice of Appeal. USCA number: 18-11183-J (Bashir, Adeel) (Entered: 04/05/2018) |
| 04/05/2018 | 62 | |

USCA11 Case: 18-11183    Document: 17    Date Filed: 06/08/2018    Page: 10 of 205

| | | |
|---|---|---|
| | | TRANSCRIPT information form filed by Andrew Ryan Leslie for proceedings held on 03/01/2018 (Sentence) before Judge Brian J. Davis re 57 Notice of Appeal. USCA number: 18-11183-J (Bashir, Adeel) (Entered: 04/05/2018) |
| 04/06/2018 | 63 | COURT REPORTER ACKNOWLEDGEMENT by Shelli Kozachenko re 57 Notice of Appeal as to Andrew Ryan Leslie. Estimated transcript filing date: 5/6/18. USCA number: 18-11183-J. (SMK) (Entered: 04/06/2018) |
| 04/06/2018 | 64 | COURT REPORTER ACKNOWLEDGEMENT by Shelli Kozachenko re 57 Notice of Appeal as to Andrew Ryan Leslie. Estimated transcript filing date: 5/6/18. USCA number: 18-11183-J. (SMK) (Entered: 04/06/2018) |
| 05/02/2018 | 65 | TRANSCRIPT of Digitally Recorded Change of Plea for dates of 10/6/17 held before Judge Joel B. Toomey, re: 57 Notice of Appeal as to Andrew Ryan Leslie. Court Reporter/Transcriber Shelli Kozachenko, Telephone number 904.301.6842. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 5/23/2018, Redacted Transcript Deadline set for 6/4/2018, Release of Transcript Restriction set for 7/31/2018. (SMK) (Entered: 05/02/2018) |
| 05/02/2018 | 66 | TRANSCRIPT of Sentencing for dates of 3/1/18 held before Judge Brian J. Davis, re: 57 Notice of Appeal as to Andrew Ryan Leslie. Court Reporter/Transcriber Shelli Kozachenko, Telephone number 904.301.6842. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 5/23/2018, Redacted Transcript Deadline set for 6/4/2018, Release of Transcript Restriction set for 7/31/2018. (SMK) (Entered: 05/02/2018) |
| 05/02/2018 | 67 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal as to Andrew Ryan Leslie. Court Reporter: Shelli Kozachenko (SMK) (Entered: 05/02/2018) |
| 05/02/2018 | 68 | NOTIFICATION that transcript has been filed by Shelli Kozachenko re: 57 Notice of Appeal as to Andrew Ryan Leslie USCA number: 18-11183-J (SMK) (Entered: 05/02/2018) |
| 05/02/2018 | 69 | NOTIFICATION that transcript has been filed by Shelli Kozachenko re: 57 Notice of Appeal as to Andrew Ryan Leslie USCA number: 18-11183-J (SMK) (Entered: 05/02/2018) |
| 05/18/2018 | 70 | Unopposed MOTION for miscellaneous relief, specifically Cancel Restitution Hearing re 60 Notice of Hearing by USA as to Andrew Ryan Leslie. (Brown, David) (Entered: 05/18/2018) |
| 05/18/2018 | 71 | **ORDER GRANTING 70 United States' Unopposed Motion to Cancel Restitution Hearing. Signed by Judge Brian J. Davis on 5/18/2018. (AMP)** (Entered: 05/18/2018) |
| 05/18/2018 | 72 | NOTICE CANCELLING HEARING: The Restitution Hearing scheduled for May 25, 2018, at 10:00 a.m. has been CANCELLED. (AMP) (Entered: 05/18/2018) |

| | |
|---|---|
| **PACER Service Center** | |
| **Transaction Receipt** | |
| 06/07/2018 14:38:02 | |
| pd2985:4289520:4287800 | |

USCA11 Case: 18-11183    Document: 17    Date Filed: 06/08/2018    Page: 11 of 205

| PACER Login: | | Client Code: | |
|---|---|---|---|
| **Description:** | Docket Report | **Search Criteria:** | 3:16-cr-00154-BJD-JBT |
| **Billable Pages:** | 8 | **Cost:** | 0.80 |

# Tab 13

FILED IN OPEN COURT

10.27.16

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.

ANDREW RYAN LESLIE

Case No.    3:16-cr-154-J-39JBT
Cts. 1-2:   18 U.S.C. § 2251(a)

**INDICTMENT**

The Grand Jury charges:

**COUNT ONE**

On or about October 14, 2016, in the Middle District of Florida, the

defendant,

ANDREW RYAN LESLIE,

did employ, use, persuade, induce, entice and coerce a minor, Child 1, to engage

in any sexually explicit conduct for the purpose of producing visual depictions of

such conduct, which visual depictions were produced using materials that have

been mailed, shipped or transported in or affecting interstate or foreign

commerce by any means.

In violation of 18 U.S.C. §§ 2251(a) and (e).

## COUNT TWO

On or about October 14, 2016, in the Middle District of Florida, the defendant,

### ANDREW RYAN LESLIE,

did employ, use, persuade, induce, entice and coerce a minor, Child 2, to engage in any sexually explicit conduct for the purpose of producing visual depictions of such conduct, which visual depictions were produced using materials that have been mailed, shipped or transported in or affecting interstate or foreign commerce by any means.

In violation of 18 U.S.C. §§ 2251(a) and (e).

## FORFEITURE

1.      The allegations contained in Counts One and Two of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture, pursuant to the provisions of 18 U.S.C. § 2253.

2.      Upon conviction of the violation of 18 U.S.C. § 2251(a) charged in Counts One and Two, the defendant, ANDREW RYAN LESLIE, shall forfeit to the United States, pursuant to 18 U.S.C. § 2253, all of his interest in:

        a.      Any visual depiction described in 18 U.S.C. §§ 2251, 2251A, or 2252, 2252A, 2252B, or 2260 of this chapter, or any book, magazine, periodical, film, videotape, or other matter which contains any such visual

2

depiction, which was produced, transported, mailed, shipped, or received in violation of this chapter:

   b.  Any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from such offense; and

   c.  Any property, real or personal, used or intended to be used to commit or to promote the commission of such offense or any property traceable to such property.

   3.  If any of the property described above, as a result of any act or omission of the defendant:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third person;

    c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be subdivided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to

21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 2253(b).

A TRUE BILL,

Foreperson

A. LEE BENTLEY, III
United States Attorney

By:

D. RODNEY BROWN
Assistant United States Attorney

By:

JULIE HACKENBERRY
Assistant United States Attorney
Chief, Jacksonville Division

4

Case 3:16-cr-00154-BJD-JBT    Document 13    Filed 10/27/16    Page 5 of 5 PageID 18

FORM OBD-34
APR 1991

No.

# UNITED STATES DISTRICT COURT
Middle District of Florida
Jacksonville Division

## THE UNITED STATES OF AMERICA

vs.

## ANDREW RYAN LESLIE

## INDICTMENT

Violations:

18 U.S.C. § 2251(a)

A true bill.

_____
Foreperson

Filed in open court this 27th day

of October, 2016.

_____
Clerk

Bail $ _____

GPO 863 525

# Tab 38

FILED IN OPEN COURT

10 | 6 | 2017

CLERK, U S DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

vs.                                          CASE NO.: 3:16-cr-154-J-39JBT

ANDREW RYAN LESLIE

---

### NOTICE REGARDING ENTRY
### OF A PLEA OF GUILTY

In the event the defendant decides at any time before trial to enter a plea of guilty, the United States Magistrate Judge is authorized by Local Rule 6.01(c)(12), United States District Court, Middle District of Florida, with the consent of the defendant, to conduct the proceedings required by Rule 11, Fed.R.Crim.P. incident to the making of the plea.  If, after conducting such proceedings, the Magistrate Judge recommends that the plea of guilty be accepted, a presentence investigation and report will be ordered pursuant to Rule 32, Fed.R.Crim.P.  The assigned United States District Judge will then act on the Magistrate Judge's Report and Recommendation; and, if the plea of guilty is accepted, will adjudicate guilt and schedule a sentencing hearing at which the District Judge will decide whether to accept or reject any associated plea agreement, and will determine and impose sentence.

### CONSENT

I hereby declare my intention to enter a plea of guilty in the above case, and I request and consent to the United States Magistrate Judge conducting the proceedings required by Rule 11, Fed.R.Crim.P., incident to the making of such plea.  I understand that if my plea of guilty is then accepted by the District Judge, the District Judge will decide whether to accept or reject any plea agreement I may have with the United States, and will adjudicate guilt and impose sentence.

Date:  October 6, 2017

_____
Defendant

_____
Defendant's Attorney

# Tab 39

FILED IN OPEN COURT

10-6-2017

CLERK, U. S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 3:16-cr-154-J-39JBT

ANDREW RYAN LESLIE

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by W. Stephen Muldrow, Acting United States Attorney for the Middle District of Florida, and the defendant, ANDREW RYAN LESLIE, and the attorney for the defendant, Mark J. Rosenblum, Esq., mutually agree as follows:

**A.   Particularized Terms**

**1.   Counts Pleading To**

The defendant shall enter a plea of guilty to Counts One and Two of the Indictment.  Counts One and Two each charge the defendant with production of child pornography, in violation of 18 U.S.C. §§ 2251(a) & 2251(e).

**2.   Minimum and Maximum Penalties**

Counts One and Two of the Indictment are each punishable by a mandatory minimum term of imprisonment of not less than 15 years and not

Defendant's Initials _____                    AF Approval _____

more than 30 years, a fine of $250,000, or both, a term of supervised release of

any term of years not less than 5, or life, and a special assessment of $100, said

special assessment to be due on the date of sentencing. In addition, pursuant to

Title 18, United States Code, Section 3014(a)(3), the Court shall assess an

amount of $5,000 on any non-indigent defendant. If the Court sentenced the

defendant on each count consecutively, the aggregate minimum and maximum

penalties would be a minimum mandatory term of imprisonment of not less

than 30 years and not more than 60 years, fines totaling $500,000, or both, a

term of supervised release of any term of years not less than 5 years, or life, and

special assessments totaling $200 and $10,000. Pursuant to Title 18, United

States Code, Section 3583(k), if the defendant is required to register under the

Sex Offender Registration and Notification Act and commits any criminal

felony offense under Title 18, United States Code, Chapters 109A, 110 or 117,

or Sections 1201 or 1591, the Court shall revoke the term of supervised release

and require the defendant to serve a term of imprisonment of not less than 5

years and up to life per count. Any other violation of the terms and conditions

of supervised release is punishable by a term of imprisonment of up to 3 years

per count. With respect to these offenses and pursuant to Title 18, United

States Code, Sections 2259, 3663A and 3664, the Court shall order the

defendant to make restitution to any victim of the offense(s), and with respect to

Defendant's Initials _____          2

other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community.

3.   **Elements of the Offense(s)**

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty.  The elements of Counts One and Two of the Indictment are:

<u>First</u>:     That an actual minor, that is, a real person who was less than 18 years old, was depicted;

<u>Second</u>:   That the defendant employed, used, persuaded, induced, enticed or coerced a minor to engage in sexually explicit conduct for the purpose of producing visual depictions of the conduct; and

<u>Third</u>:    That such visual depictions were produced using materials that had been mailed, shipped, or transported in interstate or foreign commerce.

4.   **No Further Charges**

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

Defendant's Initials _/W_         3

5.     **Restitution to Any Minor Victims of Offenses Committed by
       Defendant, Whether Charged or Uncharged**

Pursuant to 18 U.S.C. §§ 3663A(a) & (b), 18 U.S.C. § 3664, 18

U.S.C. § 2248, and 18 U.S.C. § 2259, the defendant agrees to make full

restitution to all minor victims of his offenses as to all counts charged, whether

or not the defendant enters a plea of guilty to such counts and whether or not

such counts are dismissed pursuant to this agreement.  Further, the defendant

agrees to pay restitution to any of his minor victims, for the entire scope of his

criminal conduct, including but not limited to all matters included as relevant

conduct.  The defendant acknowledges and agrees that this criminal conduct (or

relevant conduct) includes any minor victim of any child pornography offenses,

charged or uncharged, under Chapter 110, United States Code, and any minor

victim of any violation of federal and/or state law committed by the defendant,

including any contact sexual offense.  Further, pursuant to 18 U.S.C.

§ 3664(d)(5), the defendant agrees not to oppose bifurcation of the sentencing

hearing if the victims' losses are not ascertainable prior to sentencing.

6.     **Acceptance of Responsibility - Three Levels**

At the time of sentencing, and in the event that no adverse

information is received suggesting such a recommendation to be unwarranted,

the United States will recommend to the Court that the defendant receive a two-

level downward adjustment for acceptance of responsibility, pursuant to USSG

Defendant's Initials _____                    4

§3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level.  The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

7.  **Cooperation - Substantial Assistance to be Considered**

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the

charges in this case and other matters, such cooperation to further include a full

and complete disclosure of all relevant information, including production of any

and all books, papers, documents, and other objects in defendant's possession or

control, and to be reasonably available for interviews which the United States

may require.  If the cooperation is completed prior to sentencing, the

government agrees to consider whether such cooperation qualifies as

"substantial assistance" in accordance with the policy of the United States

Attorney for the Middle District of Florida, warranting the filing of a motion at

the time of sentencing recommending (1) a downward departure from the

applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a

sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or

(3) both.  If the cooperation is completed subsequent to sentencing, the

government agrees to consider whether such cooperation qualifies as

"substantial assistance" in accordance with the policy of the United States

Attorney for the Middle District of Florida, warranting the filing of a motion for

a reduction of sentence within one year of the imposition of sentence pursuant

to Fed. R. Crim. P. 35(b).  In any case, the defendant understands that the

determination as to whether "substantial assistance" has been provided or what

type of motion related thereto will be filed, if any, rests solely with the United

States Attorney for the Middle District of Florida, and the defendant agrees that

Defendant's Initials ____                    6

defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

### 8.   **Forfeiture of Assets**

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 2253, whether in the possession or control of the United States, the defendant or defendant's nominees.  The defendant specifically agrees and consents to the administrative forfeiture of the following:

a.   Gateway Laptop, SN N186A61005160;

b.   Thermaltake CPU, SN CA1A800M1NN00E1000657;

c.   Glite CPU, SN RC330UKKR3501121500070;

d.   Thermaltake, SN VJ400GIN201004005536;

e.   ASUS Laptop; SN D5N0CY56039221A;

f.   ACER Aspire One, SN LUS050B11184359EE22535, W/CORD;

g.   Cyber Power Supply, SN CPMDU2002334;

h.   Inatec External HD, SN WX11A5369636;

i.   9" Mid Android Tablet, SN JHS2CJHA1110AH;

j.   Seagate Barracuda Internal HDD, SN Z1F12JJM;

k.   Seagate Barracuda Internal HDD, SN 9VS2250M;

Defendant's Initials ___   7

l.    Seagate Barracuda Internal HDD; SN SQM1LB1N;

m.    Seagate Barracuda Internal HDD, SN 5XWIN7R6;

n.    (no name) Internal HDD, SN E79085KHH;

o.    Seagate Momentus Internal HDD, SN 5SH0HD40;

p.    Seagate Momentus Internal HDD, SN 55VIHXXB;

q.    Western Digital Black Internal HDD,
      SN WXZIE64CPA87;

r.    Samsung Internal HDD; SN 525WJ9FZ006527;

s.    Seagate Ultrathin Internal HDD, SN W3N0AYO5;

t.    Seagate Freeplay Internal HDD, SN Z1022K49;

u.    Canon Powershot Camera, SN 4628106690;

v.    Canon A3400 Powershot Camera, SN 432061614849;

w.    HTC Cell Phone, SN FA44J5900518;

x.    Samsung Phone, SN SCH1545FKVPS;

y.    Samsung Phone, SN A3LSMG935us;

z.    HTC Cell Phone, IMEI 990000326143433;

aa.   (5) ACER Monitors;

bb.   Monitor Stand w/ misc. cords;

cc.   WII w/ controllers, SN KU10259575907;

dd.   XBOX w/ cord, SN 12577674307;

ee.       IPOD 32GB, No SN;

ff. (5) Thumb Drives;

gg.  (5) SD Cards;

hh.  (2) SIM Cards;

ii.  (2) Spindles w/ CD'S;

jj.  CD Wallet w/ Disks;

kk.  Amazon Kindle Fire Tablet; and

ll.  HTC Cell Phone, SN T54GSV01963,

seized from the defendant by the Department of Homeland Security, U.S. Immigration and Customs Enforcement, on October 18, 2016.

If the administrative forfeiture proceeding is not completed prior to sentencing, the defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal or civil judicial forfeiture action.

The defendant also hereby agrees that the forfeiture described herein is not excessive and, in any event, the defendant waives any constitutional claims that the defendant may have that the forfeiture constitutes an excessive fine. Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

Defendant's Initials _____       9

9.    **Sex Offender Registration and Notification**

The defendant has been advised and understands, that under the Sex Offender Registration and Notification Act, a federal law, the defendant must register and keep the registration current in each of the following jurisdictions: the location of the defendant's residence, the location of the defendant's employment; and, if the defendant is a student, the location of the defendant's school.  Registration will require that the defendant provide information that includes name, residence address, and the names and addresses of any places at which the defendant is or will be an employee or a student.  The defendant understands that he must update his registrations not later than three business days after any change of name, residence, employment, or student status.  The defendant understands that failure to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

B.    **Standard Terms and Conditions**

1.    **Restitution, Special Assessment and Fine**

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses

Defendant's Initials _____                    10

described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement.  The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (18 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013 and if applicable, 18 U.S.C. § 3014(a)(3).  The special assessments are due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2.   **Supervised Release**

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the

Defendant's Initials _____                    11

conditions of release, the defendant would be subject to a further term of imprisonment.

3. **Immigration Consequences of Pleading Guilty**

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4. **Sentencing Information**

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5. **Financial Disclosures**

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United

Defendant's Initials _____      12

States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition.  The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party.  The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years.  The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.  The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.     **Sentencing Recommendations**

       It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office.  The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office.  Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement.  The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.     **Defendant's Waiver of Right to Appeal the Sentence**

       The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the

Defendant's Initials _____         14

right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

    8.    **Middle District of Florida Agreement**

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.    **Filing of Agreement**

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    **Voluntariness**

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in

Defendant's Initials _____    16

defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial.  The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement.  The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

### 11.  **Factual Basis**

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

### 12.  **Entire Agreement**

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea

Defendant's Initials _____          17

and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.   **Certification**

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this ___25___ day of ___September___, 2017.

W. STEPHEN MULDROW
Acting United States Attorney

ANDREW RYAN LESLIE
Defendant

D. RODNEY BROWN
Assistant United States Attorney

MARK J. ROSENBLUM
Attorney for Defendant

LAUREN E. BRITSCH
Trial Attorney
United States Department of Justice
Criminal Division
Child Exploitation & Obscenity Section

KELLY S. KARASE
Assistant United States Attorney
Deputy Chief, Jacksonville Division

Defendant's Initials _____                    18

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                         CASE NO. 3:16-cr-154-J-39JBT

ANDREW RYAN LESLIE

## PERSONALIZATION OF ELEMENTS

### As to Count One

1.      Do you admit that an actual minor, that is, a real person who was less than 18 years old, was depicted?

2.      In or about October 14, 2016, in the Middle District of Florida, did you employ and use a Child 1, to engage in sexually explicit conduct, that is, genital to genital and oral to genital sexual intercourse, for the purpose of producing visual depictions of such conduct?

3.      Do you admit that you produced such visual depictions using materials that had been mailed, shipped, and transported in interstate and foreign commerce, that is, a Canon PC1737 Powershot A3400 IS digital camera being serial number 432061019849 that was manufactured in China, and a Toshiba 8GB HC Micro SD card bearing serial number 1403RP4801P that was manufactured in Taiwan?

Defendant's Initials _____                19

**As to Count Two**

1.     Do you admit that an actual minor, that is, a real person who was less than 18 years old, was depicted?

2.     On or about October 14, 2016, in the Middle District of Florida, did you employ and use Child 2, to engage in sexually explicit conduct, that is, the lascivious exhibition of the minor's genitals, for the purpose of producing visual depictions of such conduct?

3.     Do you admit that you produced such visual depictions using materials that had been mailed, shipped, and transported in interstate and foreign commerce, that is, a Canon PC1737 Powershot A3400 IS digital camera being serial number 432061019849 that was manufactured in China, and a Toshiba 8GB HC Micro SD card bearing serial number 1403RP4801P that was manufactured in Taiwan?

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 3:16-cr-154-J-39JBT

ANDREW RYAN LESLIE


## FACTUAL BASIS

In 2015, agents with the U.S. Department of Homeland Security, Homeland Security Investigations (HSI) began an investigation into certain websites known to host images and videos depicting child pornography. This investigation targeted individuals who were users of such websites where child pornography was exchanged. In 2016, defendant, Andrew Ryan Leslie, was identified as a member of one of these websites. Further investigation revealed that Leslie resided in Middleburg, Florida.

On October 18, 2016, HSI agents and other law enforcement Officers executed a federal search warrant at Leslie's residence in Middleburg, Florida. Upon entry into the residence, agents observed as Leslie emerged from the master bedroom. Leslie stated in substance that a minor female child, referred to by Leslie as a "toddler," had been in the bed with Leslie when the agents arrived.

Defendant's Initials _ARL_

During the execution of the search warrant, HSI agents located, on a nightstand located next to Leslie's bed in the master bedroom, a Canon PC1737 Powershot A3400 IS digital camera bearing serial number 432061019849 that was manufactured in China. Contained within the camera was an SD adapter and a micro SD card. This micro SD card was a Toshiba 8GB HC Micro SD card bearing serial number 1403RP4801P that was manufactured in Taiwan. This camera and this SD card were each shipped and transported in or affecting interstate and foreign commerce.

During a forensic preview, agents discovered that the SD card contained a series of pornographic images depicting Leslie with two different minor female children. In several images, the same prepubescent minor female child (Child 1, who was approximately 2 years old at that time) who was in the bed with Leslie that morning was depicted. Other images depicted a different infant female child (Child 2, who was approximately 7 months old at that time). These images depicted, among other things, Child 1 being vaginally and orally penetrated by Leslie's penis. There were also images depicting the lascivious exhibition of Child 2's genitalia. In several images, Leslie is depicted gripping his own penis and contacting the genitalia of Child 1 with it. All the images on the Toshiba SD card (42 in total) were produced by Leslie on October 14, 2016 using the Canon Powershot digital camera.

Defendant's Initials _____        2

HSI agents also seized numerous items of computer media from Leslie's residence, including several laptop computers, computer hard disk drives, tablets, cell phones, and cameras.  Forensic analysis of these items revealed that Leslie had produced, received, distributed, and possessed numerous images and videos depicting child pornography.  Moreover, logs of online conversations between Leslie and other individuals were recovered that demonstrate, among other things, that Leslie had discussed engaging in sexual activity with several minor children.

Leslie acknowledges that there exists a sufficient nexus for purposes of forfeiture between the items specified herein and the criminal conduct set forth above.

Defendant's Initials ____   3

# Tab 40

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

vs.                                                   CASE NO.  3:16-cr-154-J-39JBT

ANDREW RYAN LESLIE

_____

## REPORT AND RECOMMENDATION[1]
## CONCERNING PLEA OF GUILTY

The Defendant, by consent, has appeared before me pursuant to Rule 11, Fed. R. Crim. P. and Rule 6.01(c)(12), M. D. Fla. Rules, and has entered a plea of guilty to Counts One and Two of the Indictment.  After cautioning and examining the Defendant under oath concerning each of the subjects mentioned in Rule 11, I determined that the guilty plea was knowledgeable and voluntary, and that the offenses charged is supported by an independent basis in fact containing each of the essential elements of such offenses. I therefore recommend that the plea of guilty be accepted and that the Defendant be adjudged guilty and have sentence imposed accordingly.

**DONE AND ENTERED** at Jacksonville, Florida, this 6th day of October, 2017.

JOEL B. TOOMEY
United States Magistrate Judge

Copies to:
Honorable Brian J. Davis
United States District Judge
Assistant United States Attorney (Brown)
Asst. Federal Public Defender (Rosenblum)
U.S. Pretrial
United States Probation

_____

[1] "Within 14 days after being served with a copy of the recommended disposition [of a plea of guilty], . . . a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Crim. P. 59(b)(2).  "Failure to object in accordance with this rule waives a party's right to review."  *Id.*; *see also* 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

Tab 42

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**UNITED STATES OF AMERICA**

**v.**                                                    **CASE NO. 3:16-cr-154-J-39JBT**

**ANDREW RYAN LESLIE**
_____/

### ACCEPTANCE OF PLEA OF GUILTY,
### ADJUDICATION OF GUILT, AND
### NOTICE OF SENTENCING

The Court adopts the Report and Recommendation Concerning Plea of Guilty

(Doc. 40) entered by the Honorable Joel B. Toomey, United States Magistrate Judge, to

which the fourteen day objection period was waived. Thus, the Court accepts Defendant's

plea of guilty to Counts One and Two of the Indictment, and Defendant is adjudged guilty

of such offenses.

**SENTENCING** for the Defendant is hereby scheduled for **January 30, 2018, 10:00**

**AM**, before the undersigned in the United States Courthouse, Courtroom No. 12C,

Twelfth Floor, 300 North Hogan Street, Jacksonville, Florida 32202.  **The Court notifies**

**any defendant currently on pretrial release that pursuant to 18U.S.C. § 3143(a)(2),**

**the Court is required to remand a defendant into custody at sentencing in drug**

**cases and cases involving crimes of violence. However, notwithstanding this**

**provision, pursuant to 18 U.S.C. § 3145(c), the Court may allow an otherwise**

**qualified defendant to voluntarily surrender for "exceptional reasons."**

IF THE PARTIES WANT THE COURT TO CONSIDER ANY MOTION FOR

DEPARTURE OR OTHER WRITTEN MATERIAL OTHER THAN THE PRE-SENTENCE

INVESTIGATION REPORT, IT MUST BE SUBMITTED <u>NO LATER THAN **TEN (10)**</u>

**BUSINESS DAYS** PRIOR TO THE DATE OF SENTENCING. ANY RESPONSES TO MOTIONS OR OTHER WRITTEN MATERIALS SHALL BE SUBMITTED NO LATER THAN **FIVE (5) BUSINESS DAYS** PRIOR TO THE DATE OF SENTENCING. IN ADDITION, IF ANY PARTY BELIEVES THAT THE SENTENCING MAY TAKE LONGER THAN ONE HOUR, PLEASE NOTIFY THE UNDERSIGNED'S CHAMBERS IMMEDIATELY.

**NOTE:** **All persons entering the Courthouse must present photo identification to Court Security Officers. Although cell phones, laptop computers, and similar electronic devices generally are not permitted in the building, attorneys may bring those items with them upon presentation to Court Security Officers of a Florida Bar card (presentation of the Duval County Courthouse lawyer identification card will suffice) or Order of special admission pro hac vice.**[1]

**DONE** and **ORDERED** in Jacksonville, Florida this 30th day of October, 2017.

BRIAN J. DAVIS
United States District Judge

cs
Copies to:

Asst. U.S. Attorney (Brown)
Asst. Federal Public Defender (Rosenblum)
United States Marshals Service
United States Probation Office
United States Pretrial Services

---

[1] Cell phones must be turned off while in the courtroom.

- 2 -

# Tab 49

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

**UNITED STATES OF AMERICA**

      **v.**                                 **Case No. 3:16-cr-154-J-39JBT**

**ANDREW RYAN LESLIE**

_____/

## DEFENDANT'S SENTENCING MEMORANDUM

Andrew Ryan Leslie, through counsel, files his Sentencing Memorandum for the Court's consideration in connection with his upcoming sentencing.

## I.    Introduction

This is a difficult case for all concerned. It is difficult for the victims and their families, it is difficult for the prosecution and defense teams, it is difficult for Mr. Leslie, it is difficult for Mr. Leslie's family. And no doubt, at what is expected to be an unusually emotional and dramatic sentencing hearing, it will be difficult for the Court.

Mr. Leslie is exposed to not less than 15 and not more than 60 years in prison. The defense does not intend to ask for a specific sentence within that range, but rather simply to ask the Court to impose a sentence that will give Mr. Leslie, who just turned 23, an opportunity to see the light at the end of the

tunnel, while incentivizing him to seek and maintain the therapy he so desperately needs and desires.

## II.    History and Characteristics

Andrew Leslie was just 10 years old when he realized he was a pedophile.   To say he was and is horrified and sickened by that discovery and its resultant behavior would be a gross understatement.

At 10, he was old enough to grasp that he was a "monster" in society's eyes, yet too young to know what to do about it.[1]   He longed to be normal. He contemplated suicide.   He fought his awful urges for years. He tried to ignore them.   He tried blocking tempting Internet sites and ridding himself of tempting material.   Later, he tried to find satisfaction through child pornography, considering it more harmless than the alternative.   At the time of his arrest in this case, he had begun inquiring about changing his gender, according to his mother.   Maybe that might work to change his behavior. But nothing did.

The one thing Mr. Leslie did not do was seek help.   He desperately wanted it but simply did not know how or where to find it.   Not at age 10, when he first realized the horror of who he was.   Not at age 16, when his self-

---

1 Mr. Leslie has written a letter to the court detailing his shame and deep remorse about who he is and what he has done.   He uses the word monster to describe himself.   The letter is attached as Exhibit 1.

loathing led him to contemplate suicide a second time and his doctor prescribed Prozac for severe depression.[2]   And not at age 21, right before his long-held fears of arrest and a lengthy prison sentence became his reality.   He kept his secret shame hidden from his family, his classmates and his doctor, fearing that telling anyone would result in stigmatization and prison.

This is a common phenomenon and barrier to prevention among men who realize they are attracted to children and do not know where to turn, according to sociologist Jill Levenson, an associate professor at Barry University, who surveyed offenders about why they did not seek help before it was too late.   Unlike other addictions, there are no advertised helplines for pedophiles.   There is a fear factor as well. "Even if they've never acted on them, men who are concerned about their attractions are reluctant to seek counseling because they're afraid they're going to be reported," Dr. Levenson said in a 2015 Psychology Today article.[3]

Since his arrest in 2016, Mr. Leslie has been steadfast in his desire to know why he is the way he is and, more importantly, getting help to change. It has come up in nearly every conversation the undersigned and his staff have

_____

2  Records referencing this prescription from Mr. Leslie's primary physician, Dr. Bala Munipalli, are attached as Exhibit 2.

3  *Sympathy for the Deviant*, Psychology Today, November/December 2015.   The article, which explores the double-edged stigma of pedophilia, is attached as Exhibit 3.

had with him.   Mr. Leslie was thrilled when he learned that his defense team had contracted neuropsychologist Robert Cohen to evaluate him because he hoped it would give him insight into his behavior and become a catalyst to change.   Mr. Leslie wants intensive sex offender treatment while in prison, and Dr. Cohen recommends that it be part of his sentence, along with continued psychiatric care. [4]

Mr. Leslie also has been steadfast in his cooperation with authorities since his arrest.   He has had several meetings with law enforcement and provided information whenever asked.   He provided passwords to his electronic devices.   At times, he reached out to the undersigned's office about contacting law enforcement whenever he thought of something that might be helpful.   Although his assistance will not be rewarded through the filing of a motion for downward departure under USSG § 5K1.1 since no arrests have been made to date, the government has represented that his cooperation has been extremely valuable to law enforcement and that the Court will be asked to consider it in the sentencing equation.

Mr. Leslie readily accepted responsibility for his criminal offense and continues to do so.   He has never attempted to minimize or justify his

---

4  A copy of Dr. Cohen's evaluation is attached as Exhibit 4.

behavior.  He understands that his actions merit a serious prison sentence. He feels incredible remorse for his victims.  He wants to pay whatever restitution the Court orders, though he realizes that will be a pittance compared to the damage he has done.  He hopes one day to start an organization to help pedophiles get help before they act on their attractions. As unrealistic as that sounds in light of Mr. Leslie's foreseeable future, it is reflective of his sincere remorse.

As he states in his letter to the Court, "I wish I could undo everything, but I can't.  However, I can try to make everything … at least as right as possible."

Mr. Leslie was born in Jacksonville following a one-time encounter between his mother and biological father.  He grew up in Clay County.  He did not meet and form a relationship with his father until he was 12.

Mr. Leslie does not attribute any of his aberrant behavior to his childhood, which he recalls as basically positive.  His mother, Sharon Leslie, could not recall any episodes of physical trauma or abuse.  She does recall his female cousins dressing him up as a girl when he was about five years old and her son verbalizing around the same age that he did not like having a penis.

By all accounts, Mr. Leslie was a contributing member of society throughout high school and into adulthood.   He did not use drugs or commit even petty crimes.   Letters from family and friends describe his helpfulness, compassion and attentiveness toward the needs of others.[5]   They are shocked that the polite and respectful young man, who assisted them or stood by them through various ordeals, committed these crimes.   They are saddened they did not notice any red flags that might have alerted them to Andrew's internal struggles or even prevented his behavior from escalating to the point that it did.   Yet, as true friends and family members do, they are standing by him even while acknowledging their horror at his behavior.

Family photos provided by Sharon Leslie show a healthy, typical young boy. Tellingly, however, very few of them after early childhood show him smiling.[6]

He was a good student and graduated on time from Middleburg High School in 2013 with a 3.412 grade point average.[7]   A month after graduation, he started work as a software engineer, a job he held until his arrest.[8]   The

---

[5] Letters are attached as Exhibit 5.

[6] Photos are attached as Exhibit 6.

[7] A copy of his transcript is attached as Exhibit 7.

[8] Verification of Mr. Leslie's employment with Focus School Software is attached as

position paid well enough that Mr. Leslie was able to buy his own home when he was 19 years old.

All of this masked the internal struggles and self-loathing lurking deep in Mr. Leslie's soul and the resultant criminal behavior that brings him before the Court. In keeping with Dr. Cohen's recommendations, Mr. Leslie requests that his sentence include intensive psychosexual counseling and sex offender treatment.

## III.    Conclusion

Andrew Leslie is begging for help in order to vanquish the demon that has plagued his life. While in prison he intends to take advantage of all counseling and sex offender treatment opportunities he can get. It is his hope that he can continue to assist the authorities with their ongoing investigation of other pedophiles. All that Mr. Leslie asks is that the Court view him as a person who sincerely wants to change and will make every effort to do so.

---

Exhibit 8. The company is based in St. Petersburg, and Mr. Leslie worked from home. The job did not involve any contact with students.

Respectfully submitted,

Donna Lee Elm
Federal Defender


s/ *Mark Rosenblum*
Mark Rosenblum
Assistant Federal Defender
Florida Bar No. 289175
200 West Forsyth Street, Suite 1240
Jacksonville, Florida 32202
Telephone: 904-232-3039
Fax: 904-232-1937
E-Mail: mark_rosenblum@fd.org
Attorney for defendant


## CERTIFICATE OF SERVICE

I certify that on February 22, 2018 I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system, which will send a

notice of electronic filing to all counsel of record.

s/ *Mark Rosenblum*
Assistant Federal Defender

*United States v. Andrew Ryan Leslie*

**Case No. 3:16-cr-154-J-39JBT**

# Exhibit 1

Letter to the Court

from Andrew Leslie

Your Honor,

First I would like to thank you for reading th**SCAM**It helps you get to know me and show you that I am sorry for what I did as well as my hopes for the future.

It all started around when I was ten years old. I began to look at girls around my age modeling. After months of that I found a website called "Playtoy Magazine" and they advertised "Non-nude Models." These were girls of all ages in various outfits including just their underwear. I ended up getting hooked on this. At the time I didn't think any of this was wrong as they were my age. But as time went on I caught myself looking at the younger girls. When I first noticed this I was filled with sickness. I blocked the website from my computer and ended up reporting it to The National Center for Missing and Exploited Children in hopes of shutting it down. I wish I could say it ended there but my desire became too much and I was back browsing the website. I didn't consider myself a pedophile just yet as I was a kid myself I thought it was just curiosity like when little kids play doctor. Little did I know I would become a monster later on. When I was about twelve I learned about hentai. I discovered that I could find all of my cartoons naked and having sex. This became my new addiction. I began to look at everything from American Dragon: Jake Long to Lilo and Stitch Then it occured to me that I was still looking at the younger girls even though I was getting older. I was ashamed of myself and kept trying to break the habit. I blocked every website I used and even browsed adult porn to try and alivrate my urges. When none of this worked I became severly depressed at the realization that I was a pedophile I never told anyone about this as I was scared of what might happen to me. By watching TV I knew how the world felt towards people like me and at the time I thought if

anyone knew ADC I would into jail. Maybe that would have been good at the time, like a scared straight program. But anyway instead of talking to anyone I thought of suicide as everyone hated me. I had it all planned out and was about to start when my grandfather pulled up to take me to church. Church made me realized that people still liked me but only because they didnt know. I made sure that I hide everything better after that. At this point I didn't think I would ever act on my attraction and it was my biggest fear. When I turned fourteen I realized I could find child porn on images.ca (a program for sharing files, mainly music). This is when my attraction turned from young girls to toddlers. I also learned how to hide all of it behind a password so I had nothing to worry about. At sixteen I had what women refer to as baby fever. I wanted a child so badly but I was afraid that I might act on my attraction. I didn't know what to do. In the end the depression from both became too much for me to handle and I got help from my doctor. He gave me a prescription for an antidepressant which helped some. I also found an online community for pedophiles and from it it made me think my attraction wasn't wrong cause so many others had the same attraction. At eighteen the baby fever came back and I began to babysit my baby cousin while her mom slept. At this time I never had the urge to act on my attraction. Later I moved to my lady and began to babysit a girl about nine. I never acted on my attraction then either however I did show her lots of affection. A year and half later I moved back to my moms to find a house in Middleburg and began to babysit my cousin again but this time without her mother here in It first it began as curiosity of what a girl felt like as I was a virgin and it got worse as time went on.

Now I wish I could undo all of this but I can't. However I

can try to make everything right or at least as right as possible. I want to pay my restitution and do anything else to make things better. I am deeply sorry for my actions. It is my hope that I can start an organization called "Pedophilia Support Network." I want to offer consoling services to those affected by pedophilia and get the help before they act on their attraction. I realize now that everything I've done warrents me to be locked away for pretty much life and I don't disagree with that. But I would like to do some good in my life and spend time with my mother before its too late. I've read the presentencing report and I have no issues with the special conditions except: No contact with minors and prohibition against using a computer. I fully understand the reason behind these. However I've spent my whole life wanting a family and a big one. With supervision and the medication I'm on I won't be a risk to reoffend and I will have sex offender treatment to back it up. As for prohibition against using a computer, my entire career is based on the internet and computers. Can I request to have my computer monitored, in which I will pay for? If I'm able to use computers I have no issues paying for my restitution. If I'm able to use one while I'm in prison then I can pay sooner and I'll be able to pay the cost of prosecution activ..

I hope this letter finds you well and helps you get to understand me and show you I want to make things better.

Sincerely,

Andrew Leslie

*United States v. Andrew Ryan Leslie*

**Case No. 3:16-cr-154-J-39JBT**

# Exhibit 2

Records from

Dr. Bala Munipalli

ST VINCENTS PHYSICIAN ENTERPRISE • 1658 ST VINCENTS WAY, SUITE 200, MIDDLEBURG FL 32068-2689

**LESLIE, ANDREW (id #201066242, dob: 01/16/1995)**

Last amended by BALA S MUNIPALLI, MD on 05/11/2016 at 10:25am

Patient

| | | | |
|---|---|---|---|
| **Name** | LESLIE, ANDREW (21yo, M) ID# | **Appt. Date/Time** | 05/11/2016 09:00AM |
| **DOB** | ███████ | **Service Dept.** | SVPE_PRIMARY_CCMOB 320 |
| **Provider** | BALA S MUNIPALLI, MD | | |
| **Insurance** | Med Primary: ███████ | | |

Insurance # : ███████
Policy/Group # ███████
Prescription: OPTUMCOM - Member is eligible.
Prescription: PRIMFL - Member is eligible.

Patient's Pharmacies

**WALGREENS DRUG STORE 06744 (ERX): 2675 BLANDING BLVD, MIDDLEBURG FL 32068, Ph (904) 291-4375, Fax (904) 291-9344**

Chief Complaint

Establish care/ pain in hands right mostly

Problems

Reviewed Problems
• Chronic back pain
• Hand pain

Medications

Reviewed Medications

**Alavert 10 mg disintegrating tablet**                       05/11/16   entered
Take 1 tablet(s) every day by oral route as needed.

Allergies

Reviewed Allergies
NKDA

Past Medical History

Discussed Past Medical History
**allergies: Y**

Surgical History

Reviewed Surgical History
no prior surgeries

Family History

Discussed Family History
Maternal Grandfather

- Malignant neoplastic disease
- Type 1 diabetes mellitus
- Heart disease

Mother
- Diabetes mellitus
- Essential hypertension

Social History

Discussed Social History
**Internal Medicine**
Alcohol intake: Occasional
Smoking Status: Never smoker

Vitals

| | | | |
|---|---|---|---|
| **Ht:** | 5 ft 6 in (167.64 cm) 05/11/2016 09:33 am | **Wt:** 108 lbs 9 oz (49.24 kg) 05/11/2016 09:33 am | **BMI:** 17.5 05/11/2016 09:33 am |
| **BP:** | 120/60 sitting L arm 05/11/2016 09:34 am | **BP Cuff Size:** adult 05/11/2016 09:34 am | **Pulse:** 69 bpm 05/11/2016 09:34 am |

ST. VINCENTS PHYSICIAN ENTERPRISE · 1658 ST VINCENTS WAY, SUITE 210, MIDDLEBURG FL 32068-4459

**LESLIE, ANDREW (id #⬛⬛⬛, dob: ⬛⬛⬛)**

**O2Sat:** 98% 05/11/2016 09:34 am          **RR:** 18 05/11/2016 09:34 am          **T:** 98.7 F° (37.06 C) 05/11/2016 09:34 am

## HPI

21 year old here to new patient physical. He reports intermittent allergies and uses Alavert. He reports he is a software engineer and reports pain in right first three fingers with radiation of pain right forearm x 4 weeks Says has been going on for 2-3 years. He has been using his hands daily. Has tingling in hands throughout the day but does not wake him up at night. 2011 diagnosed with depression- gets bouts off and on but took himself off Prozac and feels better off the meds not suicidal or homicidal. ROS + for generalized weakness, fatigue ( from lack of sleep), major weight change, depression when he was living with a girlfriend that had a child- was not a good relationship over 6 month period- ended March 26 - symptoms have resolved. Gained weight back after losing it during stressful period. Fever , chills, bronchitis, cough, chest congestion when he had 3 day flu 2-3 weeks ago and took cough medication and that resolved the symptoms . Ear aches, postnasal drainage, hoarseness, runny nose, when allergies flare Chest pain, anxiety, depression on and off since age 9 Chest pain last 10 seconds to 2 minutes and hurts when he moves in bed or when stands. Ringing in ears since age 6 - wakes up with it sometimes and then resolves - comes and goes throughout the day. Hearing test was normal. Takes Ibuprofen -used to take Aspirin when he gets a headache about once a month. Muscle pain with the right hand pain Chronic back pain dull 3/10 and manageable, when gets 7/10 uses Ibuprofen- gets this severe about every 3 months. Says related to posture but does not do the exercises to help his back pain. He is interested in PT for the back pain. When gets headache - diffuse, throbbing, aching and Ibuprofen helps the headaches. Memory difficulties -gets forgetful about plans he arranges like going out with friends and sometimes forgets what day of the week it is - stays up to 2 AM and thinks the memory issues are related to poor sleep habits. Says night owl and forgets about going to sleep When goes to bed stays asleep Sometimes notices tingling in left hand

## ROS

**Additionally reports: ROS discussed - see HPI All other ROS negative**

### Well Child ROS

Patient is a 21-year-old male.
Reported by patient.
**Diet and Nutrition:**
● Dietary: 3 meals/day, appropriate dairy intake, appropriate Calcium intake, normal portions,**diet not well balanced.**
**Dental:**
● Dental: regular dental visits, brushes teeth 2 times/day, flosses teeth.
**Sleep:**
● Sleep: sleeps through the night, no difficulty falling asleep, no trouble getting up.
**Elimination:**
● Elimination: normal bowel movement frequency, normal consistency.
**Genitourinary:**
● Male Genitourinary: testicular self exams.
**Safety/Lifestyle:**
● Injury prevention: wears seatbelt, understands sun protection, understands conflict resolution/violence prevention.
● Risk Taking: denies drug use, denies tobacco use.
● Sexual History: **occasional alcohol use.**
**School/Behavior:**
● School/Behavior: no behavior problems, **he is working as a software engineer.**
● Exercise: **does not get regular exercise.**
● Other: normal mood, denies suicidal ideations, healthy peer relationships,**currently without depression.**

### Physical Exam

Patient is a 21-year-old male.

**Constitutional:** General Appearance: well-nourished and well-developed. Level of Distress: NAD. Ambulation: ambulating normally.

**Psychiatric:** Mental Status: normal mood and affect and active and alert. Orientation: to time, place, and person.

**Head:** Head: normocephalic and atraumatic.

**Eyes:** Lids and Conjunctivae: no discharge or pallor and non-injected. Pupils: PERRLA. Corneas: grossly intact. EOM: EOMI. Lens: clear. Sclerae: non-icteric.

**ENMT:** Ears: no lesions on external ear, EACs clear, and TMs clear. Nose: no lesions on external nose, sinus tenderness, or nasal discharge and nares patent and nasal passages clear. Lips, Teeth, and Gums: no mouth or lip ulcers or bleeding gums. Oropharynx: no erythema or exudates and moist mucous membranes and tonsils not enlarged.

**Neck:** Neck: supple, FROM, trachea midline, and no masses. Lymph Nodes: no cervical LAD or supraclavicular LAD. Thyroid: no enlargement or nodules and non-tender.

**Lungs:** Respiratory effort: no dyspnea. Percussion: no dullness, flatness, or hyperresonance. Auscultation: no wheezing, rales/crackles, or rhonchi and breath sounds normal and good air movement.

**LESLIE, ANDREW (id ▓▓▓▓▓▓, dob: ▓▓▓▓▓▓)**

**Cardiovascular:** Heart Auscultation: normal S1 and S2; no murmurs, rubs, or gallops; and RRR. Pulses: normal throughout.

**Abdomen:** Bowel Sounds: normal. Inspection and Palpation: no tenderness, guarding, masses, rebound tenderness, or CVA tenderness and soft and non-distended. Liver: non-tender and no hepatomegaly. Spleen: non-tender and no splenomegaly. Hernia: none palpable.

**Musculoskeletal::** Motor Strength and Tone: normal and normal tone. Joints, Bones, and Muscles: no contractures, malalignment, or tenderness and normal movement of all extremities; **mild decreased grip strength right hand + Tinel left hand**. Extremities: no cyanosis or edema.

**Neurologic:** Gait and Station: normal gait and station. Cranial Nerves: grossly intact. Sensation: grossly intact. Reflexes: DTRs 2+ bilaterally throughout. Coordination and Cerebellum: no tremor.

**Skin:** Inspection and palpation: no rash, ulcer, induration, nodules, or jaundice and good turgor;**mild facial acne benign hyperpigmented lesions on chest, neck, back, arms, legs**.

**Back:** Thoracolumbar Appearance: normal curvature.

Screening
None recorded.

Assessment / Plan

**1. Adult health examination** - Advised self testicular exams prn
    sunscreen when outdoors
    avoid alcohol, drugs, tobacco
    exercise, healthy diet lean protein, fruits/vegetables, adequate water intake
    requested vaccine records -update Tdap but has to check with insurance to make sure covered
    Z00.01: Encounter for general adult medical examination with abnormal findings

**2. Hand pain** - overuse vs carpal tunnel EMG/NCS discussed
    f/u 1 week after test completed
    M79.641: Pain in right hand
   • ELECTROMYOGRAM/NERVE CONDUCTION STUDY - Note to Imaging Facility: right hand pain, numbness, pain radiates into forearm

**3. Examination of blood pressure** - BP 120/60 Monitor BP closely
    Z01.30: Encounter for examination of blood pressure without abnormal findings

**4. Body mass index less than 20** - Monitor weight Says this is his baseline
    Z68.1: Body mass index (BMI) 19 or less, adult

**5. Chronic back pain** - discussed with patient about physical therapy evaluation for the chronic back pain and he is agreeable with the referral
    G89.29: Other chronic pain
   • PHYSICAL THERAPY REFERRAL - Schedule Within: provider's discretion

Return to Office
None recorded.

Amendment Sign-Off
Encounter signed-off by BALA S MUNIPALLI, MD, 05/11/2016.

Encounter performed and documented by BALA S MUNIPALLI, MD
Encounter reviewed & signed by BALA S MUNIPALLI, MD on 05/11/2016 at 10:15am
Amendment closed by BALA S MUNIPALLI, MD on 05/11/2016 at 10:25am

*United States v. Andrew Ryan Leslie*

**Case No. 3:16-cr-154-J-39JBT**

# Exhibit 3

# Article from

# Psychology Today



# SYMPATHY FOR THE DEVIANT

THE INTENSE STIGMA SURROUNDING CHILD SEXUAL ABUSE CLOUDS AN ALREADY MISUNDERSTOOD SUBJECT AND MAY EVEN PREVENT PEOPLE FROM GETTING HELP BEFORE THEY COMMIT HARM. ONE CONVICTED OFFENDER SHARES HIS STORY.

BY **JENNIFER BLEYER**    PHOTOGRAPHS BY **REINHARD HUNGER**

## ONE FRIDAY EVENING

In September 2009, a pair of detectives showed up at the house of a middle-school gym teacher named Evelyn* and asked to speak with her husband, Eugene. A soft-spoken woman with rosy cheeks and tiny bangs, Evelyn told them he was at the small airport three miles away where he worked as a part-time flight instructor. They wouldn't say what their inquiry was about, and they asked her not to call him. Always deferential to authority, she invited them to wait inside.

Sitting in awkward silence, Evelyn strained to imagine why they were there. Eugene was a respected member of the community—a former U.S. Navy navigator who, after his enlistment, had become a Methodist minister. He was, by all accounts, a compassionate counselor to parishioners going through rocky times, a generous mentor to young people, a supportive ally of his colleagues, and a caring father to his and Evelyn's twins, then in their 20s. He was self-effacing and humble—it could take years of acquaintance before he would mention that he once led worship services for President Reagan at Camp David.

Evelyn felt a knot of dread in her stomach. She wondered if this had something to do with a strange brush with the law Eugene had had two years earlier, after he retired from the ministry and returned to his earliest passion, flying airplanes. A complaint had been lodged about inappropriate conduct with one of his flight students, a 14-year-old boy. The boy had told police that when they were flying, Eugene had touched his thigh and, another time, had tried to kiss him. The complaint was referred to the district attorney's office, which declined to pursue it due to insufficient evidence. Eugene had told Evelyn that it was a misunderstanding—a single-engine propeller airplane is extremely tight quarters and he was just trying to help the boy, who said he had a leg cramp. Still, he was devastated by the accusation and agreed with Evelyn to seek help through a Christian counseling service. He spoke vaguely with a counselor about feeling anxious and depressed.

Evelyn heard a car pull up outside. Trim and silver-haired at 64, Eugene strode in through the garage. He froze when he saw the detectives, whom he recognized from his work as a volunteer chaplain for the police department. The detectives announced that they had a search warrant and collected his cell phone, digital camera, computers, and thumb drive. They asked him to come down to the police station; he opted to go right away. Before leaving, he stood with Evelyn for a fraught moment and told her point-blank that he had had inappropriate contact with a family friend's 13-year-old son, whom he had taken under his

*The couple are referred to by their middle names.

wing in the past year, offering him flight lessons and treating him to special outings. He left, and Evelyn started to wail.

## CROSSING THE LINE

"I KNEW WHY the police were there as soon as I saw them," Eugene told me six years later. "I was devastated, but a part of me was also enormously relieved to just be done with this."

After leaving the ministry, he had begun to notice an attraction to early adolescents that was "totally uncomfortable," he said. It was a feeling that had nagged at the edge of his consciousness before, a kind of nebulous allure that had never led to any improper behavior. Suddenly, he found himself spending more and more time with certain young teenagers, feeling obsessed with them, and inching toward a line he knew he shouldn't cross.

"It was progressive," he told me. "It went from skinny dipping, to sleeping nude, to embracing and searching for a full-blown 'relationship.' I did not at the time identify what was going on, but I knew deep down inside that something was wrong. I can't tell you the number of times I told myself, 'Eugene, you're 64. What are you doing looking for a relationship with a 13-year-old?' But it was like being an alcoholic where the drive for pleasure becomes overriding. And where could I go for help? Whom could I trust? I knew how society views pedophiles. I was already full of shame, and those kinds of stories only fueled my shame more."

When Eugene showed up at the police station, the accusations were enumerated: The boy in question had told authorities that on several occasions when the two were "camping" inside a tent in a hangar at the airport, they had slept beside each other while Eugene was completely nude, and Eugene had touched the boy's buttocks. The boy also said that Eugene had taken photographs of him in just his underwear and a shirt—pictures that were discovered on the thumb drive. After confirming the allegations, Eugene was arrested and charged with indecent assault, indecent exposure, and corruption of a minor.

Reports of his arrest were soon all over the local news. His friends and colleagues at the airport were stunned, as was everyone at his church, where he was a Sunday service regular and an active member of a Bible study group. Released on bail, he shuttered himself in his house and descended into nearly suicidal despair. Evelyn also became depressed. She anguished over why she hadn't more clearly recognized that something was amiss and intervened. "I saw that he was spending more and more time with particular young people, and in some ways it seemed like an obsession," she told me. "But I had no clue what it



CALLING SEX OFFENDERS MONSTERS BLINDS US TO PEOPLE IN OUR LIVES WHO ENGAGE IN INAPPROPRIATE BEHAVIORS.

was. You think the best of people until you find out differently."

The police, meanwhile, reopened the investigation sparked by the first boy, which resulted in an additional corruption charge. Authorities also pressed the second boy for more information, which turned up new accusations of oral sex and masturbation, bringing even more serious criminal charges. In December, the district attorney held a televised press conference asking for anybody else whose child may have had contact with Eugene to come forward. "It's a sobering warning to all parents in our community," he said. "Know who your children are with, because predators like this are out there."

## WHO, WHY, HOW?

FEW CRIMES ELICIT as much moral outrage as child sexual abuse. Long shrouded in silence, it began to emerge from the shadows in the 1980s, as an increasingly confessional culture spurred survivors to speak out. For the first time, both its prevalence and its adverse effects became apparent. The pendulum of public concern swung hard in the direction of indignation, as sexual abuse went from being largely ignored to intensely condemned.

A series of sex-offender management policies were instituted across the country, mostly in response to a few grisly, sexually motivated child abductions and murders that captured headlines and terrorized parents. Such crimes are exceedingly rare, yet the extreme fear they provoke made it easy for policy makers to create public sex offender registries and pass ever-tightening restrictions on offenders in the hope that these strategies would make children safe.

Critics contend that such policies have fueled a mostly unwarranted fear of strangers, and obscured the visibility of sexual abuse where it primarily occurs: in 95 percent of identified cases, at the hands of someone trusted and well known to the victim; a third of the time, by a member of the child's own family. "Sex offenders are in fact people all around us," says Elizabeth Letourneau, director of the Moore Center for the Prevention of Child Sexual Abuse at Johns Hopkins University. "It's very easy to call them monsters, but doing so literally blinds us to when the people in our lives are engaging in inappropriate behaviors."

Critics also claim that the safeguards have fueled the misperception that sex offenders are uniquely unstoppable. In reality, recidivism rates for sex offenses are lower than for all other major types of crime and much lower than commonly believed. The Department of Justice has found that only about 3 percent of child molesters commit another sex crime within three years of being released from prison, and meta-analysis of



PEDOPHILIA REFERS ONLY TO A PREFERENTIAL ATTRACTION TO MINORS, NOT TO A BEHAVIOR.

hundreds of studies has confirmed that once they are detected, most convicted offenders never sexually reoffend.

There is no simple explanation for what triggers such behaviors. Pedophilia is part of the answer, although only about 40 percent of convicted sex offenders meet the diagnostic criteria for the disorder, which is characterized by an intense, recurrent, and involuntary sexual attraction to children, and which may have biological origins in some cases. Pedophiles have been shown to be shorter on average and are more likely to be left-handed, as well as to have lower IQs than the general population. Brain scans indicate that they have less white matter, the connective circuitry in the brain, and at least one study has shown they are more likely to have suffered childhood head injuries than non-pedophiles.

Whatever its source, researchers emphasize that pedophilia refers only to an attraction to minors, not to a behavior. "There are people who have the disorder of pedophilia but do not molest children," says Jill Levenson, an associate professor of social work at Barry University in Florida who treats and studies sex offenders. "I've certainly met people who have resisted acting on these sexual interests because they know it's wrong, they don't want to harm children, and they understand how it will affect their own families and the families of victims."

For most sex offenders, the impulse to abuse emerges from a murky tangle of environmental, social, and psychological threads rather than, or in addition to, pedophilia. Levenson points to alcohol abuse as a means of comparison. "We know that not every person convicted of drunk driving meets the criteria for alcoholism," she says. "There are people who might have a lapse in judgment or maybe a discrete period in their life where they were using too much alcohol to deal with their problems. The same is true with sex crimes. There are a variety of reasons why they happen, and not all of them are about sexually deviant interests."

One such reason is that many abusers suffered sexual abuse themselves as children, which can act as a conditioning experience in their sexual development. Others have behavioral regulation problems, and their compulsiveness can extend toward child abuse if the situation presents itself, even if they are not normally attracted to children. And many, research has shown, have pronounced feelings of humiliation, rejection, inadequacy, fear, guilt, and low self-esteem, and they abuse as a maladaptive way of dealing with their own painful emotions.

"There's often a cascade of negative events," Letourneau says. "We see this with teachers a lot, where things are going poorly in other areas of life, and something causes them to doubt their self-worth, and then they're spending more and more time

with kids who have this unqualified adoration and caring for them, and they convince themselves they're falling in love. It doesn't seem to be a preferential attraction. Circumstances arise that are very idiosyncratic to a particular situation."

As his troubling urges brewed, Eugene was too ashamed to breathe a word about them to anyone. The only silver lining after his arrest, in fact, was that he finally felt free to open up. He saw a clinical psychologist for six months, during which time he came to realize that while he still loved Evelyn, they had grown apart to the point of leading parallel lives, leaving him emotionally adrift. He recognized how the firm institutional boundaries of the military and the church had kept him from crossing a line earlier, whereas as a flight instructor he was faced with a level of proximity and privacy with kids that he had never experienced before. Their innocent admiration of him as a talented pilot felt intoxicating. Perhaps most important, he examined his upbringing in a strict, religious family and the deep insecurity instilled by his verbally and emotionally abusive father.

"I was only afforded time to scratch the surface, but it was very helpful," he says. "I wish I'd known even a small part of what I learned in my brief time in counseling before I did what I did."

Levenson says that while there are countless routes to sexual offending, and the majority of men with low self-worth are certainly not destined to become child molesters, there's often a common denominator in men who feel fundamentally bad about themselves and go on to develop close emotional connections with minors.

"Many don't have very good avenues for self-esteem, and they seem to fall in love with a particular child who makes them feel special and important and doesn't have the same kinds of expectations and judgments an adult would," she says. "I'm not excusing or condoning it, but it's important to realize that the pathway is really similar to the way the rest of us experience relationships. It's about emotional intimacy that gets sexualized."

Most offenders are stopped only after they've careened all the way down that path and children have been harmed. The challenge from a prevention perspective is both to recognize that arriving at that point is not inevitable, and to offer secure off-ramps before they get there.

"Things don't 'just happen,'" says Charles Flinton, a forensic psychologist in San Francisco who provides court-mandated therapy to sex offenders and conducts evaluations to determine their risk status. "It builds up over time. Let's say somebody finds himself sexually attracted to children. He may start by looking at magazines or catalogs with kids in bathing suits. He's a little nervous, and then he becomes desensitized to that nervousness.

He may start creating arguments in his head that it's OK to put himself in situations with kids or to prepare children to be more comfortable around him in what would otherwise be awkward situations. With each step, he moves toward offense behavior. Most are able to identify a point at which there's a fork in the road."

Unlike other kinds of risky behavior, however, the secret nature of their attraction leaves no opportunity for intervention, let alone empathy for whatever internal struggle they may be engaged in to control themselves. What's more, the profound stigma that surrounds sexual attraction to children actually ends up abetting the very behavior it stigmatizes, amounting to a catch-22 with abhorrent consequences. "People with a sexual interest in children don't have any reality check to bounce up against," Flinton says. "We engage in sexual decision making, as with any decision making, by communicating and interacting with others about our dilemmas. But these people are totally isolated, which only increases their risk of acting out. They become entrenched in a double life that's hard to escape."

The isolation is ultimately more dangerous than the feelings themselves, says Joan Tabachnick, co-chair of the prevention committee of the Association for the Treatment of Sexual Abusers. "Sex abuse thrives in isolation, and shame sets the isolation in concrete," she says. "If we can begin to break apart that shame and isolation, we'll be much more likely to intervene earlier in the cycle. The environment that allows sex abuse to thrive would be eroded."



"SEX ABUSE THRIVES IN ISOLATION, AND SHAME SETS THE ISOLATION IN CONCRETE."

### THE RIPPLE OF STIGMA

IN MARCH 2010, Eugene appeared before a judge at the county courthouse and accepted a plea agreement. He was sentenced to eight to 20 years in prison. He was also designated a sexually violent predator—based on a 12-minute interview with a forensic expert—which means that after his release, at age 73 at the earliest, he will be on the sex offender registry for the rest of his life.

Gathered in the courtroom were his family and friends, including fellow pilots and Methodist clergy who had known him for decades and who testified that while his crimes were indefensible, and their hearts ached for his victims, the Eugene they knew was a fundamentally virtuous person who had done incalculable good in the six decades prior to his offenses and had, one friend said, a "deep desire to defeat this illness." The last to stand and speak on his behalf was Evelyn.

"I could have easily abandoned my husband, like some would," she said. "Our family stands by his side today because of a lesson I have learned in life. We all make mistakes. We all have compulsions. We all have a side of us that we're afraid to show

others, and we all need compassion and forgiveness."

The dense mass of stigma surrounding sexual abuse not only deflects compassion for potential abusers but it erects particular barriers that prevent them from getting help. Levenson surveyed convicted offenders about these barriers, and "the first thing they say is that they really had no idea where to go," she says. "They see all these public health announcements: 'If you have a drug problem, or a gambling problem, or you think you have HIV, call this number.' But you never see a bus go by with an ad that says: 'If you're concerned about your attractions to children, call this number.' Another reason is the very shame and fear of judgment—'If I open up and tell somebody, what are they going to think of me?'"

People attracted to juveniles also internalize the message that they can't be cured. "When they open a newspaper or turn on the TV, they hear the same message that you and I do—that sex offenders are monsters who will always reoffend," Levenson says. "Are there people who are attracted to kids? Yes. Can we change that attraction? For some, no, although they can choose not to act on it. But if somebody believes he can't be cured, he's not going to ask for help."

The final obstacle cited by almost everyone is the very real fear of legal consequences. Mandatory reporting legislation requires certain licensed professionals, including doctors, teachers, psychotherapists, and social workers, to report suspected cases of child abuse or neglect to child welfare authorities. The laws are federally mandated, and although they differ somewhat among jurisdictions, the intent and requirement are the same everywhere and have a clearly good purpose: to protect children from harm. In many states, the failure to report is a misdemeanor punishable by imprisonment and fines.

Mandatory reporting laws are credited with facilitating a decrease in all kinds of abuse and neglect over the past several decades. In the case of sexual abuse, however, they have had the inadvertent effect of making it very hard for someone who is attracted to children, and who may even be inching along the pathway toward abuse—by looking at child pornography, for instance, or touching a kid's thigh, as Eugene did—to ask for help without risking the infamy of being identified. "Self-preservation steps in," Levenson says. "Even if they've never acted on them, men who are concerned about their attractions are reluctant to seek counseling, because they're afraid they're going to be reported."

Even admissions that fall within the limits of confidentiality in psychological treatment are seldom voiced because of confusion and fear. "If someone comes in and says, 'I've been looking

at pictures of children in bathing suits in a Macy's catalog,' that's not usually something that would have to be reported," Levenson explains. But the actual details about what requires a report—in many states, an identifiable child has to be endangered—tend to be overlooked within the overall climate of vilification and punishment, she says. People are terrified to admit to anything, whether or not their admission would really necessitate a report. "There are absolutely people who have started down the road of offending who want to stop," Letourneau says. "They don't get help, because between mandatory reporting and lifetime sex offender registration, the consequences are too much to bear."

## SAFE OFF-RAMPS

WHEN CLINICIANS CONSIDER what an effective prevention approach to sexual abuse might look like, many point to an initiative in Germany called Prevention Project Dunkelfeld. Begun in 2005, the program aims to prevent abuse by



"YOU HAVE TO GET THESE GUYS IN THE DOOR TO BE ABLE TO PREVENT VICTIMS."

offering anonymous treatment to people who are sexually attracted to pubescent and prepubescent children. The program is advertised in slick media campaigns. In one TV spot, a series of masked men in varied dress—a suit and tie, a tracksuit, a grandfatherly sweater vest—recite a script of internal dialogue: "It's obvious what you think of the likes of me. Sicko! Pervert! Scum! I thought so too. In therapy I learned that no one is to blame for his sexual preference, but everyone is responsible for his behavior." The last man removes his mask, revealing a typical looking guy. "I don't want to be an offender!" he says.

Over 5,000 people have come forward seeking services, and there are now 11 Prevention Project Dunkelfeld clinics in Germany, which use cognitive behavioral methodology to teach clients how to control their sexual impulses. The clinic also offers psychopharmaceutical interventions, including, when needed, testosterone-lowering medication that dampens sexual appetite. The project's initial results are based on very small samples but appear encouraging: Participants have been shown to experience improvements in their self-regulation abilities and decreases in attitudes that support sexual contact with children. More critical, Letourneau says, is what's indicated by the sheer fact of those who've reached out for support: "That you have this group of people who may have been white-knuckling it themselves, and who are willing to identify as wanting and needing help, supports at least the promise of prevention."

**SYMPATHY FOR THE DEVIANT** *continued on* **page 86**

THERAPISTS: *Interested in receiving Continuing Ed credit for reading this article? Visit* NBCC.org

**SYMPATHY FOR THE DEVIANT** *continued from* **page** 67

Controversially, however, there are no mandatory reporting laws in Germany, so even someone actively abusing an identifiable child can get help and remain anonymous. Nobody seriously proposes doing away with mandatory reporting in the U.S., although some think it should be modified to encourage people to get help much earlier in the offense trajectory. But even if help were possible to pursue, it's unclear where one would get it. As Levenson points out, there are no public service announcements pointing to resources for dealing with such urges. And mental health professionals, fuzzy about their own legal obligations and nervous about their liability, have been known to shirk potential clients who want therapy.

"A lot of sex offenders I've worked with knew they had a problem before they acted out illegally; they sought assistance and were turned down," Flinton says. "Therapists reject them, saying, 'I can't work with you' or 'You can't tell me this.' It's infuriating, really, because a crime could have been prevented, and these guys could have ended up living productive lives."

In recent years, Flinton has himself been contacted by more and more men in this position: "They call me saying, 'I'm having sexual fantasies about children, and I don't want to—what do I do?' Or it's often their wife or girlfriend who calls out of concern. They say their partner isn't really present, that he's missing a lot of family time or spending hours a day looking at pornography and seems to be building a double life."

In 2013, Flinton opened a Bay Area clinic called the Blue Rock Institute. Although the clinic has received only about 100 clients so far, it represents a hopeful example of what proactive prevention of sexual abuse could look like. While vigilant about making mandated reports when required, the clinic primarily reaches men who describe deviant fantasies, but who haven't yet crossed the line of illegal behavior. The treatment model is very similar to interventions for addiction: As with substance abuse, Flinton explains, sexually abusive behavior is often something people engage in to suppress negative feelings. The clinic's therapeutic focus is on addressing the underlying source of those feelings, many times in family dynamics or early traumatic experiences, as well as on helping people work past their shame, comprehend how distorted thought patterns can reinforce unhealthy sexual behavior, and learn how to meet their needs in healthy ways.

"We want these guys feeling safe to look at themselves and understand their problem," Flinton says. "They often have a lot of internal strengths. It's about identifying those and capitalizing on them, while still holding the men accountable. Our goal is to prevent victims. You have to get these guys in the door to be able to do that."

AFTER HE WAS SENTENCED, Eugene spent two years in a county jail before being moved to a large state penitentiary. Evelyn travels two hours to visit him there once a week, and on a dazzling summer morning, I went along with her. We drove on a narrow road lined with strip malls and industrial facilities until we arrived at a vast expanse of manicured grass and dogwood trees that brought to mind a college campus. At its center was a complex of boxy buildings surrounded by towers of barbed wire.

Eugene, in a maroon jumpsuit and wire-rim glasses, beamed when he walked into the visitation room and saw Evelyn. They kissed and hugged tightly. "He's still the same person I married 33 years ago, the same person I know and love," she said. "Just the fact that we can talk about what happened is a step in the right direction. If we're not able to talk about it, there's no way to change."

They made the rounds of the room's vending machines  to gather their usual visiting day provisions—pretzels, chips, shrink-wrapped deli sandwiches, sodas— and we settled into a corner to eat. Eugene spoke with enthusiasm about his job as an inmate assistant in the prison's sex-offender therapy program. Having completed the program himself, he now works with a staff psychologist several days a week, helping facilitate group sessions in which other offenders detail their offense trajectories, do exercises to cultivate empathy for their victims, learn behavioral-modification techniques, and craft relapse-prevention plans. In listening to their stories, and ruminating on his own, he has developed a certain zealousness for the need to reach people before they do the things that land them in prison.

"I take full responsibility for my actions," he said. "Yes, I am a sex offender. Yes, I live with this desire and will live with it for the rest of my life. But surely it must be possible to construct some sort of framework of help for men like me that does not end with victims and prison."

One place where such a framework is being attempted is in his own church. Eugene's face reddened and tears glazed his eyes as he told me about a recent phone call with a church officer in charge of an effort to extend confidential support to clergy coping with an attraction to children—an effort that was galvanized in the eye-opening aftermath of Eugene's transgressions. The church officer told him that a minister and a ministry student had recently come forward for counseling. "Hearing that makes this all worthwhile," Eugene said. "If my story can in some way help prevent some terrible offense, then the journey has been worth it." **P**

> "WE HELP POTENTIAL OFFENDERS CAPITALIZE ON THEIR STRENGTHS, WHILE STILL HOLDING THEM ACCOUNTABLE."

*United States v. Andrew Ryan Leslie*

**Case No. 3:16-cr-154-J-39JBT**

# Exhibit 4
# Dr. Cohen's
# Evaluation



2180 W. State Rd. 434, Suite 1172                  Robert E. Cohen, PsyD, ABPP
Longwood, FL 32779                             Robyn J. Cohen, PhD
(407) 920-8321 / (407) 462-6626            Cohen.Neurocog@gmail.com

## <u>CONFIDENTIAL PSYCHOLOGICAL EVALUATION AND REPORT</u>

Patient Name: Andrew Ryan Leslie
DOB: ███████ (21)
Case Number: 3:16-mj-1265-MCR
Primary Language: English
Handedness: Right
Education: High School (12 years) + IT technical school
Examiner: Robert E. Cohen, PsyD, ABPP, Rehabilitation Neuropsychologist
Referral Source: Mark Rosenblum, Esq., Assistant Federal Defender
Date of Evaluation: 12/13/16
Location: Nassau County Jail, Yulee Florida
Date of Report: 1/9/18

**BACKGROUND INFORMATION:** Mr. Andrew Ryan Leslie is a 21-year-old Caucasian single right-handed man, referred for an evaluation by defense counsel to assist in understanding his two charges of production of child pornography (CP). He was arrested after Homeland Security received information that an IP address belonging to Mr. Leslie was hosting a website whose primary purpose was the viewing and distribution of child pornography. Later it was determined that he was also producing and distributing child pornography after finding videos that he produced in the possession of another CP collector. Mr. Leslie pled guilty to charges and has been cooperative in providing information to help find other perpetrators. He has been housed at the Nassau County Jail since his arrest on October 18th, 2016. He has not engaged in any oppositional or problematic behaviors towards other inmates or staff since his arrest. All information for this evaluation was provided by his federal defense team, a clinical interview with the client, and integration of acquired psychological/neuropsychological test data.

**RECORDS/EVIDENCE REVIEWED:** United States District Court Middle District of Florida Jacksonville Division - Indictment Report filed 10-27-16; United States District Court Middle District of Florida Jacksonville Division - Criminal Complaint 10-18-16; Prosecution Supplied Packet Summary including Criminal History Print Out of Client, Search Warrant, HSI Report 7/27/26, Florida DAVID printout, HSI report dated 10/21/16 (Criminal Arrest of Andrew Leslie), 10/24/16 (initial investigation of client and his online activity), 10/31/16, and HSI investigative report detailing seizure of property and evidence and other related evidence produced by prosecution and provided to defense; ESE report and codes; Middleburg High Official Transcripts; Primary Care Medical Records from Dr. Bala S. Munipalli 5/11/16 and 9/21/16; Focus School Software Company – Software Engineer Employee Verification 11/14/16.

**ASSESSMENT PROCEDURES:** Review of all available records; clinical interview with the client including Sexual History Questionnaire; Test of Memory Malingering (TOMM); Dot Counting Test (DCT); Wechsler Adult Intelligence Scale – (WAIS –IV); Montreal Cognitive Assessment (MoCA); Wide Range Achievement Test – Fourth Edition – Reading Subtest (WRAT-4); Rey Complex Figure



Test (RCFT); Psychopathy Checklist – Revised – 2nd Edition; Structured Inventory of Malingered Symptomology; MMPI-2RF (Minnesota Multiphasic Personality Inventory – Second Edition Restructured Format); Beck Depression Scale – 2nd Edition (BDI-II), Beck Anxiety Inventory (BAI).

**DEVELOPMENTAL/ACADEMIC/PSYCHOSOCIAL HISTORY:** Mr. Leslie reported that he was born in Jacksonville, Florida to Sharon Leslie and John Ackerman on January 16, 1995. He was raised by his mother and did not meet his biological father until he was 12 or 13 years of age. He is an only child but has one younger and one older half-siblings (one eight-years older half-brother James, and a two years' younger half-sister Kori) by his father's first marriage. Mr. Leslie denied any history of physical, sexual, or repeated verbal abuse. Mr. Leslie stated that his childhood was a happy one and he denied being abused or bullied by classmates at school. Review of his school records revealed that in 1998 (age 3), Mr. Leslie was identified as Developmentally Delayed (Ages 0-5) in the area of language and speech and was placed in Exceptional Student Education that year. He was dismissed from the language impairment program a year later in 1999. By age 6 (2001), he was dismissed from the Developmental Delay ESE program and by age 9 (2004), he was dismissed from the Speech Impaired ESE program, resuming all regular curriculum at that point. He reported that from the third up through the seventh grade, he was engaged in intensive reading and remedial math. Mr. Leslie tested out at the end of the seventh grade. Review of his high school transcripts reveals that he was placed in in dual enrollment in advanced English Literature and advanced central computer classes at St. Johns State College. He graduated with a standard diploma with a weighted GPA of 3.412 and a class rank of 95/403. Mr. Leslie reported a specific interest and strength in computer programming. Extracurricular activities included the Technical Student Associates and Skills USA Computer Club. Mr. Leslie denied any specific behavioral problems at school including violence, truancy, or any illicit substances. However, he admits that on weekends, he occasionally consumed alcohol with his friends. He denies ever being suspended. He reported that, "*I hung out with pretty much everyone like the goths, the wrestlers, the band members*". After graduation in May 2013, he obtained a job at Focus School Software an IT company as a software engineer, in August of 2013 until October 17th, 2016 (the time of his arrest). An employee verification form indicated that Mr. Leslie worked remotely at his home with an ending salary of $50,400.00. He is not eligible for rehire according to documentation. He also baby sat children for free in his neighborhood during that time frame.

He engaged in "peeping tom" activities of watching his younger sister who was 9 and he was 11. He started watching pornography at age 8 while surfing online and he began masturbation at the age of 9, at the frequency of 1-2x a day. Mr. Leslie stated that he began to develop a pornography addiction at an early age. He first viewed child pornography at age 10 and his last viewing of child pornography was the night before his arrest. He has never purchased CP but reported that he traded videos online with others and with another individual whom he travelled to Tennessee to meet in person. He confided that while he did not have problems with bed wetting, he enjoyed wearing diapers and children's panties between the ages of 8 and 12. He stated that he would take them from kids in the neighborhood as he was playing with them at their home. Mr. Leslie reported that his first sexual encounter was at age of 13, when he fondled a family friend's infant daughter while changing her diaper.

His first time of sexual intercourse was at age 19 with female of similar age and has since had a total of three reported sexual encounters (intercourse) with individuals of legal age. He admits to one



homosexual experience with a similar aged man. That same year he recalls engaging in sexual intercourse with a 2.5-year-old toddler that he was babysitting. He freely admits to inappropriate sexual contact with underage children. He reported that he made about 10 pornography videos and took at least 150 pictures. He reported having at least 1 gig worth of child porn stored on his personal equipment. He stated that he felt "bad" about engaging in sex acts with children less than five years old but felt "less bad" about children aged 10 and up since he believed it was more consensual. Initially, he became interested in children aged 6-10 but then, as he desensitized from the content, his age interest widened to children aged 0-12. In total, Mr. Leslie reported the following victims 1) a nine-year-old - daughter of a women he was dating, 2) and her seven-year-old sister, 3) a five-year-old, 4) 5) and 6) three – two-year-old toddlers, 7) three babies (ages 0-6 months old), and 8) a four-year-old boy. Mr. Leslie admitted that he sometimes scolded the children when they did not do what he wanted. Mr. Leslie also admits to watching and downloading other forms of pornography including bestiality, S&M, pregnant women, golden showers and others. He admits to engaging in sexual acts with canines on more than one occasion. Mr. Leslie stated that as a young teen, he realized he had sexual feelings toward other children. He felt confused and guilty. He reported, "There is nowhere to go and no one to talk to about having these urges and feelings without fears of getting in trouble or being seen as a monster".

He reported to this examiner that he informed a close friend/ex-girlfriend, Kennedy (similar age) that he was engaging in these acts. According to Mr. Leslie, he and Kennedy dated and were minimally sexually active. He stated that she herself was a victim of sexual abuse as a child. She would send her pictures of her kids and then watch him masturbate to them. However, Kennedy did not allow her own children to be molested by Mr. Leslie. He reported to this examiner that he loves all the children he has molested and that he cares about their lives more than his own. He reported that he would like to be a parent himself one day, specifically as a mother after he has his sexual reassignment.

**LEGAL HISTORY:** Prior to the current charges, no legal history is documented.

**MEDICAL HISTORY:** According to brief primary care records, he has a history of acute bronchitis, chronic back pain (received physical therapy), hand pain (received nerve conduction studies), and seasonal allergies. There is no surgical history.

**FAMILY HISTORY:** Cancer, Type I diabetes, Heart Disease, hypertension.

**CURRENT MEDICATION:** He has been prescribed Prozac 20mg (for depression) and Risperdal 0.5 mg for intrusive thoughts.

**PSYCHIATRIC/PSYCHOLOGICAL HISTORY:** Mr. Leslie reported that at an early age (between 5 and 8), his parents knew that he enjoyed pretending he was a girl and verbalized that he did not like having a penis. He stated that his parents were relatively supportive/non-judgmental about this. His stepmother Robin and Mr. Leslie have a relatively close relationship. He has confided in them that he was hoping to obtain a sex change in the future and that he had a referral and appointment to see a transgender pre-op psychiatrist specialist the day of his arrest. Mr. Leslie reported that he first became aware of bouts of sadness/depression starting at age 9 or 10. According to review of a medical office visit with Dr. Bala S Munipalli, Mr. Leslie was formally diagnosed with depression in 2011. His



symptoms included short bursts of chest pain lasting 10 seconds to 2 minutes. He does not clearly meet the criteria for panic attack or panic disorder. His depressive episodes lasted a few weeks and have led to suicidal thoughts (without plan or attempt) first reported at age 10 and again at 15. By age 15, he had been treated briefly with Prozac but did not remain compliant since he reported feeling better off the medication due to side effects. He reported to his primary care doctor that he was experiencing generalized weakness and memory loss due to poor sleep, significant weight reduction, relationship issues with his girlfriend over a six-month period. After moving out, his mood improved and he gained weight back. Currently, Mr. Leslie reported that the Risperdal minimizes his intrusive thoughts about sexual acts on children. At the time of his evaluation, Mr. Leslie was on solitary confinement (for his safety) and was on suicide watch after telling the jail therapist that he was planning to kill himself.

**BEHAVIOR OBSERVATIONS:** Mr. Leslie was brought to the testing area by a guard and he presented as alert and oriented, dressed in a green self-protection suit since he was currently on suicide watch. He was a man of shorter stature, thin build, brown hair, acne, and he wore glasses. Mr. Leslie had painted toe nails and his finger nails were trimmed low for self-protection. His teeth were brown. Mr. Leslie's mood was bright and euthymic without evidence of depression or anxiety. He denied current suicidal ideation and stated that when he thinks about the rest of his life behind bars, he becomes hopeless. He was pleasant, and very cooperative with the evaluation, making no complaints or verbalizations outside of what was being asked. His eye contact was appropriate. His speech was slightly pressured and revealed reciprocal conversation. Mr. Leslie seemed of at least average intelligence. He was not overly guarded and did not appear to dodge any questions or topics. In fact, he was extremely candid and forthcoming about his previous behaviors and sexual acts. Mr. Leslie stated, *"I am actually really happy to tell you all of this and get it off my chest…I want to know why I did what I did"*. Mr. Leslie reported that he was most interested in knowing how he was caught. He believes that his making of his website and then attempts to make a "porn stars listing index" to help others find the child porn star they wanted, may have been the final straw. He stated, "the thing I am most sad about is hurting the kids…I never meant to hurt them…I am also sad about being stuck in jail forever." Mr. Leslie only verbalized his understanding that "harm" to the children was from a physical stand point only and not from an emotional or psychological standpoint. He seemed honest and genuine in his presentation. Mr. Leslie's memory for recent events seemed adequate and he did not exhibit any obvious neurological signs of impairment. There was no evidence of manipulative behavior, obvious inconsistencies with the records, or impression management noted. He appeared to put forth effort on all measures during our five-hour visit.

**TEST RESULTS**

**ASSESSMENT OF EFFORT:** Mr. Leslie was administered the Test of Memory Malingering (TOMM) and the Dot Counting Test (performance validity indicators), of which there was no evidence of poor or low effort. On the Structured Inventory of Malingered Symptomology (SIMS), he did not endorse an elevated number of infrequent symptoms suggestive of malingering. On Minnesota Multiphasic Personality Inventory – 2nd Edition, Restructured Format (a measure that includes several symptom validity indicators), Mr. Leslie endorsed many psychiatric and neurological symptoms but these are relatively consistent with his history and his current mental state and predicament. He did not reveal concerns of inconsistency in reporting, guardedness, odd or unusual symptoms, or portraying himself in



a non-genuine light (feigning cognitive symptoms nor under or over-reporting of psychiatric or neurological symptoms). Given his behavioral presentation, clinical history, and review of the records, it is believed that the results below can be viewed as a valid portrayal of his neuropsychological functioning.

**COGNITIVE STATUS EXAM:** On the Montreal Cognitive Assessment (MoCA), a composite screening of global cognitive functioning, Mr. Leslie obtained 27 out of 30 possible points ($\geq$ 26 is considered a normal score, +1 point added for educational adjustment). No obvious deficits were revealed in visuospatial functioning, naming, repeating, verbal fluency, immediate simple attention, and orientation. There were minor short-term retrieval deficits and with prompting he obtained more information. He was oriented to person, place, time, and current station in life. On the RCFT, Mr. Leslie's ability to copy and organize a complex two-dimensional figure was in the average range.

**CURRENT INTELLECTUAL FUNCTIONING:** On a measure of intellectual functioning (WAIS-IV), Mr. Leslie' Verbal Comprehension (*an index made up of subtests assessing his fund of word and factual knowledge and his ability to verbalize abstract concepts*) was in the average range compared to others his age. His Perceptual Reasoning (*an index made up of subtests measuring timed and un-timed visuospatial reasoning and problem solving*) was also in the average range. The difference of four points between his VCI and PRI on the current assessment was not statistically significant. His Working Memory Index (*an index made up of tests assessing his immediate auditory attention and his ability to utilize his visual sketchpad*) was in the low-average range and his Processing Speed Index (*an index measuring his speeded processing, decision-making, and graphomotor speed*) was in the superior range compared to others his age (and a relative cognitive strength). Mr. Leslie' Full Scale IQ, was in the average range (FSIQ SS = 100, 50%ile) compared to others his age. These scores are consistent with his academic background and occupational success.

| Scale | Composite Score | | Percentile Rank | 95% Confidence Interval | Qualitative Description |
|---|---|---|---|---|---|
| Verbal Comprehension | VCI | 100 | 50 | 94-106 | Average |
| Perceptual Reasoning | PRI | 96 | 39 | 90-102 | Average |
| Processing Speed | PSI | 120 | 91 | 110-126 | Superior |
| Working Memory | WMI | 89 | 23 | 83-96 | Average |
| Full Scale Intellect | FSIQ | 100 | 50 | 96-104 | Average |
| General Ability Index | GAI | 98 | 45 | 93-103 | Average |

| Subtest | Scaled Score | Percentile Rank |
|---|---|---|
| Similarities | 11 | 63 |
| Vocabulary | 11 | 63 |
| Information | 8 | 25 |

| Subtest | Scaled Score | Percentile Rank |
|---|---|---|
| Block Design | 11 | 63 |
| Matrix Reasoning | 9 | 37 |

AL   5



| Subtest | Scaled Score | Percentile Rank |
|---|---|---|
| Visual Puzzles | 8 | 25 |
| Digit Span | 8 | 25 |
| Arithmetic | 8 | 25 |
| Symbol Search | 14 | 91 |
| Coding | 13 | 84 |

**PSYCHOLOGICAL TEST RESULTS:** On the Psychopathy Checklist – Revised – 2nd Edition (PCL-R), Mr. Leslie was engaged in a guided interview honing in on his life history and how he has engaged with others. The PCL-R attempts to predict psychopathic and antisocial traits by honing in on trends of behavior that predict these diagnoses. This information, in addition to other sources of data, were scored on a 0-2 scale (0 = no evidence exists or no offenses in a particular category, 1 = maybe or minor offense in a particular category, and 2 = Yes or major offense in a particular category). Mr. Leslie's **overall score was a 7 out of 40 points suggests no real concern of psychopathic tendencies or clear pattern of antisocial behaviors as defined by this scale.** While his behavior of pedophilia is culturally and legally reprehensible, it is not globally manifest in other areas of his life to suggest psychopathic or sociopathic tendencies. Consistent with his history and presentation, Mr. Leslie has no history of glibness/superficial charm, a grandiose sense of self-worth, routine pathological lying, lack of remorse or guilt, shallow affect, lack of empathy, a parasitic lifestyle, early behavioral problems, significant irresponsibility (as defined by the manual), failure to accept responsibility, juvenile delinquency, or criminal versatility. He does have characteristics of being moderately prone to boredom, mildly to moderately impulsive, has a questionable sense of empathy, and promiscuous sexual behavior.

On the BDI-II, a questionnaire examining cognitive and somatic/physical symptoms of depression experienced over the last two weeks, Mr. Leslie endorsed 29/63 points (moderate to severe symptoms). This is consistent with his presentation (on suicide watch) as well as his current predicament. He endorsed sadness, pessimism, feelings of failure, loss of pleasure, feelings of guilt, feelings of punishment, self-dislike, self-criticalness, loss of interest, worthlessness, loss of energy and sleep, mild irritability, concentration difficulties, increased appetite, and significantly reduced libido. He indicated, "I would like to kill myself". He denied thoughts of harm to others. On the Beck Anxiety Inventory (BAI), Mr. Leslie indicated severe symptoms (BAI = 26/63) of physiological and cognitive symptoms of anxiety, endorsing severe symptoms of "fears of the worst happening", and more moderately unpleasant symptoms of wobbliness in his legs, being unable to relax, heart pounding and racing, fears of losing control of himself, and feeling scared. He also endorsed mildly bothersome physical symptoms of stomach indigestion, having difficulty breathing, hands trembling, sweating and others.

On the MMPI-2 RF, a 338 item true false questionnaire designed to measure psychopathology and personality disorder, Mr. Leslie answered questions in a very consistent manner without evidence of the under or over reporting of symptoms nor evidence of a denial of common faults or overt guardedness. He did endorse that he is experiencing significant elevation in his emotional distress, also consistent

AL   6



with his predicament, charges, and the clinical interview. Overall, Mr. Leslie provided a profile that can be interpreted as a reasonably valid indication of his psychological and personality functioning.

His profile revealed that Mr. Leslie is in a great deal of emotional distress and he acknowledges that his behavior put him in his current situation. His history of major depressive disorder with suicidal ideation is known. He is very nervous, sad and unhappy to the point of suicidality (T = 100, >99.99%ile), and he is experiencing odd, troubling, or strange thoughts (non-delusional) but bordering obsessive/ruminative in quality. Mr. Leslie has difficulty controlling his depressive/suicidal thoughts and emotions and he experiences them as intrusive racing thoughts. He states that his use of Risperdal and Lexapro has aided in reducing these thoughts. He is not sleeping well due to his current worry and racing thoughts and as a result, he believes his memory and thinking abilities are slower than usual. Mr. Leslie feels helpless to control his thoughts and his current situation especially without his use of medication. Feelings and thoughts of aggression are very low but he is acutely aware of the negative thoughts that others think of him. As a result, since being in jail, he feels that others would like to hurt him and so he has strong desire to socially avoid. Overall, these findings are consistent with the clinical interview, behavioral observations, and history.

**SUMMARY OF FINDINGS:** Mr. Leslie is a 21-year-old man who is current incarcerated since October 2016 at Nassau County Jail on charges of child pornography production. Mr. Leslie has a history of Major Depressive Disorder with suicidal ideation, as well as anxiety disorder with accompanied chest pain, difficulty sleeping, and shakiness. He has a history of gender dysphoria wishing for many years to undergo sexual reassignment. Mr. Leslie has taken Lexapro in the past and is currently on a combination of Lexapro and Risperdal since incarcerated. Mr. Leslie was seen today to obtain a better understanding of his behavioral and psychological functioning. A lengthy clinical interview reveals a cooperative but emotionally unstable young man who readily discussed his past problem behaviors which include pornography and sexual addictions in the relative absence of any identifiable pervasive developmental delay or early childhood abuse. His identified language and speech issues appeared to resolve early on and he performed well academically and socially.

Today on testing, Mr. Leslie provided both cognitive effort and no evidence of symptom exaggeration. In other words, he was genuine and appeared honest in his presentation (as per MMPI-2RF, DCT, and TOMM results). His intellect tested in the average range and is consistent with his academic performance. No obvious cognitive dysfunction was measured on today's evaluation. Psychologically, Mr. Leslie is suffering from worsened mood problems characterized by racing intrusive thoughts, poor sleep, worry, sadness, helplessness, and general malaise. He does not have a history or current presentation consistent with elevated levels of psychopathy or antisocial personality disorder and is not an outwardly aggressive young man. However, Mr. Leslie based on all evidence recovered from his possession, his verbalized strong sexual interest in only prepubescent children, his engagement in sexual relations with minors, his creation and distributed child pornography, and repeated patterns of behavior, a paraphilic diagnosis of pedophilia is rendered. Given his history and current presentation as someone who is experiencing worsened symptoms of emotional, cognitive, and physical symptoms (as a result of his emotional disturbance), Mr. Leslie should continue to be followed by psychiatry and remain on an antidepressant/anxiolytic and atypical anti-psychotic medication to assist in symptom management. I would also strongly recommend, given his current presentation of cooperation and insight into his



behavior, that he be engaged in weekly individual therapy to help minimize, as much as possible, to help control and understand his maladaptive thoughts and behaviors. He would benefit from a federal bureau of prisons (BOP) sex offender program or a state housing program such as one at Coalinga State Hospital in California that caters explicitly to the long term treatment of sex offenders.

**DIAGNOSES:**
1) **Pedophilic Disorder (F65.4)**
2) **Gender Dysphoria Disorder (F64.0)**
3) **Major Depressive Disorder, with symptoms of anxiety, moderate to severe, with suicidal ideation (current at time of evaluation) (F32.0)**

_____

Robert E. Cohen, PsyD, ABPP
Board Certified in Rehabilitation Psychology
Licensed Psychologist, FL PY7151
Neurocognitive Consultants of Orlando, LLC

CC:   Mark Rosenblum, Esq, Assistant Federal Defender

AL   8

*United States v. Andrew Ryan Leslie*

**Case No. 3:16-cr-154-J-39JBT**

# Exhibit 5

# Letters

# Kimberly Marshall

▮▮▮▮▮▮▮▮
Butler, TN 37640
▮▮▮▮▮▮▮▮▮▮▮▮

October 11, 2017

The Honorable Judge Davis U.S. District Court, Middle District of Florida Jacksonville Division 300 North Hogan Street Jacksonville, FL 32202

Dear Honorable Judge Davis,

I am writing this letter to provide the court with additional information on Andrew Leslie for the upcoming sentencing hearing  and in hope that it will be helpful to your honor.

My name is Kimberly Marshall. I am 43 years old. I now live in Butler TN, but resided in Middleburg FL for many years. I am disabled from a debilitating disease that requires me to have surgery several times a year.  I have two girls, one 23, one 17. I have been the neighborhood mom for many throughout the years,  including Mr.  Leslie. All the kids refer to me as Momma B.

I am aware the Mr.  Leslie plead guilty to a federal charge. I am absolutely shocked beyond belief that this is the same person I love as my own. It breaks my heart to know such a loving kid has broken the law.

Andrew Leslie came into my life through my oldest daughter in middle school.  He would come to the house and read for hours. He would hang out with the other kids his age and was very

well adjusted. Later in high school when I was getting weaker he would show up and help me around the house with things I couldn't do myself. He was always a joy to have in my home. Since we have moved to Tennessee, he has been to visit and is still part of or extended family. He will always be one of Momma B's kids no matter what happens.

Andrew Leslie is a kind hearted, loving, and caring person. He has came to my aid to help clean cabinets when no other kid would. I had to climb on a chair after surgery. Andrew showed up and refused for me to do it. He had me sit and direct him on how I wanted everything done. He has rescued me from being stranded on side of the road. He has sat and talked to me for hours when I was feeling down. He has volunteered to help around my house when I was sick. He has ran to the store for me. He has been there to help when no one else would. After I had surgery another time Andrew came by and realized I was alone. He sat with me all day till someone else showed up making sure I had my drink filled and something to eat. He helped me get up and back to the couch when needed and was a blessing to have there. Please consider this when you go forward to the sentencing hearing.

Best regards,

Kimberly Marshall

Sharon L. Leslie

████████████

Jacksonville, Fl 32218

The Honorable Judge Brian Davis

U.S. District Court, Middle District of Florida

Jacksonville Division

100 North Hogan Street

Jacksonville, Florida 32204

January 12, 2018

Dear Judge Brian Davis,

I am writing you on behalf of Andrew Leslie. My name is Sharon Leslie and I am Andrew's mom. I am a 53 year old single mother of 2. I have worked for the USPS for the past 31 years. I am currently staying with my boyfriend in Oceanway and I own a home in Clay Hill which Andrew's step dad is residing while he is recovering from Cancer.

Now let me tell you about Andrew. On the day he was born I went into labor around 6 a.m. and was seen by my doctor around 9. At that time i was told to get everything I needed taken care of and go to the hospital. By the time I was checked into the hospital and the doctor arrived it was 3:30. By 4pm I was being rushed in for an emergency C-section due to Andrew being in distress.

When I returned to work after 2 months Andrew was watched by a babysitter. He remained with the same babysitter until he started Jr. High School. Between the ages of 1 to 3 his vocabulary was only a few words which had his doctor worried. On the weekends when he was growing up he would spend time at my sister's house. On one of his weekend visits I found out later that his uncle was using him to see how deep the holes where. So he would life Andrew and place him in each hole with his arms raised so Bruce could see how deep the hole was. On another occasion I was told about the girls dressing him in their dresses and performing a fashion show for them. My sister got him in 4H and started teaching him to barrel race and we purchased a horse for him. As they learned together and started competing they won ribbons together. Until Breeze kicked him in the face. When Andrew was 8 his grandparents went on a cross country trip and his grandfather suffered a stroke and his grandmother had a cyst burst in her back which left her bed ridden and in and out of the hospital until her death on

Christmas Eve in 2013. Then when Andrew was 10 him and his brother talked me into allowing them to have paintball guns. After a few months they decided to go into the woods without any adults and play war. David decided that since Andrew wasn't good at cocking his gun then he would let Andrew shoot his which was an automatic. Somehow David's mask came off and when he yelled for Andrew to hold up Andrew thought he was ready and started shooting hitting David in the face. David then chased Andrew all the way to my sister's house threatening to kill him. My nieces called me and his dad to come quickly. We rushed David to the fire department and then to the hospital leaving Andrew with his cousins. After a week in the hospital David was released having lost partial sight in his left eye. After starting Jr High he came home telling me about some kids bullying him and others in the gym locker room. I wanted to go talk with his teachers but he asked me not to. So I contacted his dad and his dad told me the same thing. After a few weeks of me being in contact with his dad Andrew started asking questions about his dad and if he could meet him. After a couple of weeks they met for the first time, it was unnerving how after never seeing each other before how much their mannerism and facial features were so much alike. As Andrew started High School he had a couple of football players in his computer class which he helped out and when they found out about the bullying they made sure no one else bullied him. Also during his High School years he asked if he could see a physiatrist. We made an appointment with a doctor and Andrew saw them for a few months but discontiued due to he did not think she was helping and the meds she had put him on. During his Senior year I was sent to see a therapist through EAP and decided it might be good for Andrew also. We both saw the therapsit until I switch facilities and Andrew started missing too much time from school due to having to drive his self from Middleburg to Southside every week. At that time the doctor made some suggestions we do to help him.

Now for some better things for Andrew, when he was 3 he started PreK3 which helped him learn to communicate and taught him sign language and introduced him to computers. He seemed to flourished there until the fire alarm went off one day. After that it took us awhile to get him to feel safe in class. By kindergarden he had started barrel racing which he was excellarating at. After Andrew stopped riding due to him becoming afraid of his horse I bought the family our first computer. Andrew already had a fascination for computers from school and everyone was telling me he was a natural and everyone would need to know about computers. He began diagnosing computers for the family, friends and even sometimes the school when they couldn't get the repair guys out to fix them. The more time he spent on the computer the more he taught himself about computer langauges and repairs. I was worried about him spending too much time in his room but I had been the same way myself and his grades where staying up. Everyone just kept telling what a natural he was with the computer. During his Junior High school years he started competing in TSA and continued thru graduation. In Senior High he also began competing in Skills USA where he was taking 1st place in his competitions locally and state wide all 3 years. During his 1st year competing Nationally he took 2nd place in computer repairs and the 2nd year that he went to Nationals he took 1st place in computer repairs. During his Senior year

competing at Nationals he took 3rd place in Computer Diagnostics. During his Senior year also he made it to National Technical Honor Society. During this time he was holding down a parttime job with Clay County Property Appraissor's office and he was driving other students to and from school so they could also participate in Skills USA. After graduation he became full time with the Property Appraiser's office until he received a job offer from FOCUS Software in Tampa, Florida. Upon accepting the job offer with FOCUS he moved to New Port Richey with his dad and step mother where he resided until he purchased his home in Middleburg Florida. After moving back to Middleburg he continued to work for FOCUS, now working from home. He has had numerous friends and family move in with him when they had no where else to go. Some of which I disagreed with but he was always the one to put others ahead of himself and always there to lend a helping hand to everyone that needed it.

After moving into his new home he has taught himself how to cook. And I was always proud of him every Wednesday when I would come by and he had found a new recipe  that he thought I would like (which was no easy feat since I am a really a picky eater) and have it ready for me. After I started quilting with Quilting with Compassion group he started going with me and learned how to quilt and also fixed a couple of their sewing machines. He continued with me every Wednesday night until he let a cousin of a friend move in with him that needed a place to stay. She moved in and I understood him wanting to help but things seemed to esclate. After she had her baby her brother moved in for a while and then her mother. All the while Andrew was the sole support even when she was getting food stamps she was using them for herself and her family. After months of her living there and lying to him and leaving her child there with him  he asked her to leave. I helped him pack her and her baby's stuff up and I took him and the baby to where she was at and retrieved his car. A few months after that her cousin and her family needed a place to stay and called Andrew and he then allowed them to move in. Now he had 2 adults and 3 kids living off him. Again I voiced my concerns but he stated they were only staying until they got back on their feet. After they moved out they continued to call him to baby sit and another of their cousins started having him pick up her kids cause she was pregnate and couldn't handle them. During all this time I would come by every Wednesday bringing dinner for everyone to make sure he was getting at least 1 meal a week. We would talk on the phone almost every day . On the night before Andrew was arrested we met for dinner at Chik FilA. Up until Andrew's arrest I was concerned with everyone dropping their children off so they could do their own thing and not have to worry about their kids.

I know that there is no way Andrew can ever make up to these children any of the things that he may have done and I know it is your job to see that he does. I hope that you can see that Andrew can be rehabilitated with the proper medical help and medicines. I also know that he must pay for the crimes that he has committed. I am truly sorry for everything that he has done to his victims and their families but ask that you find a way to help bring him back home to me and his family.

Sincerely,

Sharon L. Leslie

Mr. & Mrs. Richard G Lundy

Jacksonville, FL 32216-9125

The Honorable Judge Brian Davis
U.S. District Court, Middle District of Florida
Jacksonville Division
300 North Hogan
Jacksonville, FL 32202

October 24, 2017

Dear Judge Davis,

I am writing this letter to discuss my relationship with Andrew Leslie. I would also like to explain why I believe he can still be a productive and useful member of society.

I am a 61 year old male, the cousin of Andrew's mother, Sharon Leslie. I served 37 years for the City of Jacksonville Fire and Rescue Department, retiring as a district fire chief.

I understand that Andrew has made a plea of guilty to two charges of sexual child abuse and using the children to produce child pornography. I personally am taken back by the seriousness of this crime and feel that this never should have happened. I cannot image the pain and horror the parents of these children must have and are experiencing, in addition to the impact on the children themselves.

We have known Andrew since he was young seeing him at many family functions and family get togethers multiple times each year. Andrew has always been courteous and helpful. He has helped us with questions regarding cell phones and electronics. He has won several awards at major computer competitions. I believe he would be an asset to almost any company utilizing computer skills.

From all my interactions with Andrew he has always been quiet, soft-spoken and appropriate. His mother has told us that Andrew has expressed to her his desire to have professional help to change his thinking and behavior. Andrew is young and I would believe that with help he can be a productive member of society. I would like to see him have a chance at some point in his life to live as normal a life as possible. He has a mother, father and brother along with extended family members willing to help him.

Thank you for the difficult job you do.

Sincerely,

Richard G. Lundy

Benjamin M Lundy

Maxville, Florida 32234

The Honorable Judge Brian Davis
U.S. District Court, Middle District of Florida
Jacksonville Division
100 North Hogan Street
Jacksonville, Florida 32202

January 7, 2018

The Honorable United States District Judge Brian Davis,

I am writing you concerning my grandson Andrew Leslie in his upcoming sentencing. I am an 83 year old retired truck driver and I live in Clay County. I am aware that Andrew has plead guilty and it truly upsets me that he could harm a child in this way.

When Andrew was growing up he used to help me with programming my remotes and televisions. He would go to church with me until he reached high school. At that point I didn't see him as much but still called upon when I needed his help and saw him when he stopped by. We have gone on two cross country trips in which he would help keep us on the right routes and out of bad weather along the way. Over the years I have depended on his for looking up information for me and doing any research that I have needed.

Andrew grew up with his mom, brother and step dad. He used to barrel race when he was younger. Then he moved on to spending a lot of time working on his computers and helping others when their computers needed attention. I have always felt that his mom was making a mistake letting him spend so much time in his room and on his computer but in his High School years he made us all very proud with his accomplishments in Skills USA at the local, state and national levels. Always finishing first in local and state levels and the top 3 at the National level with a 1st place finish his 2nd year competing. While in high school he took a part time job with the county and upon graduation he went on to work for FOCUS software in Tampa Florida.

During the time that he was in Tampa he lived with his father and I didn't get to see him as much. Upon his return from Tampa he bought a house in Middleburg and continued to work for FOCUS from home. There were times when I didn't agree with his choice of friends. He was always there lending a helping hand to whoever needed it if he could help.

I am very disappointed in the choices he has made and want him to pay for what he has done, but I do not want him to pay for more than he has done. I ask that he is provided with the help that he needs to rehabilitate himself to become a better person I feel like he can be and be able to rejoin society.

Sincerely,

Benj. M. Lundy

Thomas Wilfrid

Maxville, Florida 32234

The Honorable Judge Brian Davis
U.S. District Court, Middle District of Florida
Jacksonville Division
100 North Hogan Street
Jacksonville, Florida 32202

January 7, 2018

The Honorable United States District Judge Brian Davis,

I would like to talk to you about Andrew Leslie. My name is Thomas Wilfrid and I have had the honor and privilege of being Andrew's stepdad for the 23 years. I am 62 years old and disabled and retired. I became sick 2 years ago with stage 4 cancer in which I lost my left eye. He has given me nothing but pride and joy during this time. He is a loving, caring and honest young man. He has always been there helping his family and others. He has always put his family and friends first. During the time when I was first diagnosed with cancer Andrew drove home from helping a friend out of state back to Maxville so he could take me to the hospital and stay with me while biopsies were being done. He has given me the will to fight and survive.

He always did well in school and took pride in representing his school in TSA and Skills USA. He got a part time job with Clay County Property Appraiser's Office while in high school. After high school the job became full time until he was offered a job with FOCUS Software Company Out Of Tampa Fl were he became a programmer and supervisor. At the age of 20 he purchased his first house back here in Middleburg and began working from home. Which was a blessing to me when I became sick and he was here to take me to and from doctor appointments until his arrest.

I don't know what happened with the crimes he committed and I am sad for the victims and the families involved. But that is not the person that person I know and I know you must seek justice for them but I am asking that you seek justice for Andrew also. I feel that there is an illness involved and that he needs help not prison. Please give him the chance to make things right and redeem himself and to get the help that is needed. He has never been in trouble before. It is to my understanding that he is working with Homeland Security trying to help stop this from happening to any other children. Please give us the chance to see that he gets the help that he needs. Let him prove to all of us that this is wrong and that this will never happen again. There is so much good in him, please help him find his way back to us.

I pray for him and the victims and their families as I pray for you to for your help in finding justice for all.

God bless and thank you,

Thomas Wilfrid

January 11, 2018

Dear Judge Davis,

My, intent for this document, is to provide additional information for consideration concerning the sentencing hearing for Andrew Ryan Leslie .

I am Benjamin Joseph Lundy 58, Andrew's uncle. I live at ▮▮▮▮▮▮▮▮▮▮▮ Clay Hill, Fl. 32234. I am currently employed by the Clay County School Board, as a bus mechanic. I am Also a 23 yr veteran of the United States Armed Forces.

Although I Have not been privileged to any of the evidence Andrew was convicted of, I understand that Andrew plead guilty to federal charges.

Andrew, as a child and teen demonstrated respect and compassion others, and the ability to determine the difference between right and wrong. Andrew, to the best of my knowledge, was always a well-mannered student and maintained good grades. During high school, Andrew's main interest was computer science and was a member of the Middleburg High Computer Club. After graduation, Andrew moved to Tampa for a period.  Upon Andrew's return to Clay County, Andrew purchase a home and worked for a IT firm.

Approximately 3 years ago, I began racing go karts and Andrew would attend the races with me about twice a month for about a year. During this time Andrew was well liked by everyone at the events, and would try to help anyone he could. Andrew stopped going to the races when the local track closed.

In my opinion, it would take a severely disturbed individual to do the things that Andrew confessed to, and it is my hope that he receives the psychological help he needs.  It is also my hope that, the legal system uses the information from this case and Andrew's skills and abilities to help stop as much of this type of criminal activity as possible.

In closing I would like to express my sincere apology and sympathy to the families affected by my nephew's actions.

Respectfully,

Benjamin J. Lundy

Linda Swagel

January 29, 2018

Jacksonville FL 32210

Dear Judge Davis

I am writing this letter to provide the court with information about Andrew Ryan Leslie for the upcoming sentencing hearing.

My name is Linda Swagel, I live in Jacksonville, FL, I work for the U.S. Postal Service, been there for 30 years. I am friends with Andrew's mom Sharon Leslie, I have know her for 30 years, we work in the same building. I've known Andrew since he was born. His mother and I car pooled for several years, I was with her when she would drop Andrew off at the baby sitters house and when she picked him up. I've been to her home in Middleburg where they lived.

Andrew has always been a quiet and shy boy, always well mannered and polite. Always did what his mom asked of him, always with a yes ma'am or no ma'am response.

I am aware that Andrew Ryan Leslie pleaded guilty to a federal charge. I was shocked when his mom told me what he was chargd with, knowing the Andrew I knew, I couldn't believe it. I know what he did was wrong, I do not condone this at all, I know he will have to serve time for his crime, I'm asking the court for leniency for his sentencing.

Sincerely,

Linda Swagel

Linda Swagel

William Hough

Jacksonville, Florida 32218

The Honorable Judge Brian Davis
U.S. District Court, Middle District of Florida
Jacksonville Division
100 North Hogan Street
Jacksonville, Florida 32202

January 7, 2018

The Honorable United States District Judge Brian Davis,

My name is William Hough and I work as a truck driver for the United States Post Office. I am writing on behalf of Andrew Leslie. I have known him through him mom for around 15 years. During that time I have had the occasion to meet him and get to know him.

Over the years he has helped me with my computer when it needed fixing and I have always heard good things about him from his mom. I have never heard of him getting into trouble or anything else bad about him. Over the years I have become his mom's boyfriend and I helped him on his move into the house he purchased in Middleburg. During which time he was always polite and very helpful.

Over the next couple of years I saw the way he helped others and was always there no matter what they needed. I have seen him open up his home to friends who had nowhere else to go and even go above and beyond for them. I did become concerned when it seemed like everyone wanted him to babysit for them so they could all do their thing. Even when some of the families where living with him he was always the one caring for the kids. My observations were always of how much he loved them and was trying to help them. As he was raised to be a kind and loving person I could not foresee anything wrong with that. Yes I am understanding that he took the love he had for these children and took it too far and it's not right with what he has done. I am asking that you see he has made a very bad choice, but with his age he can be redeemed and with proper treatment he can truly learn the difference in between love and what is right and wrong. I understand that he is going to do time but ask that you see the real Andrew can be redeemed and try to make things right.

Sincerely,

William Hough

To The Honorable United States District Judge Brian Davis

The purpose of this letter is about Andrew Ryan Leslie and I am hoping and praying that the outcome of the decision you will impose on Andrew will be just and linient.

My name is Danny Del Pilar and I live now at Panama City FL. I am currently working as a Utility worker for a transit company . I am 63 years old and have been working far too long as I can remember. I have lived in Jacksonville from 1995 up until 2012 working for the Post Office and have known Andrew since then because of working with his mother. When I first heard of Andrew's case, I felt shocked, confused and bewildered because this isn't the boy I saw grow up to be. I can not condone what he has done and I believe in the law. I still can not believe how this boy who was raised by his mother become the person he is.

I worked with his mother, Sharon L Leslie, while working for the Post Office and have known Andrew for 13 years and saw him growing up. He was a very good student while going to school, getting good grades, perfect attendance, and very much into computers. He was in a computer club in school and use to compete with other schools in the country which his mother always attended. They did so well , that the school went into nationals that he won ribbons and trophies. We always worked together building computers. I had spare parts and he use to come over and work on them to build them and program them. I believe his ambition was in computer science and his intentions was to major that in college.His upbringing was normal because his mother always made sure that he did well in school. His home envirement as far as I could see was great. Family gatherings during holidays, his mother always attending his schools funtions. Andrew is very close to his brother David, who always did things together as a family. I remember one time when I got involved in a major car accident that his mother came to the scene with him and when he saw me he hugged me, seeing that I was ok. I love Andrew as if he is my own son. Thats why I can not believe that the boy I saw grow up is the person he is now.

Judge, the law is the law and I don't know if there is any linency to the crime he has committed but I do know in my heart that Andrew is a very good kid. I am sure that Andrew is aware of what he did is wrong and he is paying the price of the mistake he has done. I just hope and pray that Andrew has learned from the mistake he has done. Forgive me for my ramblings but I can not wrap my head around this.

Again Judge Davis, I apoligize for Andrew's misconduct. I am truly sorry.

Danny Del Pilar

1

For The Honorable Judge Davis U.S. District Court, Middle District of Florida Jacksonville Division 300 North Hogan Street Jacksonville, FL 32202

     I am writing this letter to provide the court with additional information about Andrew Leslie for his upcoming sentencing hearing and I hope it will be helpful to the Honorable Judge Davis. My name is Kennedy Bates Compton I am a 23 year old certified nursing assistant, criminal justice student and mother to three children. I have been made aware of the charges that Andrew has plead guilty to. Although these charges are the last that anyone would have expected from him, I am also aware that they are very serious federal charges.

     Andrew is not the person that anyone would foresee these actions from, he is kind and giving. He is the person that when everyone else abandons you, still stands beside you. I say these things because I have seen him help others without regard for himself more times than I can count in the roughly eight years I have been in his life. For example, he has drove 800 miles to help me after surgery, and defend me when everyone else tried to condemn me because I was a teenage mother. He was also the only person to help my disabled mother move when she was evicted he went as far as to help her cover the costs and make sure she had food for her and my sister. He is the only person in my life that I have never seen abandon nor harm anyone, which is what made the charges hard to accept. He has been my best friend longer than I have been my own friend.

     Aside from the things he has done for me, I have seen him help mutual friends out of abusive relationships, give people who had nowhere to go a place to stay, put himself in debt to help those who only tried to hurt him, as well as support people that were never able to make the choice to help themselves. In short he has made more selfless choices than I can say I am capable of and put himself aside to do the right thing even when advised that it would only hurt him in the long run. I understand that he has also made some really bad choices leading to this point, but I sincerely hope that this letter helps shed some light onto the person that we all know and love him as being.

                 Kennedy Bates Compton
                 ██████████ Elizabethton TN 37643

USCA11 Case: 18-11183   Document: 17   Date Filed: 06/08/2018   Page: 96 of 205

*United States v. Andrew Ryan Leslie*

**Case No. 3:16-cr-154-J-39JBT**

# Exhibit 6

# Photos

USCA11 Case: 18-11183   Document: 17   Date Filed: 06/08/2018   Page: 97 of 205

USCA11 Case: 18-11183   Document: 17   Date Filed: 10/08/2018   Page: 98 of 205



USCA11 Case: 18-11183     Document: 17     Date Filed: 06/08/2018     Page: 99 of 205



USCA11 Case: 18-11183   Document: 17   Date Filed: 06/08/2018   Page: 100 of 205



USCA11 Case: 18-11183   Document: 7   Date Filed: 06/08/2018   Page: 101 of 205



Cady Studios

*United States v. Andrew Ryan Leslie*

Case No. 3:16-cr-154-J-39JBT

# Exhibit 7

# School Transcript

Case 3:16-cr-00154-BJD-JBT    Document 49-7    Filed 02/22/18    Page 2 of 2 PageID 838
USCA11 Case: 18-11183    Document: 17    Date Filed: 06/08/2018    Page: 103 of 205

NOV. 2. 2016   1:21PM

NO. 0143   P. 3

# Official Transcript

Prepared date: Nov 2, 2016

| | | |
|---|---|---|
| Middleburg High<br>3750 COUNTY ROAD 220<br>MIDDLEBURG,FL 32068<br>(904) 336-8075 | Student:<br>Leslie, Andrew Ryan<br><br>MAXVILLE,FL 32234<br><br>Student ID:<br>SSN<br>Grade: 12<br>Gender: Male<br>Country of Birth: United States [US]<br>Date of Birth: Jan 16, 1995 | Graduation Summary<br>Enter Date:<br>Graduation Date:  May 31, 2013<br>Diploma Type:  Standard HS Diploma [W06]<br>Diploma Designation: .<br><br>FCAT Reading:042011<br>FCAT Math:  042011 |
| GPA Summary | | Special Programs<br>ESE Student:<br>ESE Matrix Code:<br><br>ELL Student:   Not applicable [ZZ]<br>504 Student:   Not 504 Eligible[Z] |
| Weighted GPA: 3.412<br>Unweighted GPA:<br>Weighted Class Rank is:95/403<br>Total Credits Attempted: 28.50<br>Total Credits Earned: 28.50<br>Total Community Service Hours:99<br>Requirement Met: Not applicable [Z] | | |

A = 90-100, B = 80-89, C = 70-75, D = 60-69, F = 0-59
Course Flag "X" => Course excluded from GPA, "I" => Course included in GPA

2009-2010
0941     Course Grades Subject   Comments   Credits   Credits Semester             Industry   Credit By   Online Semester Semester
MIDDLEBURG   Number Level           Attempted Earned Quarter   District School Grade Level Certification   Assessment Course
HIGH SCHOOL                                                                                                     Outcome

*United States v. Andrew Ryan Leslie*

**Case No. 3:16-cr-154-J-39JBT**

# Exhibit 8
# Verification of Employment

# Focus School Software

*PO Box 2194 St. Petersburg, FL 33701*
*Phone: (813) 458-1956*

## Employee Verification

**Employee Name:** Andrew Leslie

**Employment Number:** ▉▉▉

**Position Title:** Software Engineer

**Address:** ▉▉▉▉▉▉▉▉, Middleburg, FL 32068

**Telephone:** Business N/A   Home (904)▉▉▉▉

**Work location:** Employee worked remotely at his home at address listed above

**Date of Hire:** 07/29/2013

**Date of Termination:** 10/17/2016

**Ending Salary:** $50,400.00

**Reason for Termination:** No show

**Eligible for Rehire:** No

FOCUS SCHOOL SOFTWARE

NOV 1 4 2016

**Comments:**_____

_____

_____

_____                    11/14/16
Signature                                Date

Tab 53

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**UNITED STATES OF AMERICA**

**v**

**ANDREW RYAN LESLIE**

_____

**Case Number: 3:16-cr-154-J-39JBT**

**USM Number: 67789-018**

**Mark Rosenblum, FPD**
**Suite 1240**
**200 W Forsyth St**
**Jacksonville, FL 32202**

## JUDGMENT IN A CRIMINAL CASE

The defendant pleaded guilty to Counts One and Two of the Indictment. The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 U.S.C. §§ 2251 (a) and (e) | Production of Child Pornography | October 2016 | One |
| 18 U.S.C. §§ 2251 (a) and (e) | Production of Child Pornography | October 2016 | Two |

The defendant is sentenced as provided in pages 2 through 6 of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

**IT IS ORDERED** that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant shall notify the court and United States attorney of any material change in the defendant's economic circumstances.

Date of Imposition of Sentence: March 1, 2018

BRIAN J. DAVIS
UNITED STATES DISTRICT JUDGE

March 5th, 2018

Andrew Ryan Leslie
3:16-cr-154-J-39JBT

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of **SEVEN HUNDRED AND TWENTY (720) MONTHS, this term consists of THREE HUNDRED AND SIXTY (360) MONTHS on each of counts One and Two of the Indictment, all such terms to run consecutively.**

The Court makes the following recommendations to the Bureau of Prisons:
- Defendant enroll in a mental health program specializing in sexual offender treatment.
- Defendant receive mental health treatment
- Defendant be permitted to participate in any efforts to prevent and/or treat pedophilia, with approval from and under the supervision of the BOP.

The defendant is remanded to the custody of the United States Marshal.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

_____

Defendant delivered on _____ to _____

at _____, with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By: _____
Deputy U.S. Marshal

AO 245B (Rev. 11/16) Judgment in a Criminal Case

**Andrew Ryan Leslie**
**3:16-cr-154-J-39JBT**

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a **LIFE-TERM**, this term consists of **LIFE-TERMS** as to Counts One and Two of the Indictment, all such terms to run concurrently. .

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   - The mandatory drug testing requirements of the Violent Crime Control Act are waived, however, the Court orders the defendant to submit to random drug testing not to exceed two (2) tests per week.

4. You must comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense.

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below).

The defendant shall also comply with the additional conditions on the attached page.

AO 245B (Rev. 11/16) Judgment in a Criminal Case

Andrew Ryan Leslie
3:16-cr-154-J-39JBT

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.   You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame. After initially reporting to the probation office, the defendant will receive instructions from the court or the probation officer about how and when the defendant must report to the probation officer, and the defendant must report to the probation officer as instructed.
2.   After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.   You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.   You must answer truthfully the questions asked by your probation officer
5.   You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.   You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.   You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so.  If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.   You must not communicate or interact with someone you know is engaged in criminal activity.  If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.   If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within **72 hours**.
10.  You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchucks or tasers).
11.  You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12.  If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction.  The probation officer may contact the person and confirm that you have notified the person about the risk.
13.  You must follow the instructions of the probation officer related to the conditions of supervision.

# U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.


Defendant's Signature:_____        Date:_____


AO 245B (Rev. 11/16) Judgment in a Criminal Case

Andrew Ryan Leslie
3:16-cr-154-J-39JBT

# ADDITIONAL CONDITIONS OF SUPERVISED RELEASE

1. Defendant shall participate in a mental health treatment program (outpatient and/or inpatient) and follow the probation officer's instructions regarding the implementation of this court directive. Further, defendant shall contribute to the costs of these services not to exceed an amount determined reasonable by the Probation Office's Sliding Scale for Mental Health Treatment Services.

2. Defendant shall participate in a mental health program specializing in sexual offender treatment and submit to polygraph testing for treatment and monitoring purposes. Defendant shall follow the probation officer's instructions regarding the implementation of this court directive. Further, defendant shall contribute to the costs of such treatment and/or polygraphs not to exceed an amount determined reasonable by the probation officer based on ability to pay or availability of third party payment and in conformance with the Probation Office's Sliding Scale for Treatment Services.

3. Defendant shall register with the state sexual offender registration agency(s) in any state where defendant resides, visits, is employed, carries on a vocation, or is a student, as directed by the probation officer.

4. The probation officer shall provide state officials with all information required under Florida sexual predator and sexual offender notification and registration statutes (F.S. 943.0435) and/or the Sex Offender Registration and Notification Act (Title I of the Adam Walsh Child Protection and Safety Act of 2006, Public Law 109-248), and may direct the defendant to report to these agencies personally for required additional processing, such as photographing, fingerprinting, and DNA collection.

5. Defendant shall have no direct contact with minors (under the age of 18) without the written approval of the probation officer and shall refrain from entering into any area where children frequently congregate including: schools, daycare centers, theme parks, playgrounds, etc.

6. Defendant is prohibited from possessing, subscribing to, or viewing, any images, video, magazines, literature, or other materials depicting children in the nude and/or in sexually explicit positions.

7. Without the prior written approval of the probation officer, the defendant is prohibited from either possessing or using a computer (including a smart phone, a hand-held computer device, a gaming console, or an electronic device) capable of connecting to an online service or internet provider. The prohibition includes a computer at a library, an internet café, the defendant's place of employment, or an educational facility. Also, defendant is prohibited from possessing an electronic data storage medium (including flash drive, a compact disk, and a floppy disk) or using any data encryption technique or program. If approved to possess or use a device, the defendant must permit routine inspection of the device, including the hard drive and any other electronic data storage medium, to confirm adherence to this condition. The United States Probation Office must conduct the inspection in a manner no more intrusive than necessary to ensure compliance with this condition. If this condition might affect a third party, including the defendant's employer, the defendant must inform the third party of this restriction, including the computer inspection provision.

8. Defendant shall submit to a search of your person, residence, place of business, any storage units under your control, computer, or vehicle, conducted by the United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Defendant shall inform any other residents that the premises may be subject to a search pursuant to this condition. Failure to submit to a search may be grounds for revocation.

9. Defendant shall be prohibited from incurring new credit charges, opening additional lines of credit, or obligating yourself for any major purchases without approval of the probation officer.

10. Defendant shall provide the probation officer access to any requested financial information.

# CRIMINAL MONETARY PENALTIES

AO 245B (Rev. 11/16) Judgment in a Criminal Case

Andrew Ryan Leslie
3:16-cr-154-J-39JBT

The defendant must pay the following total criminal monetary penalties under the schedule of payments set forth in the Schedule of Payments.

| | Assessment | JVTA Assessment [1] | Fine | Restitution |
|---|---|---|---|---|
| **TOTALS** | **$200.00** | **$0.00** | **$0.00** | **Undetermined** |

The victims' losses are undetermined and the Court shall set a date for the final determination of the victims' losses within 90 days from the date of the sentencing.

## SCHEDULE OF PAYMENTS

The Special Assessment in the amount of **$200.00** is due in full and immediately.

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

Based on the financial status of the defendant, the Court waives the imposition of a fine. The Court finds that the defendant is indigent and the $5,000.00 special assessment pursuant to 18 U.S.C. § 3014, is not imposed.

Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court, unless otherwise directed by the court, the probation officer, or the United States attorney.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

---

[1] Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. 11/16) Judgment in a Criminal Case

Tab 57

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**UNITED STATES OF AMERICA**

**v.**                                             **Case No. 3:16-cr-154-J-39JBT**

**ANDREW RYAN LESLIE**

_____/

## NOTICE OF APPEAL

NOTICE IS HEREBY GIVEN that Andrew Ryan Leslie, Defendant above named, hereby appeals to the United States Court of Appeals for the Eleventh Circuit from the final Judgment in a Criminal Case entered in this action on March 7, 2018.

DATED this 21st day of March, 2018.

DONNA LEE ELM
FEDERAL PUBLIC DEFENDER

_s/ Mark Rosenblum_____
Mark Rosenblum - Florida Bar No. 0289175
Assistant Federal Defender
200 West Forsyth Street, Suite 1240
Jacksonville, Florida 32202
Telephone: 904-232-3039
Fax: 904-232-1937
E-Mail: mark_rosenblum@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 21, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

_s/ Mark Rosenblum_____
Mark Rosenblum
Assistant Federal Defender

Tab 65

Case 3:16-cr-00154-BJD-JBT   Document 65   Filed 05/02/18   Page 1 of 34 PageID 1335
USCA11 Case: 18-11183   Document: 17   Date Filed: 06/08/2018   Page: 116 of 205

1

1        UNITED STATES DISTRICT COURT
         MIDDLE DISTRICT OF FLORIDA
2            JACKSONVILLE DIVISION

3   UNITED STATES OF AMERICA,        Jacksonville, Florida

4            Plaintiff,              Case No. 3:16-cr-154-J-39JBT

5   -vs-                            Friday, October 6, 2017

6   ANDREW RYAN LESLIE,             2:06 p.m.

7            Defendant.              Courtroom 5A
    _____

9           **DIGITALLY RECORDED CHANGE OF PLEA**
         BEFORE THE HONORABLE JOEL B. TOOMEY
10           UNITED STATES MAGISTRATE JUDGE

11

12                 A P P E A R A N C E S

13  GOVERNMENT COUNSEL:

14       **Rodney Brown, Esquire**
         U.S. Attorney's Office
15       300 North Hogan Street, Suite 700
         Jacksonville, FL  32202

16

17  DEFENSE COUNSEL:

18       **Mark Rosenblum, Esquire**
         Federal Defender's Office
19       200 West Forsyth Street, Suite 1240
         Jacksonville, FL  32202

20

21  OFFICIAL COURT REPORTER:

22       Shelli Kozachenko, RPR, CRR, CRC
         221 North Hogan Street, #185
23       Jacksonville, FL  32202
         Telephone:  (904) 301-6842

24

25           (Proceedings recorded by electronic sound recording;
                         transcript produced by computer.)

1                    P R O C E E D I N G S

2    Friday, October 6, 2017                         2:06 p.m.

3                          - - -

4          COURT SECURITY OFFICER:  All rise.  United States

5    District Court in and for the Middle District of Florida is now

6    in session, the Honorable Joel B. Toomey presiding.

7          Please be seated.

8          THE COURT:  This is the case of the United States

9    versus Andrew Ryan Leslie, Case No. 3:16-cr-154.

10          And the defendant's present, along with his attorney,

11    Mr. Rosenblum, and Mr. Brown's here for the government.

12          And I've been provided with a written plea agreement.

13    Is it the defendant's intention to enter a plea pursuant to

14    this agreement?

15          MR. ROSENBLUM:  Yes, Your Honor.

16          THE COURT:  All right.  Mr. Leslie, if you can come

17    up here to the podium with your attorney.

18          Madam Clerk, if you could swear in the defendant.

19          COURTROOM DEPUTY:  Do you solemnly swear that the

20    answers you will give during these proceedings will be the

21    truth, the whole truth, and nothing but the truth?

22          THE DEFENDANT:  Yes, ma'am.

23          COURTROOM DEPUTY:  And please state your name for the

24    record.

25          THE DEFENDANT:  Andrew Ryan Leslie.

1          THE COURT:  And you've just taken an oath to tell the

2     truth.  If you do not tell the truth or if you omit or leave

3     anything important out, your testimony could form the basis of

4     a prosecution for perjury or making a false statement, which

5     are felonies.

6              In addition, your testimony can be used against you

7     in any proceedings if you challenge the taking of the plea, the

8     judgment, the conviction, or the sentence.

9              So do you understand what I've explained and the

10    importance of having been placed under oath?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  And are you a United States citizen?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  It is your right to plead guilty to these

15    charges.  However, before the Court may accept a plea of

16    guilty, it's necessary that the Court find that your plea is

17    made freely and voluntarily and that there's a factual basis

18    for your plea.  It's therefore necessary for me to ask

19    questions about the offenses to which you plead.

20             If you don't understand the questions or the words

21    that I use, feel free to ask that they be explained.

22             You may consult with your lawyer about any matter

23    during the questioning.  If necessary, I will recess the

24    proceedings and allow you as much time as you need to meet

25    privately with your lawyer.

Case 3:16-cr-00154-BJD-JBT   Document 65   Filed 05/02/18   Page 4 of 34 PageID 1338
USCA11 Case: 18-11183   Document: 17   Date Filed: 06/08/2018   Page: 119 of 205

4

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Do you understand that?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  And has the government complied with the

5   Crime Victims' Rights Statute?

6          MR. BROWN:  Yes, Your Honor.

7          THE COURT:  Now, I'm a magistrate judge, and your

8   case is also assigned to a district judge.

9          You have the right to have your guilty plea taken by

10  a district judge, or you could consent to have it taken by a

11  magistrate judge, such as myself.

12         Even if you consent to have your guilty plea taken by

13  me, the magistrate judge, the district judge will still decide

14  whether to accept your plea, and if it is accepted, the

15  district judge will be the one who imposes sentence.

16         So if you consent to having me, the magistrate judge,

17  take your plea, you're also waiving or giving up your right to

18  have the district judge take your plea.

19         So do you understand your right to have the district

20  judge take your plea?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  And do you want to waive that right and

23  allow me, the magistrate judge, to take your plea?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  Did you sign a consent form allowing me

Case 3:16-cr-00154-BJD-JBT   Document 65   Filed 05/02/18   Page 5 of 34 PageID 1339
USCA11 Case: 18-11183    Document: 17    Date Filed: 06/08/2018    Page: 120 of 205

5

1    to do that?

2         THE DEFENDANT:  I did, sir.

3         THE COURT:  And, Mr. Rosenblum, did you sign it as

4    well and explain it to your client?

5         MR. ROSENBLUM:  Yes, Your Honor.

6         THE COURT:  And has anybody threatened you in any way

7    or promised you anything in order to get you to waive this

8    right?

9         THE DEFENDANT:  No, sir.

10        THE COURT:  Is it your own independent decision to

11   waive this right?

12        THE DEFENDANT:  Yes, sir.

13        THE COURT:  I find the defendant has made a willing

14   and voluntary waiver of his right to have the district judge

15   take his plea and freely and voluntarily consented to allowing

16   me, the magistrate judge, to take his plea.

17        Now I need to ask you some background questions

18   again.

19        What was your full name?

20        THE DEFENDANT:  Andrew Ryan Leslie.

21        THE COURT:  And what's your date of birth?

22        THE DEFENDANT:  January 16th, 1995.

23        THE COURT:  And how far did you go in school?

24        THE DEFENDANT:  I graduated high school.

25        THE COURT:  And so can you read, write, and

1    understand English?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  And are you currently under the influence

4    of any drugs, alcohol, or other intoxicants?

5            THE DEFENDANT:  No, sir.

6            THE COURT:  Are you currently under the influence of

7    any medications?

8            THE DEFENDANT:  Yes, sir.

9            THE COURT:  What medications have you taken?

10           THE DEFENDANT:  Lexapro and Zyprexa.

11           THE COURT:  And what are -- are those prescribed

12   medications?

13           THE DEFENDANT:  Yes, sir.

14           THE COURT:  And what are they prescribed for?

15           THE DEFENDANT:  Lexapro's an antidepressant and

16   Zyprexa is an antipsychotic and mood stabilizer.

17           THE COURT:  It's a what, now?

18           THE DEFENDANT:  Antipsychotic and mood stabilizer.

19           THE COURT:  And have you had those within the last 48

20   hours?

21           THE DEFENDANT:  Yes, sir.

22           THE COURT:  Did you take them in the prescribed

23   dosages?

24           THE DEFENDANT:  Yes, sir.

25           THE COURT:  And do those medications have any

Case 3:16-cr-00154-BJD-JBT   Document 65   Filed 05/02/18   Page 7 of 34 PageID 1341
USCA11 Case: 18-11183   Document: 17   Date Filed: 06/08/2018   Page: 122 of 205

7

1  negative impact on your ability to understand these

2  proceedings?

3            THE DEFENDANT:  No, sir.

4            THE COURT:  And so you are currently receiving either

5  medical or mental health care?

6            THE DEFENDANT:  Yes, sir.

7            THE COURT:  And what are you receiving care for?

8            THE DEFENDANT:  Depression and overwhelming thoughts.

9            THE COURT:  All right.  What was the second one?

10           THE DEFENDANT:  Overwhelming thoughts.

11           THE COURT:  Overwhelming thoughts.

12           And what type of doctor is treating you?

13           THE DEFENDANT:  A psychiatrist.

14           THE COURT:  Are you being treated for anything else?

15           THE DEFENDANT:  No, sir.

16           THE COURT:  All right.

17           THE DEFENDANT:  I take that back, Your Honor.  I'm

18  being treated for back pain, but that's not mental illness.

19           THE COURT:  Okay.  Are you taking any medications for

20  the back pain?

21           THE DEFENDANT:  Ibuprofen.

22           THE COURT:  And have you taken that in the last 48

23  hours?

24           THE DEFENDANT:  Yes, sir.

25           THE COURT:  Is that prescribed also?

Case 3:16-cr-00154-BJD-JBT   Document 65   Filed 05/02/18   Page 8 of 34 PageID 1342
USCA11 Case: 18-11183   Document: 17   Date Filed: 06/08/2018   Page: 123 of 205

8

1    THE DEFENDANT:  Yes, sir.

2    THE COURT:  And did you take that in the prescribed

3    dosage?

4    THE DEFENDANT:  Yes, sir.

5    THE COURT:  And does that have any impact on your

6    ability to understand these proceedings?

7    THE DEFENDANT:  No, sir.

8    THE COURT:  Other than what you mentioned, have you

9    ever been treated for or suffered from any mental or emotional

10   illness?

11   THE DEFENDANT:  Well, at 16 I was diagnosed with

12   depression also.

13   THE COURT:  Okay.  And how long were you treated for

14   that?

15   THE DEFENDANT:  For a year.

16   THE COURT:  And any other mental health treatment?

17   THE DEFENDANT:  No, sir.

18   THE COURT:  And right now do you clearly understand

19   where you are, what you're doing, and the importance of this

20   proceeding?

21   THE DEFENDANT:  Yes, sir.

22   THE COURT:  And, Mr. Rosenblum, do you have any

23   concern regarding the defendant's competency to enter a plea at

24   this time?

25   MR. ROSENBLUM:  No, Your Honor.

Case 3:16-cr-00154-BJD-JBT   Document 65   Filed 05/02/18   Page 9 of 34 PageID 1343
USCA11 Case: 18-11183   Document: 17   Date Filed: 06/08/2018   Page: 124 of 205

9

1          THE COURT:  Any other questions you'd like me to ask?

2          MR. BROWN:  No, Your Honor.

3          THE COURT:  All right.  You can have a seat back at

4    the table.

5          Now, you have a right to plead not guilty, as you've

6    previously done, and to persist in that plea.  If you maintain

7    your plea of not guilty, you have the following rights under

8    the Constitution and laws of the United States:

9          You have the right to a speedy and public trial and

10   to be tried by a jury of 12 persons, or by the judge if you

11   waive a jury trial.  If you're tried by a jury, all 12 of the

12   jurors must unanimously agree on your guilt before you can be

13   convicted.

14         You're presumed innocent.  Before you can be found

15   guilty, the burden of proof is on the government to prove your

16   guilt by competent and sufficient evidence beyond a reasonable

17   doubt.  You do not have to prove that you're innocent.

18         You have the right to have the assistance of an

19   attorney at the trial and at every stage of these criminal

20   proceedings.

21         At your trial witnesses for the government have to

22   come into court and testify in your presence.  You have the

23   right to confront these witnesses against you, meaning to see,

24   hear, question, and cross-examine the witnesses.

25         Your attorney can object to evidence offered by the

1   government and offer evidence on your behalf.

2          At trial you may present witnesses in your own

3   defense, and if they will not appear voluntarily, I can issue

4   orders to make them come to the trial.

5          You need not make any statement about the charges,

6   and you may not be compelled to incriminate yourself or testify

7   at trial.  On the other hand, if you wish to testify at your

8   trial, you could do so.  The choice is entirely up to you.

9          Now, if you plead guilty, there will be no further

10  trial of any kind, and on your plea the Court will find you

11  guilty and convict you.

12         A plea of guilty admits the truth of the charges, but

13  a plea of not guilty denies the charges.

14         Has this been explained to you by your lawyer?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  If you choose to plead guilty, you must

17  give up the right not to incriminate yourself because I have to

18  ask you questions about the crimes to which you plead guilty to

19  satisfy myself that there's a factual basis for your plea.

20         By pleading guilty, you also waive and give up your

21  right to trial, to confrontation and cross-examination of

22  government witnesses, and to compulsory process for attendance

23  of defense witnesses at trial.

24         So there will be no trial.  The next step would be

25  sentencing.

Case 3:16-cr-00154-BJD-JBT  Document 65  Filed 05/02/18  Page 11 of 34 PageID 1345
USCA11 Case: 18-11183   Document: 17   Date Filed: 06/08/2018   Page: 126 of 205

11

1          Now, you may have defenses to the charges, but if you

2    plead guilty, you waive and give up your right to assert any

3    possible defenses.

4          Has your lawyer discussed with you any defenses that

5    may be available to you?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  By pleading guilty you also waive and

8    give up your right to challenge the way the government obtained

9    any evidence, statement, or confession.

10          In addition, by pleading guilty you may lose the

11   right to challenge on appeal any rulings which the Court has

12   made in your case.

13          By pleading guilty to these felonies, you may lose

14   certain civil rights, such as your right to vote, to hold

15   public office, to serve on juries, and to own and possess

16   firearms and ammunition.

17          A felony conviction may also prevent you from

18   obtaining or keeping certain occupational licenses.

19          So do you fully understand all the rights that you

20   have and the rights that you waive and give up by pleading

21   guilty?

22          THE DEFENDANT:  I do, Your Honor.

23          THE COURT:  The federal sentencing guidelines apply

24   to your case.

25          Have you discussed the sentencing guidelines with

1    your attorney?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  I won't go into too much detail about the

4    guidelines since you've discussed them with your lawyer, but I

5    do have to make sure you understand certain things about how

6    the sentencing process works.

7            The Court will not be able to determine your

8    guideline sentence until after the presentence report has been

9    completed by the probation office.

10           After it's been determined what guidelines apply to

11   your case, the district judge still has the authority to impose

12   a sentence that is either more severe or less severe than the

13   sentence called for by the guidelines.  So the guidelines are

14   only advisory.  The district judge can impose any sentence up

15   to the maximum permitted by law.

16           In determining a sentence, the district judge is

17   obligated to calculate the guideline range and to consider that

18   range and also consider possible departures under the

19   guidelines and other sentencing factors that are listed in a

20   statute, 18, U.S. Code, Section 3553(a).

21           Also, under some circumstances the government may

22   have the right to appeal any sentence that the district judge

23   imposes and ask a higher court to impose a more severe

24   sentence.

25           Parole's been abolished, and if you're sentenced to

Case 3:16-cr-00154-BJD-JBT   Document 65   Filed 05/02/18   Page 13 of 34 PageID 1347
USCA11 Case: 18-11183   Document: 17   Date Filed: 06/08/2018   Page: 128 of 205

13

1    prison, you'll not be released on parole.

2            So as we sit here today, nobody can tell you what

3    your sentence is going to be.  The sentence imposed could be

4    different than any estimated sentence your attorney or anyone

5    else has given you.

6            It could be more severe than you expect, but even if

7    that happens, you'll still be bound by your guilty plea and

8    will not have the right to withdraw it.

9            Do you understand that?

10            THE DEFENDANT:  Yes, sir.

11            THE COURT:  And do you understand all the things I've

12    just explained about sentencing?

13            THE DEFENDANT:  Yes, sir.

14            THE COURT:  And did you receive a copy of the

15    indictment in your case?

16            THE DEFENDANT:  I did, sir.

17            THE COURT:  And have the charges been read and

18    explained to you by your attorney?

19            THE DEFENDANT:  Yes, sir.

20            THE COURT:  And the charges against you in both

21    Counts One and Two charge you with production of child

22    pornography, in violation of 18, U.S. Code, Sections 2251(a)

23    and 2251(e).

24            Do you fully understand the charges contained in the

25    indictment?

Case 3:16-cr-00154-BJD-JBT   Document 65   Filed 05/02/18   Page 14 of 34 PageID 1348
USCA11 Case: 18-11183   Document: 17   Date Filed: 06/08/2018   Page: 129 of 205

14

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Do you have any questions about the

3    charges?

4          THE DEFENDANT:  No, sir.

5          THE COURT:  Now, the necessary elements the

6    government must prove beyond a reasonable doubt in order for

7    you to be convicted on these charges are as follows, and

8    they're listed on page 3 of your plea agreement:

9          First, that an actual minor, that is, a real person

10   who is less than 18 years old, was depicted;

11         Second, that you employed, used, persuaded, induced,

12   enticed, or coerced a minor to engage in sexually explicit

13   conduct for the purpose of producing visual depictions of the

14   conduct; and

15         Third, that such visual depictions were produced

16   using materials that had been mailed, shipped, or transported

17   in interstate or foreign commerce.

18         So do you understand the elements of the charge which

19   the government would have to prove beyond a reasonable doubt

20   for you to be convicted?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  Do you have any questions --

23         THE DEFENDANT:  No, sir.

24         THE COURT:  -- about the elements?

25         Now, this crime is punishable by the following

1    minimum and maximum penalties, which are listed on pages 1

2    through 3 of your plea agreement:

3            They're each -- each count's punishable by a

4    mandatory minimum term of imprisonment of not less than 15

5    years and not more than 30 years, a fine of $250,000, or both

6    the imprisonment and the fine, a term of supervised release

7    after prison of not less than five years up to life, a special

8    assessment of a hundred dollars, and $5,000 on any nonindigent

9    defendant.

10           And then if the Court sentences you on each count

11   consecutively, you're looking at a total cumulative sentence of

12   a minimum mandatory term of imprisonment of not less than 30

13   years and not more than 60 years, fines totaling $500,000, or

14   both the imprisonment and the fine, a term of supervised

15   release after prison of not less than five years up to life,

16   special assessments of either $200 or $10,000.

17           And then, once you're on supervised release, if

18   you're required to register under the Sex Offender Registration

19   and Notification Act, which you will be, and then you commit

20   any criminal felony offense under 18, U.S. Code, Chapters 109A,

21   110, or 117, or Sections 1201 or 1591, then the Court shall

22   revoke your term of supervised release and sentence you to a

23   term of imprisonment of not less than five years and up to life

24   per count.

25           If you violate your supervised release in any other

1  way, it's punishable by a term of imprisonment of up to three

2  years, and you can get an additional term of supervised

3  release.

4         And then the Court will also order you to make

5  restitution to any victims of the offenses and provide notice

6  of the conviction to victims of the offense.

7         The Court also may require you to forfeit certain

8  property to the government.

9         Have I accurately stated the minimum and maximum

10 penalties?

11         MR. BROWN:  Yes, Your Honor.

12         THE COURT:  Mr. Rosenblum, do you agree?

13         MR. ROSENBLUM:  Yes, Your Honor.

14         THE COURT:  So do you understand the minimum and

15 maximum penalties you face for each count?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  Do you understand the total cumulative

18 minimum and maximum penalties you face for both counts?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  And do you understand that these maximum

21 penalties are a possible consequence of your guilty plea?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  And do you have any questions about

24 anything I've explained thus far?

25         THE DEFENDANT:  No, sir.

1              THE COURT:  Have you fully discussed all these

2    matters with your lawyer?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  And do you understand that there have

5    been discussions between the attorney for the government and

6    your attorney which have resulted in a written plea agreement?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  Give that to Mr. Rosenblum.

9              MR. ROSENBLUM:  Mr. Leslie, I'm showing you a

10   document that is titled Plea Agreement, and there are initials

11   on each page of this plea agreement, and on page 18 there is a

12   signature that purports to be your signature.

13             So two questions:  First of all, is that your

14   signature on page 18?

15             THE DEFENDANT:  Yes, sir.

16             MR. ROSENBLUM:  And is that your initials on every

17   page of this plea agreement?

18             THE DEFENDANT:  Yes, sir.

19             MR. ROSENBLUM:  And did you and I review this plea

20   agreement together?

21             THE DEFENDANT:  Yes, we did.

22             MR. ROSENBLUM:  And did you indicate to me at the

23   time that you understood it?

24             THE DEFENDANT:  Yes.

25             MR. ROSENBLUM:  And that you wanted to enter into it?

 1          THE DEFENDANT:  Yes, sir.

 2          MR. ROSENBLUM:  And are you indicating that today?

 3          THE DEFENDANT:  Yes, sir.

 4          THE COURT:  Mr. Rosenblum?

 5          MR. ROSENBLUM:  Your Honor, I can tell you that's my

 6     signature on the plea agreement.

 7          MR. BROWN:  Your Honor, I have the original plea

 8     agreement that was negotiated between the parties through

 9     counsel in this case, and on page 18 of the plea agreement, I

10     recognize the signatures on the right-hand side of the page.  I

11     also recognize Mr. Rosenblum's signature, having worked with

12     him for years.

13          But the two on the right-hand side of the page, one

14     belongs to me.  I've signed on behalf of the United States

15     because I'm the prosecutor on this case, but also I've signed

16     for my co-counsel, Lauren Britsch, and with her authority to do

17     so.

18          Lastly, the signature that appears on the page at the

19     bottom is that of Kelly Karase, and she's our deputy chief and

20     is authorized to enter into plea agreements on behalf of the

21     United States.

22          Additionally, on the first page of the plea

23     agreement, Your Honor, I recognize the initials of Bonnie

24     Glober in the lower right-hand portion of the page in a section

25     called -- that's referred to as AF approval.  That stands for

1   asset forfeiture.

2          Assistant United States Attorney Bonnie Glober is our

3   asset forfeiture specialist and has also approved this plea

4   agreement.

5          THE COURT:  Mr. Leslie, did you read the entire plea

6   agreement before signing it?

7          THE DEFENDANT:  I did, Your Honor.

8          THE COURT:  And did you understand your entire plea

9   agreement?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Do you have any questions about it?

12          THE DEFENDANT:  No, sir.

13          THE COURT:  Even though you don't have any questions,

14   I'm still going to go over some of the provisions of the plea

15   agreement, but I'm not going to go over all of them.  But, of

16   course, you are bound by the entire plea agreement.

17          You understand that?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Now, your plea agreement contains a

20   provision, on page 3, in which the government is agreeing not

21   to charge you with any other federal criminal offenses known to

22   them that relate to the conduct giving rise to the plea

23   agreement.

24          The district judge can only accept a plea agreement

25   that involves an agreement not to pursue other charges if the

1  district judge finds that the remaining charges that you plead

2  guilty to adequately reflect the seriousness of your actual

3  offense behavior and that accepting the agreement will not

4  undermine the statutory purpose of sentencing.

5        You understand that?

6        THE DEFENDANT:  Yes, sir.

7        THE COURT:  Also, in this plea agreement --

8  restitution is normally limited to the conduct in the counts to

9  which you plead guilty.  Here, you've waived this limitation

10  and agreed to make restitution to any of your minor victims.

11        You've also agreed not to oppose a bifurcation of the

12  sentencing hearing if the victims' losses are not ascertainable

13  prior to sentencing.

14        Do you understand that?

15        THE DEFENDANT:  Yes, sir.

16        THE COURT:  Also, your plea agreement contains some

17  recommendations that the government's agreeing to make about

18  your sentence, in the event no adverse information is received.

19        As your plea agreement states, the government's

20  recommendations are not binding on the district judge.  If the

21  judge does not accept the government's sentencing

22  recommendations in your plea agreement, you'll still be bound

23  by your guilty plea and will not have a right to withdraw it.

24        You understand that?

25        THE DEFENDANT:  Yes, sir.

Case 3:16-cr-00154-BJD-JBT Document 65 Filed 05/02/18 Page 21 of 34 PageID 1355
USCA11 Case: 18-11183 Document: 17 Date Filed: 06/08/2018 Page: 136 of 205

21

1        THE COURT:  And in your plea agreement, you're

2   agreeing to cooperate with the government.  In exchange, the

3   government's merely agreeing to consider whether any

4   cooperation you provide qualifies as substantial assistance

5   such that they may file some type of motion or make some type

6   of recommendation about your sentence.

7        But you've agreed that that determination is solely

8   in their discretion, and you're not going to challenge it in

9   any way.

10       Do you --

11       THE DEFENDANT:  Yes, sir.

12       THE COURT:  -- understand that?

13       Do you understand that?

14       THE DEFENDANT:  Yes, sir.

15       THE COURT:  You've agreed to forfeit the assets that

16  are listed in the plea agreement.

17       Do you understand that?

18       THE DEFENDANT:  Yes, sir.

19       THE COURT:  And you've agreed and acknowledged that

20  you'll -- that you'll have to comply with the Sex Offender

21  Registration and Notification Act.

22       Do you --

23       THE DEFENDANT:  Yes, sir.

24       THE COURT:  -- understand that?

25       Also, in paragraph B.7, which starts on page 14,

1  you've agreed to waive your right to appeal your sentence,

2  except in the circumstances that are listed.

3          Normally you'd have a right to appeal your sentence

4  on any ground that you think's appropriate, including an

5  incorrect application of the sentencing guidelines.  Under this

6  plea agreement, however, you're waiving and giving up your

7  right to appeal your sentence except in the specific

8  circumstances that are listed.

9          So you could still appeal your sentence on the

10 following grounds:  First, on the ground that your sentence

11 exceeds your applicable guideline range, as that range is

12 determined by the Court; or second, that your sentence exceeds

13 the statutory maximum penalty; or third, that it violates the

14 Eighth Amendment to the Constitution; or fourth, if the

15 government appeals your sentence, then you can appeal it also.

16         But other than in those circumstances, you're waiving

17 your right to appeal your sentence.

18         So do you understand what you're waiving and giving

19 up in this portion of the plea agreement?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  Did you make this waiver freely and

22 voluntarily?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  Are there any other provisions of the

25 plea agreement you'd like me to discuss?

```
 1              MR. BROWN:  No, Your Honor.

 2              THE COURT:  Mr. Rosenblum?

 3              MR. ROSENBLUM:  No, Your Honor.

 4              THE COURT:  Mr. Leslie, are there any other

 5   provisions of the plea agreement you'd like me to discuss with

 6   you?

 7              THE DEFENDANT:  No, sir.

 8              THE COURT:  And do you understand all the provisions

 9   of the plea agreement?

10              THE DEFENDANT:  Yes, sir.

11              THE COURT:  Are you willing to be bound by the

12   provisions of the plea agreement?

13              THE DEFENDANT:  Yes, sir.

14              THE COURT:  Have any promises or assurances been made

15   to you by anyone that are not reflected in the plea agreement?

16              THE DEFENDANT:  No, Your Honor.

17              THE COURT:  And do you fully understand all the other

18   matters we've covered up to this point in the hearing?

19              THE DEFENDANT:  Yes, sir.

20              THE COURT:  And how do you plead, guilty or not

21   guilty, to Counts One and Two of the indictment?

22              THE DEFENDANT:  Guilty, Your Honor.

23              THE COURT:  Are you pleading guilty because you are

24   guilty?

25              THE DEFENDANT:  Yes, sir.
```

1          THE COURT:  Do you now admit that you committed the

2    acts set forth in those charges?

3        (No audible response.)

4          THE COURT:  Do you now admit that you committed the

5    acts set forth in those charges?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Do you understand that a plea of guilty

8    admits the truth of the charges against you?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Is your plea entered with an

11    understanding of what you're doing here today?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Now we'll hear from the prosecutor a

14    proffer of facts that the government must prove beyond a

15    reasonable doubt in order for there to be a conviction in your

16    case.

17          Please listen carefully because I will ask if you

18    agree with what the prosecutor says.  It's also important

19    because this information will be used by the probation office

20    in preparing your presentence investigation report.

21          Mr. Brown?

22          MR. BROWN:  If this case were to proceed to trial,

23    the United States would, through testimony and evidence, prove

24    the following facts beyond a reasonable doubt:

25          In 2015, agents with the United States Department of

1    Homeland Security, Homeland Security Investigations, or HSI,

2    began an investigation into certain websites known to host

3    images and videos depicting child pornography.  This

4    investigation targeted individuals who were users of such

5    websites where child pornography was exchanged.

6            In 2016, Defendant Andrew Ryan Leslie was identified

7    as a member of one of those websites.  Further investigation

8    revealed that Leslie resided in Middleburg, Florida.

9            On October 18, 2016, HSI agents and other law

10   enforcement officers executed a federal search warrant at

11   Leslie's residence in Middleburg, Florida.  Upon entry into the

12   residence, agents observed Leslie as Leslie emerged from the

13   master bedroom.  Leslie stated in substance that a minor female

14   child, referred to by Leslie as a toddler, had been in bed with

15   Leslie when the agents arrived.

16           During the execution of the search warrant, HSI

17   agents located, on a nightstand located next to Leslie's bed in

18   the master bedroom, a Canon PC1737 Powershot A3400 IS digital

19   camera bearing serial No. 432061019849 that was manufactured in

20   China.

21           Contained within the camera was an SD adapter and a

22   micro SD card.  This micro SD card was a Toshiba 8GB HC Micro

23   SD card bearing serial No. 1403RP4801P that was manufactured in

24   Taiwan.  This camera and this SD card each were shipped and

25   transported in or affecting interstate and foreign commerce.

1          During a forensic preview, agents discovered that the

2    SD card contained a series of pornographic images depicting

3    Leslie with two different minor female children.  In several

4    images, the same prepubescent minor child, or Child 1, who was

5    approximately two years old at the time, was in a bed -- was in

6    the bed with Leslie that morning was depicted.  Other images

7    depicted a different infant female child, Child 2, who was

8    approximately seven months old at the time.

9          These images depicted, among other things, Child 1

10   being vaginally and orally penetrated by Leslie's penis.  There

11   were also images depicting the lascivious exhibition of child

12   2's genitalia.

13         In several images Leslie's depicted gripping his own

14   penis and contacting the genitalia of Child 1 with it.  All the

15   images on the Toshiba SD card, 42 in total, were produced by

16   Leslie on October 14, 2016, using the Canon Powershot digital

17   camera.

18         HSI agents also seized numerous items of computer

19   media from Leslie's residence, including several laptop

20   computers, computer hard disk drives, tablets, cell phones, and

21   cameras.

22         Forensic analysis of these items revealed that Leslie

23   had produced, received, distributed, and -- produced, received,

24   distributed, and possessed numerous images and videos depicting

25   child pornography.

1        Moreover, logs of online conversations between Leslie

2    and other individuals were recovered that demonstrate, among

3    other things, that Leslie had discussed engaging in sexual

4    activity with several minor -- minor children.

5        Leslie acknowledges that there exists a sufficient

6    nexus for purposes of forfeiture between the items specified

7    herein and the criminal conduct set forth above.

8        THE COURT:  And is that what you did?

9        THE DEFENDANT:  Yes, Your Honor.

10       THE COURT:  Do you admit the truth of the factual

11    basis and that all of the elements thereof are true and correct

12    as they pertain to you?

13       THE DEFENDANT:  Yes, Your Honor.

14       THE COURT:  I'm going to ask you the personalization

15    of elements from your plea agreement.

16       Do you admit that an actual -- this is as to Count

17    One.  Do you admit that an actual minor, that is, a real person

18    who was less than 18 years old, was depicted?

19       THE DEFENDANT:  Yes, Your Honor.

20       THE COURT:  In or about October 14th, 2016, in the

21    Middle District of Florida, did you employ and use a Child 1 to

22    engage in sexually explicit conduct, that is, genital to

23    genital and oral to genital sexual intercourse, for the purpose

24    of producing visual depictions of such conduct?

25       THE DEFENDANT:  Yes, Your Honor.

Case 3:16-cr-00154-BJD-JBT  Document 65  Filed 05/02/18  Page 28 of 34 PageID 1362
USCA11 Case: 18-11183   Document: 17   Date Filed: 06/08/2018   Page: 143 of 205

28

1          THE COURT:  Do you admit that you produced such

2    visual depictions using materials that had been mailed,

3    shipped, and transported in interstate and foreign commerce,

4    that is, a Canon PC1737 Powershot A3400 IS digital camera

5    bearing serial No. 432061019849 that was manufactured in China

6    and a Toshiba 8GB HC Micro SD card bearing serial No.

7    1403RP4801P that was manufactured in Taiwan?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  As to Count Two do you admit that an

10   actual minor, that is, a real person who was less than 18 years

11   old, was depicted?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  On or about October 14th, 2016, in the

14   Middle District of Florida, did you employ and use Child 2 to

15   engage in sexually explicit conduct, that is, the lascivious

16   exhibition of the minor's genitals, for the purpose of

17   producing visual depictions of such conduct?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  Do you admit that you produced such

20   visual depictions using materials that had been mailed,

21   shipped, and transported in interstate and foreign commerce,

22   that is, a Canon PC1737 Powershot A3400 IS digital camera

23   bearing serial No. 432061019849 that was manufactured in China,

24   and a Toshiba 8GB HC Micro SD card bearing serial No.

25   1403RP4801P that was manufactured in Taiwan?

Case 3:16-cr-00154-BJD-JBT  Document 65  Filed 05/02/18  Page 29 of 34 PageID 1363
USCA11 Case: 18-11183  Document: 17  Date Filed: 06/08/2018  Page: 144 of 205

29

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  I find a factual basis for the plea.

3          Is your plea free and voluntary?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Is your plea of guilty your own

6  independent decision?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Has anyone threatened you, forced you,

9  coerced you, or intimidated you in any way regarding your

10  decision to plead guilty?

11          THE DEFENDANT:  No, Your Honor.

12          THE COURT:  Has anyone made any promises or

13  assurances to you of any kind to induce you to plead guilty,

14  other than those stated in your plea agreement?

15          THE DEFENDANT:  No, Your Honor.

16          THE COURT:  Are you relying on any other agreement or

17  promise about what sentence will be imposed if you plead

18  guilty, other than what's stated in your plea agreement?

19          THE DEFENDANT:  No, Your Honor.

20          THE COURT:  At this time do you know what sentence

21  you will receive?

22          THE DEFENDANT:  No, Your Honor.

23          THE COURT:  And has anyone promised that you will

24  receive a light sentence or be otherwise rewarded by pleading

25  guilty, other than what's stated in your plea agreement?

Case 3:16-cr-00154-BJD-JBT   Document 65   Filed 05/02/18   Page 30 of 34 PageID 1364
USCA11 Case: 18-11183   Document: 17   Date Filed: 06/08/2018   Page: 145 of 205

30

1          THE DEFENDANT:  No, Your Honor.

2          THE COURT:  Let me ask each attorney, do you assure

3  the Court that as far as you know, no assurances, promises, or

4  understandings have been given the defendant as to a

5  disposition of his case which are different or contrary to

6  what's in the plea agreement?

7          MR. BROWN:  I can assure the Court of that, Your

8  Honor.

9          MR. ROSENBLUM:  Yes, Your Honor.

10          THE COURT:  You've been represented by Mr. Rosenblum.

11          Have you discussed your case fully and explained

12  everything you know about it to him?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  Have you had enough time to talk with

15  your lawyer, or anyone else you care to, about your case?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  Are you satisfied with your lawyer and

18  the way he's represented you in this case?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  Do you have any complaints about the way

21  he's represented you?

22          THE DEFENDANT:  No, Your Honor.

23          THE COURT:  Do you have any complaints about the way

24  you've been treated by the Court or anyone else which is

25  causing you to plead guilty?

Case 3:16-cr-00154-BJD-JBT   Document 65   Filed 05/02/18   Page 31 of 34 PageID 1365
USCA11 Case: 18-11183    Document: 17    Date Filed: 06/08/2018    Page: 146 of 205

31

1          THE DEFENDANT:  No, Your Honor.

2          THE COURT:  Has anyone coached you or suggested that

3   you answer untruthfully any of the questions asked of you by

4   the Court today?

5          THE DEFENDANT:  No, Your Honor.

6          THE COURT:  Have you told the truth today?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  And do you fully understand all the

9   rights and procedures that you waive and give up by pleading

10  guilty?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  And having heard everything I've said, is

13  it your final desire to plead guilty to Counts One and Two of

14  the indictment, pursuant to the terms of your plea agreement?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  And now is your last chance to speak up

17  or ask questions before I recommend to the district judge that

18  he accept your plea.

19         Do you have any questions or anything you want to say

20  at this point?

21         THE DEFENDANT:  No, Your Honor.

22         THE COURT:  Is the government satisfied with the

23  colloquy?

24         MR. BROWN:  Yes, Your Honor.

25         THE COURT:  Is the defense satisfied?

Case 3:16-cr-00154-BJD-JBT   Document 65   Filed 05/02/18   Page 32 of 34 PageID 1366
USCA11 Case: 18-11183   Document: 17   Date Filed: 06/08/2018   Page: 147 of 205

32

1       MR. ROSENBLUM:  Yes, Your Honor.

2       THE COURT:  Mr. Rosenblum, are you satisfied that

3   your client knows what he's charged with, that you've had

4   sufficient time to counsel with him, and that he is pleading

5   guilty freely and voluntarily, with full knowledge of the

6   consequences of his plea?

7       MR. ROSENBLUM:  Yes, Your Honor.

8       THE COURT:  Mr. Leslie, I'm going to make certain

9   findings that pertain to you and then ask if you agree with

10  them.

11      I find that you are now alert and intelligent, that

12  you understand the nature of the charges against you and the

13  possible penalties, and you appreciate the consequences of

14  pleading guilty.

15      I also find the facts which the government is

16  prepared to prove and which by your plea of guilty you admit

17  state all the essential elements of the crimes to which you

18  have pleaded guilty.

19      I further find that your decision to plead guilty is

20  freely, voluntarily, knowingly, and intelligently made and that

21  you've had the advice and counsel of a competent lawyer, with

22  whom you say you are satisfied.

23      Do you agree with these findings?

24      THE DEFENDANT:  Yes, Your Honor.

25      THE COURT:  I will make a written report to the

1    district judge recommending that he accept your guilty plea.

2         Each side has 14 days to object to that

3    recommendation, or that time period can be waived.

4         MR. BROWN:  United States will waive.

5         MR. ROSENBLUM:  Your Honor, in this case we're not

6    going to waive it.

7         THE COURT:  A presentence report will be prepared by

8    the probation office to assist the district judge in sentencing

9    you.  You'll be required to furnish information for this

10   report.

11        Your attorney will represent you in the preparation

12   of this report and at sentencing.  You and your attorney will

13   be given an opportunity to speak on your behalf at the

14   sentencing hearing.

15        You and your attorney will be permitted to read the

16   presentence report before the sentencing hearing and to make

17   objections to it, if you have objections.

18        Anything further to take up?

19        MR. BROWN:  No, Your Honor.

20        MR. ROSENBLUM:  No, Your Honor.  Thank you.

21        THE COURT:  Okay.  Court will be in recess.

22        COURT SECURITY OFFICER:  All rise.

23     (The proceedings were concluded at 2:41 p.m.)

24                              -  -  -

25

1                   CERTIFICATE OF OFFICIAL COURT REPORTER

2

3

4    UNITED STATES DISTRICT COURT )

5    MIDDLE DISTRICT OF FLORIDA    )

6

7              I, court approved transcriber, certify that the

8    foregoing is a correct transcript from the official electronic

9    sound recording of the proceedings in the above-entitled

10   matter.

11

12             DATED this 1st day of May, 2018.

13

14                           s/Shelli Kozachenko
                             Shelli Kozachenko, RPR, CRR, CRC
15                           Official Court Reporter

16

17

18

19

20

21

22

23

24

25

Tab 66

Case 3:16-cr-00154-BJD-JBT  Document 66  Filed 05/02/18  Page 1 of 54 PageID 1369
USCA11 Case: 18-11183   Document: 17   Date Filed: 06/08/2018   Page: 151 of 205

1

<pre>
 1                  UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
 2                    JACKSONVILLE DIVISION

 3   UNITED STATES OF AMERICA,        Jacksonville, Florida

 4           Plaintiff,               Case No. 3:16-cr-154-J-39JBT

 5   -vs-                             Thursday, March 1, 2018

 6   ANDREW RYAN LESLIE,              2:05 p.m.

 7           Defendant.               Courtroom 12C
     _____

 8

 9                    TRANSCRIPT OF SENTENCING
               BEFORE THE HONORABLE BRIAN J. DAVIS
10                 UNITED STATES DISTRICT JUDGE

11

12                   A P P E A R A N C E S

13   GOVERNMENT COUNSEL:

14        Rodney Brown, Esquire
          United States Attorney's Office
15        300 North Hogan Street, Suite 700
          Jacksonville, FL  32202
16

17   DEFENSE COUNSEL:

18        Mark Rosenblum, Esquire
          Federal Defender's Office
19        200 West Forsyth Street, Suite 1240
          Jacksonville, FL  32202
20

21   OFFICIAL COURT REPORTER:

22        Shelli Kozachenko, RPR, CRR, CRC
          221 North Hogan Street, #185
23        Jacksonville, FL  32202
          Telephone:  (904) 301-6842
24
                       (Proceedings reported by stenography;
25                        transcript produced by computer.)
</pre>

1                   T A B L E   O F   C O N T E N T S

2

3    <u>COMMENTS IN ALLOCUTION:</u>                        <u>Page No.</u>

4      SHARON LESLIE...................................       19

5      DEFENDANT LESLIE...............................       20

6

7    <u>VICTIM STATEMENTS:</u>                              <u>Page No.</u>

8      TRACEY SAYLES..................................       39

9      DARREN BAKER...................................       41

10

11

12

13         G O V E R N M E N T   E X H I B I T S   R E C E I V E D

14                                                    <u>Page No.</u>

15     GOVERNMENT'S EXHIBIT 1 ........................       29

16

17

18

19

20

21

22

23

24

25

Case 3:16-cr-00154-BJD-JBT   Document 66   Filed 05/02/18   Page 3 of 54 PageID 1371
USCA11 Case: 18-11183   Document: 17   Date Filed: 06/08/2018   Page: 153 of 205

3

1                    P R O C E E D I N G S

2    Thursday, March 1, 2018                          2:05 p.m.

3                           -  -  -

4            COURT SECURITY OFFICER:  All rise.  United States

5    District Court in and for the Middle District of Florida is now

6    in session, the Honorable Brian J. Davis presiding.

7            Please be seated.

8            THE COURT:  Good afternoon to all.

9            ALL:  Good afternoon, Your Honor.

10           THE COURT:  Court is convened today in connection

11   with Case No. 3:16-cr-154.  It's United States of America

12   versus Andrew Ryan Leslie.

13           And our record should reflect that Mr. Leslie is

14   present with counsel, Mr. Rosenblum, and that the government is

15   represented today by Attorney Brown, who is present with --

16           MR. BROWN:  If I could introduce --

17           THE COURT:  -- Lauren Britsch?

18           MS. BRITSCH:  Yes, Your Honor.

19           MR. BROWN:  Yes, Your Honor.

20           THE COURT:  With -- also an attorney, and James

21   Greenmun with Homeland Security?

22           AGENT GREENMUN:  Yes, Your Honor.

23           THE COURT:  And Nathan Smith, also with Homeland

24   Security.

25           Welcome to all of you.

1          Mr. Leslie, the Court is charged today with

2    fashioning a sentence that is sufficient but not greater than

3    necessary to satisfy the statutory purposes of sentencing in

4    connection with your previously entered plea of guilty to

5    Counts One and Two of an indictment charging you with

6    production of child pornography, in violation of Title 18,

7    United States Code, Sections 2251(a) and 2251(e).

8          In that connection you should have received a

9    presentence investigation report.

10          Did you receive that report?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  Did you have an opportunity to review it

13    with your attorney?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  And were all your questions about it

16    answered?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Very good.

19          Mr. Rosenblum, did the defense timely receive the

20    report?

21          MR. ROSENBLUM:  Yes, Your Honor.

22          THE COURT:  Did the government timely receive the

23    report?

24          MR. BROWN:  Yes, Your Honor, we did.

25          THE COURT:  There haven't been any objections or

Case 3:16-cr-00154-BJD-JBT   Document 66   Filed 05/02/18   Page 5 of 54 PageID 1373
USCA11 Case: 18-11183   Document: 17   Date Filed: 06/08/2018   Page: 155 of 205

5

 1  exceptions filed in writing.

 2          Does the government have any today as we speak?

 3          MR. BROWN:  No, Your Honor.  However, I did speak to

 4  the probation officer earlier --

 5          THE COURT:  Yes.

 6          MR. BROWN:  -- and there was a small factual change

 7  that needed to be made.

 8          THE COURT:  I think it was brought to my attention as

 9  well.

10          On page 9?

11          MR. BROWN:  I believe that's correct, Your Honor.

12  Page . . .

13          THE COURT:  Page 9, paragraph 44?

14          MR. BROWN:  That is correct, Your Honor.

15          THE COURT:  Was it brought to Mr. Rosenblum's

16  attention?

17          MR. BROWN:  I'm not sure.

18      (Brief pause.)

19          MR. BROWN:  Mr. Rosenblum has been consulted and

20  notified, and I would just recommend that the Court consider

21  allowing the change in paragraph 44, page 9, striking the word,

22  on the last line there, "penis" and inserting the word "hand."

23          THE COURT:  That was my understanding of the

24  correction to be made, and without objection, it will be made

25  to the presentence investigation report.

Case 3:16-cr-00154-BJD-JBT   Document 66   Filed 05/02/18   Page 6 of 54 PageID 1374
USCA11 Case: 18-11183   Document: 17   Date Filed: 06/08/2018   Page: 156 of 205

6

1          Mr. Rosenblum, does the defendant have any objections

2    or exceptions it wishes to make today?

3          MR. ROSENBLUM:  No, Your Honor.

4          THE COURT:  Very good.

5          Mr. Leslie, I'm sure that Mr. Rosenblum has explained

6    to you that one of the obligations of the Court is to consider

7    the sentencing guidelines in fashioning a sentence for the

8    crimes you committed.

9          The guidelines are advisory.  They're not mandatory,

10   but the Court is required to consider them, and in that

11   connection, it is required to determine if they are accurately

12   calculated.

13         And that requires an examination of the facts of the

14   case and your criminal history.  The guideline uses both the

15   seriousness of offenses and the seriousness of criminal

16   histories to recommend punishment for similarly situated

17   defendants.

18         In other words, if there was a defendant in the state

19   of Oregon charged as you are charged, with a criminal history

20   similar to yours, then the guidelines are designed to help

21   courts treat those defendants similarly in terms of the length

22   and character of sentence that they are -- they're given so

23   that there isn't a significant disparity between how people

24   who've done similar criminal behavior with similar criminal

25   histories are treated.

Case 3:16-cr-00154-BJD-JBT   Document 66   Filed 05/02/18   Page 7 of 54 PageID 1375
USCA11 Case: 18-11183   Document: 17   Date Filed: 06/08/2018   Page: 157 of 205

7

1          In this instance the guidelines treat the base

2   offense, the production of child pornography, as a serious

3   offense in and of itself.  Without more, there are 32 levels of

4   punishment recommended, and that corresponds to a certain

5   length of time.

6          Without more, 32 levels results in a recommendation

7   of 121 to 151 months in prison in the 2016 guidelines.

8          All right.  Thank you.

9          And then in addition to that level, the offenses'

10  characteristics are examined a little more closely, and the

11  more harmful they become, generally, the more punishment is

12  associated with the guideline calculation.

13         And in this instance, with respect to Count One, the

14  offense involved a minor who had not attained the age of 12,

15  and specifically, in this instance, a two-year-old.  The

16  guidelines recommends that an additional 4 levels be added.

17         And then additionally, because there was sexual

18  contact between the minor in this instance, 2 additional levels

19  were added.

20         Because the production materials that were involved

21  in your crime included sadistic or masochistic conduct,

22  additional levels were also added under the guidelines, 4

23  additional levels.

24         And because the offense involved your supervisory

25  care or custody of a victim, additional -- you were babysitting

1    for some of the victims -- for this one victim in particular, 2

2    additional levels were added.  So if you do that math, it will

3    come to 44 points.

4         And essentially the same kind of calculation was done

5    for the second count.  Actually, it was slightly different.  It

6    included a 4-level increase in the base-level offense because

7    of the age of the child involved, and it also included sexual

8    conduct and, in that regard, an additional 2 points or 2 levels

9    were added.  And in this instance, again, because of your

10   supervisory control, an additional 2 points were added.

11        So that also resulted in a 44 -- actually, I may have

12   misstated.  Yeah, that resulted in less of a calculation

13   because one of the factors present in the first count was not

14   present in the second, so that there was an adjusted offense

15   level for that count of 40.

16        And because the counts were multiple, they were -- an

17   adjustment is added under the guidelines so that the greater of

18   the two levels is considered in the balance of the guidelines,

19   but there's an increase involved.  And there were 2 levels

20   appropriately added to the 44 so that the combined adjusted

21   offense level was 46.

22        There was a pattern of activity involved in your

23   conduct, and that is considered under the guidelines as well.

24   If you think of it, it has to do with the guidelines being

25   sensitive to the seriousness of the offenses generally, and a

1   pattern of offenses is more serious than a single offense or

2   the lack of a pattern.

3           In this instance the behavior did include a pattern,

4   so an additional 5 points was added.  That adjusted the level

5   to 51.

6           And because you accepted responsibility and actually

7   avoided the necessity of a trial, you get some credit for that.

8   Three points were deducted so that it turns out that the total

9   offense level that you receive is 43.  Forty-six less 3 is 43.

10          Using that data, along with your criminal history,

11  which was none whatsoever -- you have not been in trouble at

12  all except for this charge and one that is pending that doesn't

13  result in any increased points or levels being added under the

14  guideline.

15          But the Court is aware of a pending charge out of the

16  Middle District of Tennessee involving some similar allegations

17  at this point.  When you consider the guidelines calculation,

18  the recommendation results in a recommendation of life

19  imprisonment.

20          Because the statutory maximum that could be imposed

21  for these offenses is less than life imprisonment, that is, a

22  total of 60 years, the guidelines require that the Court

23  consider the statutory maximums so that the guidelines in this

24  case do result in a recommendation that you receive between --

25  that you receive 720 months incarceration, that the range of

1    supervised release recommended is five years to life per count.

2          You're not eligible for probation.  There is a 50,000

3    to $250,000 fine determined to be appropriate, and a special

4    assessment of $200, as well as another assessment of $5,000 per

5    count.

6          The Court will find that the guidelines are properly

7    calculated, and its recommendations will be considered by the

8    Court in fashioning a sentence.

9          So in addition to that consideration, the Court has

10   received and considered the sentencing memorandum filed by your

11   attorney that talks about your personal history in a little

12   more detail than the -- and from a different perspective than

13   the presentence investigation report, and also includes a

14   number of letters from people that know you personally and have

15   known you all of your life, probably most important from your

16   mother and several other family, friends, and acquaintances.

17   The Court has considered that as well.

18          It is your attorney's opportunity today to make an

19   argument on your behalf, if he wishes to, and for you to

20   additionally make an argument or a statement to the Court as to

21   things you wish the Court to consider in fashioning a sentence,

22   and that might include other witnesses and other documents as

23   well.

24          And the government has an opportunity to do that, as

25   well as offer testimony of victims or statements of victims and

1    other information that would be useful to the Court in

2    fashioning a sentence.

3           So having said that, Mr. Rosenblum, if you wish, you

4    are welcome to make an argument, present any testimony or

5    evidence that you would have the Court consider at this time.

6           MR. ROSENBLUM:  Thank you, Your Honor.

7           THE COURT:  You're welcome.

8           MR. ROSENBLUM:  Your Honor, the way I intend to

9    proceed is to make some statements on behalf of Mr. Leslie,

10   then I'm going to call his mother forward.  She would like to

11   address the Court.  And then I think Mr. Leslie himself would

12   like to address the Court.

13          THE COURT:  Very good.

14          MR. ROSENBLUM:  Your Honor, this is a tragic case for

15   all concerned.  It's tragic for the victims and their families,

16   who I believe are well represented in the courtroom.  It is

17   tragic for Mr. Leslie himself, and it's tragic for Mr. Leslie

18   and his family.

19          Mr. Leslie has a sickness, and that sickness is

20   called pedophilia.  That's the bad news.  The good news is that

21   he's crying out for help, and he is committed to change.

22          It's unfortunate that it took the event of his arrest

23   to bring it to the surface and bring it to light where he will

24   be forced now to get some help, but the fact of the matter is

25   that Mr. Leslie has wanted to get help for this sickness that

1   he knows that he has for a very long time.

2          Since he's been arrested, he has done everything in

3   his power to try to right this wrong.  Now, we all know that it

4   can never be righted, but it does speak well of Mr. Leslie that

5   he is trying to do what he can.

6          And you start off with the fact that he was extremely

7   candid with me and with my staff when we first met him and were

8   trying to figure out what the case was about.

9          I know the Court has probably prosecuted and, as a

10  judge, has adjudicated many cases involving sexual offenses of

11  this nature.  And it was highly unusual that Mr. Leslie was as

12  forthcoming with us when we first started out.

13         Then Mr. Brown reached out to me and said that this

14  may be one of those rare cases where the government, in a child

15  pornography/sexual exploitation/child production type of case,

16  might be interested in actually meeting with Mr. Leslie in

17  order to try to gain intelligence about what he did, how he did

18  it, how others were doing it, and to just get an overall

19  picture that would be of help to law enforcement in the fight

20  against child pornography.

21         In that regard, Mr. Leslie provided a proffer to

22  Mr. Brown, to Ms. Britsch, his counterpart from the Department

23  of Justice who came into town specially for the proffer, and to

24  these agents that are sitting in the courtroom, Agent Greenmun

25  and Agent Smith.  And as I recall, that proffer lasted the

1   better part of a day.

2         Mr. Leslie was extremely comprehensive.  He was

3   extremely candid, and I think that we were all struck with the

4   unusual candor that he displayed in terms of admitting what he

5   had done.  And throughout it all, it was clear that he wanted

6   to get help for his problem.

7         THE COURT:  Yeah.  Let me stop you for a moment

8   because I -- you brought to mind something that I didn't

9   mention that I did consider which was Mr. Leslie's letter to

10  the Court, among the other letters that the Court received.

11        And what triggered my memory about it was what you've

12  described the proffer involved, was his candor and openness in

13  discussing his crime.

14        MR. ROSENBLUM:  Yeah.

15        THE COURT:  So I want the record to reflect that the

16  Court's taken particular note of that as well.

17        MR. ROSENBLUM:  Yes.  I'm glad that you brought that

18  up, Your Honor, because that was another indication of

19  Mr. Leslie's candor, the letter that he wrote to the Court.

20        I know the Court has read a lot of letters from a lot

21  of offenders who are about to be sentenced, and I hope the

22  Court will agree that Mr. Leslie's letter was especially

23  truthful in terms of what he had done, how he feels about

24  himself, and what his intentions are for the future.

25        There was also the psychological evaluation with

1   Dr. Cohen, and in his meeting with Dr. Cohen, he didn't pull

2   any punches at all.  He was extremely truthful with Dr. Cohen.

3   And it helped, I think, in terms of allowing Dr. Cohen to

4   formulate a report that will hopefully be helpful to the Court

5   in terms of fashioning a sentence.

6           I mentioned the proffer that Mr. Leslie provided, and

7   the fact of the matter is that the cooperation, as Mr. Brown, I

8   expect, will tell you, or Ms. Britsch, whichever one, will tell

9   you, did not rise to the level, as far as the government is

10  concerned, of substantial assistance that would lend itself to

11  a traditional 5K1.1 motion.

12          But in terms of the 3553 factors, I think that the

13  proffer and the information Mr. Leslie gave was extremely

14  valuable to law enforcement.

15          And it did not stop with just the one-day proffer

16  that we all attended.  Mr. Leslie, on a number of occasions,

17  either met with or, through phone calls or other

18  communication -- sometimes I was the middleman -- would provide

19  information to the government agents as they continued

20  investigating the crime.

21          I mentioned Dr. Cohen's report, and I just wanted to

22  quote very briefly from the report.  On page 4 Dr. Cohen said,

23  "He was not overly guarded and did not appear to dodge any

24  questions or topics.  In fact, he was extremely candid and

25  forthcoming about his previous behaviors and sexual acts.

Case 3:16-cr-00154-BJD-JBT   Document 66   Filed 05/02/18   Page 15 of 54 PageID 1383
USCA11 Case: 18-11183     Document: 17     Date Filed: 06/08/2018     Page: 165 of 205

15

1    Mr. Leslie stated, 'I am actually really happy to tell you all

2    of this and get it off my chest.  I want to know why I did what

3    I did.'"

4              And I would submit to the Court that while we all

5    understand that there's going to be a significant punishment

6    imposed here, Mr. Leslie's attitude -- and I believe that it's

7    truthful.  I don't think that he's just making this up as he

8    goes along in order to please the Court and get a lesser

9    sentence.  It bodes well for the future because it shows that

10   Mr. Leslie has insight into the fact that he does have a

11   sickness, and he genuinely wants to get help for it.

12             The Court mentioned the letters that you received

13   from family and friends, and those letters show a totally

14   different side of Mr. Leslie.  There really is goodness in him,

15   and there really is a lot to be admired about Mr. Leslie.

16             And he has a good heart, and he really has tried to

17   help people.  And he is going to try to help himself beat this

18   demon that lives inside of him.

19             One of the things that we provided to the Court was

20   the article from *Psychology Today*, and I think that report

21   gives terrific insight into --

22             THE COURT:  And let me say, because I did not mention

23   the attachments to your memo that included both Dr. Cohen's and

24   the letters -- I did mention the letters.

25             I did read the article, and I did read Dr. Cohen's

Case 3:16-cr-00154-BJD-JBT   Document 66   Filed 05/02/18   Page 16 of 54 PageID 1384
USCA11 Case: 18-11183     Document: 17     Date Filed: 06/08/2018     Page: 166 of 205

16

1    report, with much interest, by the way, so thank you for

2    sharing both of those with the Court.

3         MR. ROSENBLUM:  And I think that the article from

4    *Psychology Today* really is helpful to all of us that deal with

5    these cases, at whatever level we deal with them, to understand

6    what someone who has this sickness goes through in terms of the

7    frustrations about getting help.

8         Just to quote briefly from the article, and it is on

9    page -- it's actually page 86 of the article, page 3, I think,

10   of the attachment.  It says, "The dense mass of stigma

11   surrounding sexual abuse not only deflects compassion for

12   potential abusers, but it erects particular barriers that

13   prevent them from getting help.  Dr. Levenson surveyed

14   convicted offenders about these barriers, and the first thing

15   they say is that they really had no idea where to go.

16        "They see all these public health announcements:  'If

17   you have a drug problem, or a gambling problem, or you think

18   you have HIV, call this number.'  But you never see a bus go by

19   with an ad that says:  'If you're concerned about your

20   attractions to children, call this number.'  Another reason is

21   the very shame and fear of judgment -- 'If I open up and tell

22   somebody, what are they going to think of me?'"

23        So there are people that have this sickness, and,

24   again, not to beat a dead horse here, but I think that

25   Mr. Leslie is prepared to dedicate the rest of his life not

1  only to try to better himself and make sure that he never

2  reoffends but also to help other people who suffer from

3  pedophilia.

4         There are resources available.  When he goes to

5  prison, Mr. Leslie will have the opportunity to take advantage

6  of sex offender treatment, which we would recommend be as

7  intensive as possible, and that's what Mr. Leslie wants, and

8  whatever counseling is available to him.

9         And on the day that he gets out of prison, he would

10  like to continue with those programs.  He wants to do whatever

11  he can to right this wrong.

12         It occurs to me that if ever there comes a time --

13  and Ms. Britsch from the Department of Justice may have a

14  better handle on this, or the agents for Homeland Security, or

15  perhaps Mr. Brown, but if ever there came a time where there

16  was a study that was made of people who are admitted --

17  admittedly suffering from pedophilia and they are looking for

18  volunteers to participate in that study in order to try to

19  eradicate this problem and this sickness, Mr. Leslie would be

20  the first volunteer.

21         The Court noted the Tennessee case, and it's no

22  secret to the Court, I'm sure, that when we get done here,

23  Mr. Leslie will face some very serious charges in Tennessee.

24         And the fact of the matter is that I think that the

25  charges in Tennessee are related to the charges in this case.

Case 3:16-cr-00154-BJD-JBT  Document 66  Filed 05/02/18  Page 18 of 54 PageID 1386
USCA11 Case: 18-11183    Document: 17    Date Filed: 06/08/2018    Page: 168 of 205

18

1    My understanding is that this is the discrete production

2    charges, whereas the case in Tennessee is a more wide-ranging

3    enterprise charge.  But Mr. Leslie will not be done when he

4    gets done with the Middle District of Florida.  He'll still

5    have to face another serious charge.

6            Your Honor, I know that what I have said, what Sharon

7    Leslie, his mom, is going to say, what Mr. Leslie says cannot

8    change what has happened.  And let me say this.  I know the

9    Court is about to hear a dramatic and heartbreaking rendition

10   from the prosecution.

11           I expect the prosecution may call forward families of

12   victims of Mr. Leslie, and we realize that that will certainly

13   affect the judgment of the Court.

14           But on -- on behalf of Mr. Leslie and his family, the

15   only thing that we can ask the Court to do is to impose a

16   sentence that will allow Mr. Leslie to see the light at the end

17   of the tunnel.

18           THE COURT:  All right.  Thank you very much,

19   Mr. Rosenblum.

20           MR. ROSENBLUM:  Your Honor, if I could call Sharon

21   Leslie forward.  I think she wanted to address the Court.

22           THE COURT:  Sharon Leslie.

23           MR. ROSENBLUM:  Ms. Leslie, would you tell Judge

24   Davis who you are, how you're related to Andrew, and what you

25   would like to say to the judge about your son.

1          Tell the judge a little bit about yourself in terms

2    of what you do for a living as well.

3          MS. LESLIE:  I work for the post office.  Andrew is

4    my youngest son.  I would like to read a short statement on his

5    behalf.

6          I want you to know that it haunts me about everything

7    that he has done and everything that these children have gone

8    through.  And I hope and pray that you will see in your heart

9    to get him the treatment that he most desperately needs,

10   that -- there are so many things that could have happened that

11   I know now that I've missed something in his life that I did

12   not catch and did not help him with.

13         And I know that only with help, treatment, love, and

14   forgiveness will he ever be able to return.  I know that he has

15   to face his punishment, and I want the Court to know that I

16   will be here to help him in any way that he needs or the Court

17   needs for me to be here to help him face his punishment and

18   help the treatment that he needs.

19         I know there's no way I can ever make it up to

20   families or the children or even my family for the things he

21   has done, and I know it's going to be hard for him to make it

22   up to any of them.  But I pray that you will give him the

23   chance to do that.

24         Thank you.

25         THE COURT:  Thank you, ma'am.

1            MR. ROSENBLUM:  Thank you.

2            Your Honor, I think Mr. Leslie wanted to address the

3    Court.

4            Does the Court want him to talk now or after the

5    prosecution gets done with its presentation?

6            THE COURT:  He can speak now if he likes.

7            THE DEFENDANT:  First of all, I would like to

8    apologize to my victims and their families.  I never meant to

9    harm them, and I hate myself for the things that I've done.

10            I'm sorry for taking advantage of their trust and

11    their children.  I understand that they may never forgive me,

12    and honestly, I don't expect them to.  I wouldn't if I was in

13    their shoes.

14            For the future it is my hope to get a degree in

15    psychology and to start an organization for those attracted to

16    children.  My organization would help them deal with their

17    problems and their urges safely and with no harm to others.

18            While being in jail I learned that there are

19    treatment programs for this.  I wish I would have known that

20    before.  But I will make it more -- I will make this more known

21    to others and to offer it before they offend.

22            As for my sentencing, I deserve 60 years and more,

23    but please, Your Honor, allow me to spend time with my mother

24    before she passes.  As well, allow me the time to start a new

25    career if I'm allowed to use computers or the time to relearn

Case 3:16-cr-00154-BJD-JBT  Document 66  Filed 05/02/18  Page 21 of 54 PageID 1389
USCA11 Case: 18-11183    Document: 17    Date Filed: 06/08/2018    Page: 171 of 205

21

1   if I'm not.

2       I understand -- or I will be happy to accept any

3   extra conditions, including castration, even though I still

4   want to have children myself.

5       I understand this is quite a bit to ask considering

6   the offenses, but please, if not for me, for my mom.  This has

7   been harder on her than me.

8       THE COURT:  All right.  Thank you, Mr. Leslie.

9       MR. ROSENBLUM:  That's all we have, Your Honor.

10      THE COURT:  Thank you, Mr. Rosenblum.

11      Mr. Brown?

12      MR. BROWN:  May it please the Court.

13      On behalf of my co-counsel, Lauren Britsch, and the

14  HSI agents who are not only here at counsel table as case

15  agents but also here in the courtroom, I echo Mr. Rosenblum's

16  statement that this is a very, very serious case, and there are

17  no winners in the courtroom.  In fact, in a way we're all

18  losers.

19      And the reason why we're here is because of choices

20  that this defendant made.  And I understand, to some extent --

21  although I'm not an expert, I understand pedophilia.  I

22  understand the points made in the article.  I understand the

23  compulsions that some offenders like Mr. Leslie feel.

24      But while one could legitimately talk about how a

25  defendant, quote, suffers from pedophilia, what I would like to

1   point out is the other side of the coin and point out how

2   victims suffer from pedophilia, that is, the victims that are

3   assaulted and molested as a result of individuals who are

4   pedophiles, as this defendant is.

5           A little bit of background, Your Honor.  This case is

6   well advised by the presentence investigative report, but this

7   case -- the investigation has been going on for a number of

8   months and a few years into a website on the dark web, which I

9   won't name here in court.

10          I know this Court is familiar, at least in general,

11  with how the dark web works, but as the Court knows, the dark

12  web is a place where individuals can go for anonymity.

13          And that anonymity can be good if you are a political

14  dissident in Iran or North Korea, but that anonymity can be

15  used for bad if you are a drug dealer or a person who does

16  identity theft or a person who steals credit cards or a person

17  who molests children and trades in child pornography.

18          So this -- this website was established on the Tor

19  network, which is The Onion Router Network, at a particular --

20  and it was difficult to get to unless you knew how to get to it

21  by probably word of mouth from another pedophile.

22          Members of this would create posts that other members

23  could comment on, and the typical nature of the posts contained

24  a preview of an image, a link to a password, and perhaps a

25  password to open certain password-protected archives.

1          Now, it's important to note that when a person, a

2     guest, came on to this, that their status was elevated to

3     registered, quote, acting -- or awaiting activation, not

4     member.

5          To become a member, an administrator of the website

6     or the server would have to approve that member, and the only

7     way to apply for full membership was by creating a post

8     containing child pornography.

9          And so this had to be not just child pornography that

10    had been around out on the Internet for years, which is

11    horrible in and of itself.  But usually what was required was

12    production of new material, that is, things that had not been

13    seen before.

14         And the way to produce that type of material is to

15    molest the children and then produce it yourself.  And I would

16    submit to you that that's what Mr. Leslie, and others, did to

17    gain access to that server and that website.

18         And guests are able to navigate to various postings.

19    They're able to get to chat functions.  In fact, there's a

20    real-time textual chat function feature that any user,

21    including nonregistered guests, could get on and communicate

22    and share links containing child pornography.

23         And so there was essentially the ability to have a

24    chat log wherein Mr. Leslie was able to speak to other members

25    about child pornography and share and exchange child

1    pornography as well.

2          In the meantime, HSI had another investigation into a

3    particular website that Mr. Leslie was running himself.  And at

4    the time that they got on to that website, they were able to

5    get some electronic surveillance authority from the Court here

6    in this building to do pen registers, but at that very time,

7    that website was taken down by Mr. Leslie.

8          And he explained the reasons why he did that in the

9    proffer.  But in any event, it was taken down.  And so there

10   was not a lot of information that was gathered during about a

11   five- to six-month period.

12         The break came when three individuals were arrested.

13   And the presentence investigative report does a good job of

14   pointing this out on page 5 and 6.

15         In October of 2016, HSI agents were able to, with law

16   enforcement partners, arrest three individuals who were

17   involved in child pornography offenses, including two that came

18   into the Eastern District of Virginia to meet and molest a

19   child.

20         They were arrested, and one of those -- at least one

21   of those individuals was interviewed and talked about a

22   face-to-face meeting with an individual that he referred to as

23   having met on the website that I mentioned before, on Tor,

24   called, quote, TheAwesomeOne.  That is Andrew Leslie.  That is

25   the username that Mr. Leslie named himself.

1          And during that interview, this individual was able

2    to tell law enforcement about meeting with Mr. Leslie in

3    Tennessee and about how Mr. Leslie was able to meet with that

4    individual and then they were able to share child pornography

5    that Mr. Leslie had produced.  And they got together, and they

6    viewed that in a hotel room and gratified themselves.

7          And one of those video files shows Mr. Leslie engaged

8    in anal intercourse with an infant.  And so Mr. Leslie had told

9    that individual about access that he had to children through

10   babysitting down in Florida.

11         Using that information and a forensic review of

12   certain material, HSI was able to get enough information to not

13   only find Mr. Leslie, through various sources, but also to

14   establish probable cause to get a search warrant for his

15   residence, and they executed that warrant on October 18 of

16   2016.

17         And what happened on that day -- and some of the

18   agents -- not only the agents who are at counsel table but

19   there are other agents in the courtroom who were there.  What

20   they found was Mr. Leslie essentially in bed with a

21   two-year-old child.

22         And Mr. Leslie was cooperative.  That female child

23   was referred to by Mr. Leslie as a toddler.  And I should say

24   they didn't actually pull him out of bed.  He referred to

25   himself as "just been in bed with the toddler."

1        And so they executed the search warrant.  Mr. Leslie

2   chose not to speak with them at that time.  And they executed

3   the search warrant and got a number of electronic and computer

4   digital devices from his residence, which the Court can see

5   listed out but have now been administratively forfeited.  That

6   was done by consent.  And so jumping ahead to the end, there's

7   no need for the Court to do an order of forfeiture in this

8   case.

9        Mr. Leslie, I would submit, when he produced child

10  pornography, he would then upload it to these various websites.

11  But in this particular case, Mr. Leslie had not had the time to

12  do that because there was a camera which was on his bedside

13  table.  And that camera, when it was examined by law

14  enforcement, it was found to contain child pornography,

15  including the two victims that are set forth in the charged

16  offenses in this case, the counts of conviction.

17       One was a two-and-a-half-year-old child, and the

18  other was approximately a six-month-old infant.  And there were

19  other images and videos that were recovered from his

20  collection, if you will.

21       Specifically, the presentence investigative report

22  correctly recounts that there were approximately 33,000 images

23  of both -- images and videos of child pornography.

24       And as the Court knows that some of the family

25  members are -- of the victims are in court at this time, and

1   I'm going to be a little specific in one of my descriptions to

2   the Court.  And I'd like to offer those family members the

3   opportunity to leave the courtroom if they don't wish to hear

4   this description.

5           And I'll offer them that opportunity now.

6           They want to stay, Your Honor.

7           THE COURT:  That's fine.

8           MR. BROWN:  One of the videos, Your Honor, that we

9   reviewed depicted Mr. Leslie straddling an infant child and

10  forcing his penis into that child's mouth.

11          Another showed, as I've mentioned before, the

12  defendant engaged in anal intercourse with a very, very young

13  child.

14          And essentially we were able to identify, through

15  capturing -- through that process, we were able to identify

16  approximately four -- well, not approximately.  Four children

17  were able to be identified, two of whom their family members

18  are present in court, and I think the Court may hear from some

19  of them later.

20          And so one of the things that's important is for --

21  in this type of case is that the Court know the nature of the

22  offense.  That is, that's one of the 3553(a) factors.  And

23  while not being gratuitous, I wanted the Court to know that

24  that is the type of material that we're talking about.

25          You know, oftentimes people think of child

Case 3:16-cr-00154-BJD-JBT  Document 66  Filed 05/02/18  Page 28 of 54 PageID 1396
USCA11 Case: 18-11183    Document: 17    Date Filed: 06/08/2018    Page: 178 of 205

28

1    pornography as, you know, 15- and 16-year-old girls topless on

2    some French beach somewhere.  That's not what this defendant

3    was doing.  That's not what this defendant liked.

4            And, of course, the Court is well aided by his

5    statement and the psychological report and the extraordinary

6    candor that the defendant has given.  But candor and

7    truthfulness only go so far.  There has to be punishment, and

8    there has to be consequences, and there has to be -- equally as

9    important, there has to be justice for victims.

10           And so that's part of what the United States is

11   seeking here today, justice for the victims.  And that includes

12   just punishment and the other factors that are set forth in

13   3553(a).

14           As I mentioned, the agents were able to recover chat

15   logs from the defendant's computer, and one of the chat logs I

16   brought to court.  And I'm going to call this, with the Court's

17   permission, and I'll offer it as Government's Exhibit No. 1.

18           And may I approach, Your Honor?

19           THE COURT:  You may.

20           Thank you.

21           MR. BROWN:  Your Honor, this was a chat log that was

22   obtained from some of the computer media that was obtained from

23   the forensic examiner, who is here at counsel table, James

24   Greenmun.

25           And it is a document that is approximately 47 pages

1    in length.  And I'm not going to go through all of it, but I

2    wanted to highlight a few of the lines there.

3            What this is, this is a discussion between

4    TheAwesomeOne and an individual known as crazymonk, who was one

5    of the individuals who was arrested in Virginia who has now

6    pled guilty and who -- I'll talk about his sentence in just a

7    moment.

8            But what this shows is that on the dark web,

9    Mr. Leslie and this other purveyor of child pornography were

10   having discussions and trading child pornography in real time.

11           So this chat log shows -- and, again, the defendant

12   is TheAwesomeOne, and I would point out that the defendant not

13   only referred to himself as TheAwesomeOne, but he referred to

14   some of the victims with the "awesome" moniker as well,

15   including TheAwesomeTot and TheAwesomeBaby.

16           On page 1 of -- well, let me first move to introduce

17   Government's Exhibit No. 1.

18           MR. ROSENBLUM:  No objection.

19           THE COURT:  It will be marked and admitted.

20      (Government's Exhibit 1 was received in evidence.)

21           MR. BROWN:  And may I also -- my colleague reminds me

22   to ask the Court to place Government's Exhibit No. 1 under

23   seal, and I would so move that, Your Honor.

24           THE COURT:  Government's No. 1 under seal without

25   objection?

1           MR. ROSENBLUM:  Yes.

2           THE COURT:  It will be marked and admitted.

3           MR. BROWN:  Your Honor, on page 1, line 24 there,

4   crazymonk says, "Downloading CP is always a great option, and

5   don't share these."

6           And Mr. Leslie responds, "Which one is this?"

7           And then crazymonk describes exactly what is being

8   depicted there, and I'll let the Court read that.

9           THE COURT:  Let me address your request that the

10  Court look at a video that's under seal.

11          Is that what you just did?

12          MR. BROWN:  No, Your Honor.  No, Your Honor.  I'm

13  simply -- I'm asking if the Court will seal this chat log.

14  We're not offering any videos.

15          THE COURT:  Oh, so your request was that I seal this

16  chat log.

17          MR. BROWN:  Yes, Your Honor.

18          THE COURT:  Okay.  I misunderstood you.

19          MR. BROWN:  Yes.

20          THE COURT:  I thought you asked me to watch

21  something.

22          MR. BROWN:  No, Your Honor.

23          THE COURT:  Okay.

24          MR. BROWN:  No, Your Honor.  What I'm asking you to

25  do is just follow along as I point out a few lines of text.

1          THE COURT:  I'll be glad to.

2          MR. BROWN:  Thank you.

3          I'd be happy to -- if the Court wanted to know more

4   about the material, I can describe it to you.

5          THE COURT:  No.  Had you asked me to watch something

6   that's in evidence, I was going to give you the opportunity to

7   provide a visual -- I mean, a verbal description of it in lieu

8   of me watching it because I'm not going to.

9          MR. BROWN:  I understand, Your Honor.

10          THE COURT:  Okay.

11          MR. BROWN:  And I anticipated that, and that's why I

12   described them in detail and offered the family the opportunity

13   to leave.

14          THE COURT:  All right.  Thank you.

15          MR. BROWN:  On line 43 of page 1, Mr. Leslie says,

16   about one of the persons -- or one of the children depicted in

17   the videos, quote, "She's less than a week old, and her mom

18   told me I can steal her whenever I want."

19          This is a person that he was referring to hopefully

20   having some future activity with.

21          Page 2 of Government's Exhibit No. 1, line 51.  I'll

22   let the Court read that.  That is spoken by TheAwesomeOne,

23   i.e., Mr. Leslie, and it gives his intentions of what he was

24   going to do into the future -- in the future.

25          Moving over to page 4, line 167, Mr. Leslie stated,

1   quote, "I need to figure out how to use Kik over Tor," and then

2   he was -- which is -- Kik is a communication -- online

3   communication service.  Tor is the -- essentially the dark web.

4          And then he says, quote, "There are a few groups

5   there for sharing porn."

6          Next, page 5.  And crazymonk says, quote -- there on

7   line 211, quote, "Was oddly nice to see each other getting off

8   to little babies and toddlers."

9          And then Mr. Leslie responds, "Nice, ha ha."  And

10  then he goes on, at line 217, quote, "Once I remove the Exif, I

11  have pictures for you."

12         Next line, "But I have a video I need you to edit,"

13  closed quote.

14         What he refers to there is removing the Exif data or

15  the embedded data from the images so that it can't be traced

16  back to him in -- and his devices.

17         Later on that page, 261 and 263, he says, quote, "The

18  pics really don't need editing.  I need the video edited.

19  Otherwise it would point back to Sweet Baby October."

20         Sweet Baby October is a child pornography series that

21  he created with one of the victims in this case.

22         Page 6, line 276, Mr. Leslie states there -- and I'll

23  let the Court read that.

24         And then later on -- at line 334 on page 6, crazymonk

25  says, quote, "Is that the only one you're babysitting alone?"

1          Mr. Leslie says, "Yes."

2          And then crazymonk, on 345, gives his opinion about

3     how fortunate Mr. Leslie, that is, TheAwesomeOne, is to be

4     alone with that child.

5          And the last one I'll point out is on page 7, line

6     431.  Mr. Leslie says, quote, "Everyone doesn't believe when

7     people call me a pedo."

8          And then crazymonk responds, "And here you are" --

9     and you can see that line there.

10          And Mr. Leslie responds, "New baby at one month."

11          And so the reason why we introduced the chat logs is,

12     I mean, there's no question that it appears that the defendant

13     has shown remorse after being arrested.  There's no question

14     that he has been candid with not only law enforcement and

15     apparently also his psychologist and his lawyer and maybe even

16     his family, and that's all good.

17          But that's only part of it, because what's also

18     important to see is, what did Mr. Leslie say when he thought

19     nobody was looking?  What did Mr. Leslie say when he was online

20     with other pedophiles who were looking to victimize children

21     and to use that as essentially currency to gain access to these

22     websites and membership in these websites?

23          It is true that Mr. Leslie made efforts at

24     cooperation.  There's no question about it.  It is true that

25     the agents and the lawyers spent roughly five or six hours with

1   him, the better part of a day.  It is true he appeared to be

2   candid and truthful.  No question about that.

3          It is true that he subsequently contacted law

4   enforcement with efforts to provide additional information or

5   additional passwords.

6          What the defendant did was provide passwords to his

7   encrypted media, even though he knew that whatever was found

8   could be held against him.  But he did that.  That is laudable,

9   no question about it.  That is cooperative.  There's no

10  question about it.

11         But it did not result -- while it was valuable, and

12  Mr. Rosenblum is absolutely correct, it did not result in the

13  arrest of other individuals.  It did not further the

14  prosecution.  Mr. Leslie was one of the last involved, and so

15  he was in the unenviable position, which sometimes the Court

16  may have seen in drug cases, of having to be one of the last

17  ones in.

18         And so despite his efforts, which are laudable, it

19  didn't result in 5K consideration under our policy.  But, as I

20  told Mr. Rosenblum and as Mr. Rosenblum told the Court, that

21  is -- certainly should be considered by this Court.

22         But only when weighed against the magnitude of the

23  harm to the victims and their family, which substantially, in

24  our position, outweighs the efforts at cooperation, even though

25  they were full -- they were fully attempted by the defendant.

1          The psych report that was contained in the --

2    attached to the sentencing memorandum, the Court knows that

3    oftentimes the United States will object to the admission of

4    reports.

5          We didn't object to the admission of the report this

6    time for several reasons, not the least of which it contained

7    inculpatory statements which -- which, like under the evidence

8    code, when someone says something that inculpates them, it's

9    presumed to be truthful, which is why hearsay on that ground is

10   admissible.  So there doesn't appear to be a lot exculpatory in

11   it, and so therefore, that's one of the reasons why we didn't

12   object.

13         And so one assumes that when a defendant admits to

14   committing crimes, that he's telling the truth.  And so I would

15   point out, on page 3 of that report, which is attached to the

16   memorandum, it talks in detail -- it indicates, quote, "He

17   freely admits to inappropriate sexual contact with underage

18   children.

19         "He reported that he had made ten pornography videos

20   and took at least 150 pictures.  He reported having at least

21   one gig worth of child porn stored on his personal equipment.

22   He stated that he felt bad about engaging in sex acts with

23   children less than five years old but felt less bad" -- that's

24   in quotes -- "about children age ten and up since he believed

25   it was more consensual.

1          "Initially he became interested in children age six

2     to ten, but then, as he desensitized to the content, his age

3     interest widened to children age zero to 12."

4          Zero to 12.  And, I might add, it goes on to talk

5     about the following victims that he reported, and there were

6     ten victims that he self-reported there, including the four

7     that we knew about prior to his arrest.

8          One of those victims -- it is the Sweet Baby October

9     series -- has now become a popular series on the Internet with

10    other pedophiles.

11         Mr. Leslie is smart.  He has great expertise in

12    computers.  He was able to do fantastic things with encryption,

13    do fantastic things with servers.  He knew his way around, and

14    even he -- in his mitigation speech, he indicated hopefully

15    being able to get back involved in computers someday.

16         On page 4 of that report, reading from the part that

17    Mr. Rosenblum -- picking up from where Mr. Rosenblum left off,

18    it says, quote, "Mr. Leslie reported that he was most

19    interested in knowing how he was caught."  Most interested in

20    knowing how he was caught.

21         "He believes that his making of his website and then

22    attempts to make a 'porn stars listing index' to help others

23    find the child porn star they wanted may have been the final

24    straw.  He stated, 'The thing I am most sad about is hurting

25    the kids.  I never meant to hurt them, and I'm also sad about

1    being stuck in jail forever.'

2         "He only verbalized his understanding that harm to

3    the children was from a physical standpoint and not from an

4    emotional or psychological standpoint."

5         That statement strikes me as a bit tone-deaf because

6    it ignores the psychological and emotional trauma that the

7    victims' families must feel for having been violated -- their

8    trust been violated and their children, the most valuable

9    members of their families, being violated as well.

10         The other thing that struck the United States, both

11    counsel, about this report was that nowhere -- and if I did

12    miss it, I'm sure Mr. Rosenblum will point it out to me, but

13    nowhere does it talk about recidivism.

14         Usually, in psychological reports in child

15    pornography cases -- and this Court has seen them -- the expert

16    will talk about risk of recidivism.  And usually -- because

17    it's something that is being presented as a mitigation, usually

18    it points out low risk of recidivism.  This report is silent on

19    recidivism.

20         On page 7 it points out that, quote, the bottom

21    paragraph, "Mr. Leslie, based on all evidence recovered from

22    his possession, his verbalized strong sexual interest in only

23    prepubescent children" -- I'll repeat that -- "his verbalized

24    strong sexual interest in only prepubescent children, his

25    engagement in sexual relations with minors, his creation and

1   distributed child pornography, and repeated patterns of

2   behavior, a paraphilic diagnosis of pedophilia is rendered."

3        So there's no question this is not a case where

4   anybody doubts that we're dealing with a pedophile.  And so I

5   would submit to you that because there's no reference to low

6   risk of recidivism, that I would imagine a person with this

7   type of deep-seated -- Mr. Rosenblum calls it sickness.  I call

8   it a condition.  I also call it criminal conduct -- that I

9   would submit because it's so deep-seated, this defendant can

10  never be trusted around children again, ever, and should never

11  be trusted around children again.

12        And the United States submits and hopes that the

13  Court's sentence will recognize and affirm that principle.

14        I also add, Your Honor, that there were a number of

15  restitution claims that were made in the case, not by anyone

16  who's in the courtroom today, but there were a number of

17  restitution claims that were made based upon items that were in

18  Mr. Leslie's collection, that is, the 33,000 images and videos.

19  And they're listed in the presentence investigative report.

20        I have personally spoken with the lawyers that

21  represent the victims in each of those series, and I told

22  Mr. Rosenblum this as well, that they each, in light of the

23  fact that this is a hands-on offender who has produced child

24  pornography, both lawyers who represent those six or seven

25  different victims, series of victims, have withdrawn their

1    restitution claims, and that part of the case needs no further

2    action by the Court.

3           Your Honor, I wanted to recognize anyone in the

4    victim -- the child victims' families who would like to be

5    heard at this time.  I know there are families from two

6    different victims who are here, and with the Court's

7    permission, I'll invite them up, if they wish to come.

8           THE COURT:  You may.

9           MR. BROWN:  May I have just a moment to confer?

10          THE COURT:  You may.

11          Good afternoon, ma'am.

12          MR. BROWN:  Your Honor, with the Court's permission,

13   may I stand next to her?

14          THE COURT:  You may.

15          Will you please introduce yourself to the Court,

16   please.

17          MS. SAYLES:  My name is Tracey Lindy Sayles.  I'm his

18   aunt.

19          THE COURT:  Welcome.

20          MS. SAYLES:  It's hard for me to stand here.  Of

21   course, I'm sure everybody realizes that.  I've know him since

22   he was born.  He was always a sweet child, a little different,

23   but everybody is a little different.  Everybody has their own

24   peculiars and personality traits.

25          He was especially close with my youngest daughter.

1   They were closer in age.  Our parents -- my parents would take

2   the two -- she would take two grandchildren at a time during

3   the summer months, you know, and they were the two that wanted

4   to go together.  They were close.

5          He was a sweet child.  He could -- he was an

6   intelligent child.  But as he got older, some peculiars, you

7   know, became more pronounced, but nothing that you'd -- you

8   know, "That's just Andrew.  That's just the way he is," you

9   know.  No more different than you like chocolate ice cream and

10  he likes vanilla, you know.  Just their personalities.  If the

11  whole world was the same, what a boring place it would be.

12         But as you -- but now come to light with all this, I

13  would say he's a chameleon.  His personality fit whatever

14  situation or people he was with.

15         It's hard for me and for my family to believe what he

16  has done.  However, there's no disputing it.  The evidence is

17  there.

18         My concern is for the victims.  It's no longer --

19  he's no longer my concern.  I have no concern for him

20  whatsoever.  I'm sorry for his mother and all that she's going

21  through, and I love her.  She's my sister, but I'm not

22  concerned for him.

23         And if he wants to further his education on the

24  government's dime, I consider that totally reprehensible.  We

25  have suffered enough.  These children have suffered and will

 1   continue to suffer.

 2           And we have no idea at what time that these

 3   children -- that they -- you know, that this will hit them

 4   psychologically.  We have no idea the damage that he has done.

 5   And for him to benefit in any way is unconscionable.

 6           Thank you.

 7           THE COURT:  Thank you, ma'am.

 8           Good afternoon.

 9           MR. BAKER:  Good afternoon.

10           THE COURT:  Introduce yourself to the Court, please.

11           MR. BAKER:  My name's Darren Baker.

12           THE COURT:  Yes, sir.

13           MR. BAKER:  I met Andrew -- it was May of 2016.  He

14   went to school with my wife, and they'd known each other for a

15   long time.  And it took me a little while to trust him, to feel

16   him out.  And right about the time I felt I could trust him, I

17   found out about this.

18           I've fought feelings of sadness, anger, hate toward

19   this man since, and I ask Your Honor that leniency not be

20   applied here.

21           I pray one day that I can forgive him, for my sake.

22           That's all.

23           THE COURT:  Thank you, sir.

24           MR. BROWN:  As I indicated, Your Honor, both of those

25   were family members of the four victims, one of whom is

 1    pictured -- or that are parts of the counts of conviction.

 2            I told you that I would provide the sentence for

 3    crazymonk, also known as Patrick Falte.  He was --

 4            THE COURT:  Mr. Brown.  Mr. Brown, keep your voice up

 5    just a little bit.

 6            MR. BROWN:  I'm sorry, Your Honor.  May I have just a

 7    moment?

 8            THE COURT:  You may.

 9            MR. BROWN:  Mr. Falte, who was one of the cooperators

10    that led us to Mr. Leslie, received a life sentence.  The

11    United States had recommended, based upon cooperation, a

12    50-year sentence.

13            The -- in closing, it is difficult to imagine or to

14    fathom the horror that this defendant wrought on his victims

15    and their families.  It's just hard to imagine.

16            The United States asks this Court to impose a very

17    lengthy sentence to provide not only for just punishment but

18    also to protection -- for protection of children.

19            It's our position that the only way of stopping him

20    is to keep him either behind bars or to keep him on strict

21    supervision.

22            The United States is mindful of the attempts at

23    cooperation, and while we declined to make any formal motion

24    for downward departure, it is our position that the Court can

25    consider that, for whatever it's worth.  But under no

1   circumstance would we ever urge or expect the Court to sentence

2   the defendant in this case to less than 50 years.

3          With regard to supervision, I will -- the Court

4   already knows, probably, what I'm going to say but it should be

5   life, whatever period of life remains for him.  He should never

6   be allowed to be around children again.

7          May I confer just a moment, Your Honor?

8          Thank you, Your Honor.

9          THE COURT:  Thank you.

10          Mr. Brown, is there any legal reason why sentence

11   should not now be pronounced?

12          MR. BROWN:  There's no legal bar to sentencing, Your

13   Honor.

14          THE COURT:  Mr. Rosenblum?

15          MR. ROSENBLUM:  No, Your Honor.

16          THE COURT:  I don't recall having a case in which the

17   horror associated with the crime committed and the harm done is

18   as palpable as it is in this case and is acknowledged by

19   everybody, including the defendant.

20          And that really does speak to the seriousness of the

21   offense -- offenses that were committed.  They are

22   reprehensible, unimaginable, unbearable.  Descriptions that can

23   be used to describe the horror fail to capture it.

24          And I don't think there's anyone in this courtroom or

25   in the community that would disagree, at least not anyone who

1    has not suffered from -- perhaps those that suffer from a

2    psychiatric illness that this has to be a manifestation of or

3    the condition, as you describe it, or perhaps the criminal

4    conduct, as you describe it, Mr. Brown.  Only those who embrace

5    that thinking might be unaffected by the horror.

6              So it -- the need to prevent it is clear to the

7    Court, and I -- and the necessity of the prevention being

8    complete is clear.

9              That's not the only thing that the Court has to

10   consider.  I'm required to consider whether there are any --

11   whether there's anything that appropriately should suggest a

12   tempering, if you will, of the completeness of the punishment

13   as it relates to the seriousness of the offense.

14             And I'll tell you, one thing that's been offered,

15   which is Mr. Leslie's willingness to acknowledge his

16   proclivities and to suggest that he could not do anything about

17   them -- despite the psychologist's argument, Mr. Rosenblum, I

18   don't believe it.

19             Anyone who is sophisticated enough to hide this

20   conduct in the ways that your client hid this conduct is smart

21   enough, resourceful enough to find help if he truly wanted it.

22   And had he found help, we wouldn't be here.

23             I hear family members expressing rage, and I hear

24   family members expressing regret, and I hear the possibility of

25   some guilt being associated with not detecting, not preventing,

1    not protecting.  That's misplaced guilt.

2         There is not a way, I don't think, for a mother or

3    aunt to have reasonably identified the extent of this

4    difficulty we're faced with, and you shouldn't beat yourselves

5    up about it.  It's regrettable.  It happened.  It's not your

6    fault.  You need to move on and give attention to your

7    children.

8         The defendant's mother as well.  I understand, as a

9    mother, your need to, as all mothers would, I think, continue

10   to try to assist their children.  I understand a need of the

11   victims' parents to try to assist them, and if you want to

12   expend energy in this matter, do it in that regard, by trying

13   to continue to help your children.

14        And one thing that I -- the sentence that I fashion

15   is going to be a little unusual in one regard, because

16   Mr. Leslie's willingness to cooperate in trying to prevent this

17   horrible crime is unusual, and I think he's uniquely situated

18   to do that.  So I'm going to permit him, under the supervision

19   of the Bureau of Prisons and its psychiatric staff, to make the

20   effort that he wants to make.

21        If he is sincere about trying to make a difference in

22   this horrible arena that we find ourselves in as a community,

23   as a society, I'm going to give him the opportunity to do that,

24   if the Bureau of Prisons can manage it.  I think it's laudable

25   and would be helpful.

1       So to the extent that you, Mr. Leslie, need to leave

2   here having some sense of self that is not as you described it,

3   monstrous, there's an opportunity for you.  And if it can be

4   achieved, I hope that it will be, because it perhaps can help

5   us not be here in someone's life.

6       I've considered the factors required by the statute,

7   and I've considered the materials that have been presented to

8   the Court and the statements of everyone that has an interest

9   in this case today, so -- and there not being any legal reason

10  for sentence not now to be pronounced, I will have you,

11  Mr. Leslie, stand before the Court for that purpose, with your

12  attorney.

13      Andrew Ryan Leslie, on October 6th, 2017, you entered

14  a plea of guilty to Count One and Count Two of the indictment,

15  each charging you with production of child pornography, in

16  violation of Title 18, United States Code, Sections 2251(a) and

17  (e).

18      The Court previously accepted your plea of guilty and

19  has adjudged you guilty of those offenses.  There is no legal

20  bar to sentencing at this time.

21      The Court has considered the argument of counsel,

22  defense counsel, its sentencing memorandum and its attachments,

23  the presentence investigation report, the argument of the

24  government, the testimony of family members and of victims, and

25  has considered, pursuant to Title 18, United States Code,

1    Sections 3551 and 3553, those matters required thereunder.

2         It is the judgment of the Court that you, Andrew Ryan

3    Leslie, be committed to the custody of the Bureau of Prisons to

4    be imprisoned for a term of 720 months, 60 years.  This term

5    consists of terms of 360 months on Count One and Two, all such

6    terms to run consecutively.

7         Upon release from imprisonment, you shall serve a

8    lifetime term of supervised release.  This term consists of

9    lifetime terms as to Counts One and Two and are to run

10   concurrently.

11        While on supervised release, you shall comply with

12   the standard conditions adopted by the Court in the Middle

13   District of Florida, and in addition, you shall comply with the

14   following special conditions:

15        You shall participate in mental health treatment

16   programs, outpatient and/or inpatient, and follow your

17   probation officer's instructions regarding the implementation

18   of this Court's directive.

19        Further, you shall contribute to the cost of these

20   services not to exceed an amount to be determined reasonable by

21   your probation officer's sliding scale for mental health

22   treatment services.

23        You shall participate in a mental health program

24   specializing in sexual offender treatment and submit to

25   polygraph testing for treatment and monitoring purposes.  You

1  shall follow your probation officer's instructions regarding

2  implementation of this court order.

3       Further, you shall contribute to the cost of such

4  treatment and/or polygraphs, not to exceed an amount determined

5  to be reasonable by your probation officer based on your

6  ability to pay or availability of third-party payments and in

7  conformance with your probation officer's sliding scale for

8  treatment services.

9       You shall register with the state sexual offender

10  registration agencies in any state where you reside, visit, are

11  employed, carry on a vocation, or are a student, as directed by

12  your probation officer.

13       The probation officer shall provide state officials

14  with all information required under Florida's sexual predator

15  and sexual offender notification and registration statutes,

16  specifically Florida Statutes 943 -- Section 943.0435 and/or

17  the Sexual Offender Registration and Notification Act, commonly

18  known as Title I of the Adam Walsh Child Protection and Safety

19  Act of 2006, Public Law 109-248.

20       Your probation officer may direct that you report to

21  these agencies personally for required additional processing,

22  such as photographing, fingerprinting, and DNA collection.

23       You shall have no direct contact with minors under

24  the age of 18 without the written approval of your probation

25  officer and shall refrain from entering into any area where

1  children frequently congregate, including schools, daycare

2  centers, theme parks, playgrounds, and the like.

3       You are prohibited from possessing, subscribing to,

4  or viewing any images, video, magazines, literature, or other

5  materials depicting children in the nude and/or in sexually

6  explicit positions.

7       Without prior written approval of your probation

8  officer, you are prohibited from either possessing or using a

9  computer, including a smartphone, a handheld computing device,

10  a gaming console, or an electronic device capable of connecting

11  to an online service or an Internet service provider.

12       This prohibition includes a computer at a public

13  library, an Internet café, your place of employment, or an

14  educational facility.

15       You are prohibited from possessing any electronic

16  data storage medium, including flash drives, compact discs, or

17  floppy discs, or using any data encryption technique or

18  program.

19       If approved to possess or use such a device, you must

20  permit routine inspection of the device, including the hard

21  drive and any other electronic data storage medium, to confirm

22  adherence to this condition.

23       The United States Probation Office must conduct the

24  inspection in a manner no more intrusive than necessary to

25  ensure compliance with this condition.  If this condition might

1    affect a third party, including your employer, you must inform

2    the third party of this restriction, including the computer

3    inspection provision.

4            You shall submit to a search of your person,

5    residence, place of business, any storage units under your

6    control, computer, or vehicle conducted by your probation

7    officer at a reasonable time, in a reasonable manner, based

8    upon reasonable suspicion of contraband or evidence of a

9    violation of a condition of release.

10           You shall inform any other residents that the

11   premises or -- and occupants of vehicles that they may be

12   subject to search, pursuant to this condition.  Your failure to

13   submit to a search may be grounds for revocation.

14           You shall be prohibited from incurring new credit

15   charges, opening additional credit lines, or obligating

16   yourself for any other major purchases without approval of your

17   probation officer.

18           You shall provide your probation officer access to

19   any requested financial information.

20           You have been convicted of a qualifying felony, so

21   you shall cooperate in the collection of DNA, as directed by

22   your probation officer.

23           The mandatory drug testing requirements of the

24   Violent Crime Control Act are waived.  However, the Court

25   orders that the defendant submit to random drug testing, not to

1  exceed two tests per week.

2        The victims' losses are undetermined, and the Court

3  shall set a date for the final determination of victim losses

4  within 90 days of today's date.

5        Based on your financial status, the Court waives

6  imposition of a fine.

7        Matters for forfeiture have been handled

8  administratively.

9        It is further ordered that you pay the United States

10  a special assessment totaling $200, which is due immediately.

11  And the Court finds that your indigency and the 500 -- excuse

12  me, $5,000 -- in light of your indigency, that the $5,000

13  special assessment, pursuant to 18, United States Code, Section

14  3014, is not imposed.

15        After considering the advisory sentencing guidelines

16  and all the factors identified in Title 18, United States Code,

17  Section 3553(a)(1) through (7), the Court finds that the

18  sentence imposed is sufficient but not greater than necessary

19  to satisfy the statutory purposes of sentencing.

20        It's also the Court's recommendation that the Bureau

21  of Prisons, under its supervision and with its approval, permit

22  the defendant to participate in efforts to prevent and/or treat

23  pedophilia.

24        The Court's accepted your plea agreement, Mr. Leslie,

25  because it's satisfied that the agreement adequately reflects

1  the seriousness of the actual offense behavior and that by

2  accepting the plea agreement, that the statutory purposes of

3  sentencing will not be undermined.

4          To the extent permitted by your plea agreement, you

5  have the right to appeal from the judgment and sentence of this

6  Court within 14 days.  Your failure to do that within the

7  14-day period will be treated as a waiver of your right to

8  appeal.

9          The government may file an appeal from the sentence

10  if it wishes.

11          You're also advised that you're entitled to the

12  assistance of counsel in taking an appeal.  And if you are

13  unable to afford a lawyer, one will be provided for you.

14          If you are unable to afford the filing fee associated

15  with taking an appeal, the clerk of the court will be directed

16  to accept your notice of appeal without a fee.

17          The Court having pronounced sentence, does counsel

18  for the defendant or government have any objections to the

19  sentence or the manner in which the Court has pronounced

20  sentence, other than those previously stated for the record?

21          MR. BROWN:  No objection from the United States, Your

22  Honor.

23          MR. ROSENBLUM:  Your Honor, from the defendant,

24  objection is made to the Court's failure to adequately take

25  into account the mitigating 3553 factors that were brought up

1  on behalf of Mr. Leslie.

2          THE COURT:  Very good.  Your objection's noted for

3  the record.  It will be overruled.  The Court's sentence will

4  be as stated.

5          Thank you.

6          We're in recess.

7          COURT SECURITY OFFICER:  All rise.

8      (The proceedings were concluded at 3:34 p.m.)

9                          -  -  -

```
 1              CERTIFICATE OF OFFICIAL COURT REPORTER

 2

 3

 4   UNITED STATES DISTRICT COURT )

 5   MIDDLE DISTRICT OF FLORIDA   )

 6

 7           I hereby certify that the foregoing transcript is a

 8   true and correct computer-aided transcription of my stenotype

 9   notes taken at the time and place indicated therein.

10

11           DATED this 2nd day of May, 2018.

12

13                            s/Shelli Kozachenko
                              Shelli Kozachenko, RPR, CRR, CRC
14                            Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25
```

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of June, 2018, a true and correct copy of the foregoing Appendix was filed with the Clerk of the Court using the CM/ECF system, which will send notice of the electronic filing to AUSA Yvette Rhodes; and a copy of the Sealed Appendix was served via U.S. Mail to the Clerk of the Court and a copy was hand-delivered to AUSA Yvette Rhodes, 400 N. Tampa Street, Suite 3200, Tampa, Florida 33602.

*/s/ Adeel Bashir*
Adeel Bashir
Assistant Federal Public Defender